**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TONI M. NESSELROTTE,                    )
                                        )
            Plaintiff,                   )
                                        )
      vs.                                )        Civil Action No. 06-01390
                                        )
ALLEGHENY ENERGY, INC., ET AL,          )
                                        )
            Defendants.                  )

## OPINION

This matter is before the Court on the following motions:  (1) Defendants' Motion for Leave

to File Amended Answer and Counterclaims [DE 56], filed by Defendants Allegheny Energy, Inc.

and Allegheny Energy Service Corporation ("Allegheny Defendants") as well as Defendant David

B. Hertzog (collectively, "Defendants") on September 20, 2007; and (2) Plaintiff's Motion for Leave

to Amend Complaint [DE 59], filed by Plaintiff Toni M. Nesselrotte on September 27, 2007.  The

Court will address each motion in turn.

## I.      NATURE OF THE LAWSUIT

This action stems from Plaintiff's employment with Defendants as a senior attorney in their

legal department, which ended with her termination on October 31, 2004.  On October 16, 2006,

Plaintiff filed a Complaint in this Court, alleging discrimination and retaliation under the Age

Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*, Title

VII of the Civil rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania

Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*[1]  Specifically, Plaintiff pleads five counts:

---

[1]

       On December 7, 2004, Plaintiff filed a timely charge of age discrimination and retaliation with the Equal
Employment Opportunity Commission ("EEOC"), which was cross-filed as a complaint with the Pennsylvania Human
Relations Commission ("PHRC").  On May 20, 2005, Plaintiff filed an amended charge of age discrimination, gender
discrimination, and retaliation with the EEOC, which was cross-filed as a complaint with PHRC. Plaintiff received her

(1) age discrimination under the ADEA against the Allegheny Defendants; (2) retaliation under the ADEA against the Allegheny Defendants; (3) gender discrimination under Title VII against the Allegheny Defendants; (4) discrimination and retaliation under the PHRA against the Allegheny Defendants; and (5) discrimination and retaliation under the PHRA against Defendant Hertzog.  As to her discrimination claims, Plaintiff alleges that her age and/or gender was a determinative and/or motivating factor in the decision to terminate her employment.  (*See* Docket No. 1, at ¶¶37, 50, 56, and 61).  As to her retaliation claims, Plaintiff asserts that Defendants, acting through its agents and employees, retaliated by terminating her because she reported Defendant Hertzog's alleged discriminatory behavior and participated in an investigation regarding such discrimination.  (*See* Docket No. 1, at ¶¶41).

On December 28, 2006, Defendants filed their Answer as well as a Motion for Partial Dismissal of Complaint under Federal Rule of Civil Procedure 12(b)(6), which the Court orally denied on February 28, 2007.[2]

On September 20, 2007, Defendants filed the instant motion for leave to file amended answer and counterclaims, in which all Defendants seek to add an affirmative defense of after-acquired evidence and the Allegheny Defendants seek to file counterclaims for breach of contract and breach of fiduciary duty.  Contemporaneously therewith, Defendants filed a Declaration and Report of Professor Steven Lubet in support of their proposed amended answer and counterclaims.[3]  *See*

---

notification of right to sue from the EEOC on July 22, 2006 and subsequently filed the instant Complaint.

[2]

On August 31, 2007, this case was transferred to the undersigned Judge.

[3]

Professor Steven Lubet is the Williams Memorial Professor of Law and director of the Program on Advocacy and Professionalism at the Northwestern University School of Law in Chicago, Illinois.  Professor Lubet provides an opinion as to Plaintiff's conduct with regard to the copying and removal of documents, concluding that "Nesselrotte's

Docket No. 57.  On September 27, 2007, Plaintiff filed Plaintiff's Response in Opposition to Defendants' Motion to File Amended Answer and Counterclaims as well as the instant motion for leave to amend complaint, in which Plaintiff seeks to add a claim for retaliation.  On the same day, Plaintiff filed a Request for Oral Argument, which the Court granted and set oral argument for October 9, 2007.  On October 8, 2007, Allegheny Defendants filed a Brief in Opposition to Plaintiff's Motion for Leave to Amend Complaint.

On October 9, 2007, the Court held a motion hearing during which it heard argument as to the parties' respective motions to amend.[4]  At the conclusion of the hearing, the Court advised the parties that they may file a supplement as to either pending motion on or before October 15, 2007.

Subsequently, on October 15, 2007, Plaintiff filed Plaintiff's Supplemental Brief Regarding Pending Plaintiff's Motion to Amend Complaint and Defendants' Motion to File Amended Answer and Add Counterclaims.  (Docket No. 66).  On the same day, Defendant filed a supplement in letter form.  (Docket No. 67).  The motions are now ripe for disposition.

## II.    PENDING MOTIONS

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires."  Fed.R.Civ.P. 15(a).  "This liberal amendment philosophy limits the district court's discretion to deny leave to amend."  *Binswanger of Pennsylvania, Inc. v. Tru Serv Corp.*, 2003 WL 22429059, at *4 (E.D. Pa. May 21, 2003). "[M]otions to amend pleadings should be liberally granted," *Long v. Wilson*, 393 F.3d 390, 400 (3d

---

conduct [including the unauthorized and undisclosed removal and receipt of documents as well as her subsequent failure to inform the Allegheny Defendants, all while using the information to her advantage,] violated her professional obligations under Rules 1.2, 1.4, 1.6, 1.16, 4.2, 4.4, and 8.4 of the West Virginia and Pennsylvania Rules of Professional Conduct."  (Docket No. 57, at ¶6).

[4]

The Court also heard argument as to a variety of discovery issues.

3

Cir.2004), and "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust," *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). Further, "[t]he liberal right to amend extends to an answer to the complaint." *Long*, *supra*, 393 F.3d at 400. "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur*, *supra*, 434 F.3d at 204; *see also Foman v. Davis*, 371 U.S. 178, 182 (U.S. Mass. 1962) ("In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given' "). However, in this Circuit prejudice to the non-moving party is the touchstone for denial of leave to amend. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). "Unless the opposing party will be prejudiced, leave to amend should generally be allowed." *Charpentier v. Godsil*, 937 F.3d 859, 864 (3d Cir. 1991).

A.     *Defendants' motion to amend*

In their motion, Defendants seek leave to file an Amended Answer in order to assert one additional affirmative defense and two counterclaims against the Plaintiff based on alleged unlawful conduct engaged in by the Plaintiff that Defendants learned of through the discovery process in the instant case. More specifically, all Defendants seek to add the affirmative defense of after-acquired evidence, and the Allegheny Defendants (excluding Defendant Hertzog) seek to add counterclaims for breach of contract and breach of fiduciary duty, relating to Plaintiff's alleged removal of Allegheny confidential and privileged as well as proprietary documents before her "last day of employment" on October 31, 2004. Docket No. 56, Exh. A, ¶9.

In support, Defendants provide the following factual background. On March 13, 2007,

Defendants served Plaintiff with written discovery, including Defendants' First Request for Production of Documents.  (Docket No. 56, at 2).  In late April 2007, Plaintiff responded by producing over 5,000 pages of documents, which, according to the Defendants, contained "confidential, privileged and proprietary Allegheny documents that Plaintiff had copied and removed from the workplace", (Docket No. 56, at 2), including "highly sensitive emails between and among outside counsel, Plaintiff and Allegheny's former general counsel, Defendant David B. Hertzog", (Docket No. 56, at 2).  Defendants allege that they only learned of Plaintiff's copying and removing of said documents upon receipt of Plaintiff's discovery responses.  (Docket No. 56, at 3). On May 8, 2007 and on May 16, 2007, Defendants notified Plaintiff that they considered her actions to be a breach of the Employee Confidentiality Agreement[5] and thus demanded the return of all

---

[5]

Said Agreement defines "Confidential Information" as:

> all information including, but not limited to, proprietary information and/or trade secrets, and all information disclosed to Employee or known by Employee as a consequence of or through Employee's employment, which is not generally known in the industry in which the [Allegheny Energy Service Corporation, or its parents, affiliates or subsidiaries, or any successors or assigns (hereinafter, "AE Companies")] are or may become engaged, about the AE Companies' business, products, processes, and services, including, but not limited to, information relating to Inventions and/or Works, research, development, computer program designs, computer data, flow charts, source or object codes, products or services under development, pricing and pricing strategies, marketing and selling strategies, power generating, servicing, purchasing, accounting, engineering, costs and costing strategies, sources of supply, customer lists, customer requirements, business methods or practices, training and training programs, and the documentation thereof. It will presumed that information supplied to the AE Companies from outside sources is Confidential Information unless and until it is designated otherwise.

> Employee will safeguard and maintain on the premises of the AE Companies and elsewhere as required, to the extent possible in the performance of Employee's work for the AE Companies, all documents and things that contain or embody Confidential Information, Inventions and/or Works.  Except as required in Employee's duties to any of the AE Companies, Employee will not, during h[er] employment by any of the AE Companies, or thereafter, directly or indirectly use, divulge, disseminate, disclose, lecture upon, or publish any Confidential Information, Inventions and/or Works without having first obtained written

documents, and that "failure to comply with this request would require [Defendants] to take action with the Court."  Docket No. 56, at 3 (citation omitted).

Therefore, all Defendants seek to add an affirmative defense for after-acquired evidence and the Allegheny Defendants seek to add counterclaims for breach of contract and breach of fiduciary duty.  Defendants' motion anticipates Plaintiff's objections and addresses the following: prejudice, undue delay and bad faith, and futility.[6]

1.      *Undue delay, bad faith, and prejudice*

Defendants contend that they have not acted in bad faith or created a likelihood of undue delay.  In support, Defendants assert that they filed the instant motion "within days" of completing the relevant depositions and that the case is still at an early stage, i.e., "before the parties have engaged in extensive discovery and well before any trial date has been set."  (Docket No. 56, at 5). As to prejudice, Defendants argue that the Plaintiff will not be prejudiced because (1) Plaintiff has only taken three depositions; (2) and only limited discovery has taken place thus far.  Moreover, Defendants note that the Court (Lancaster, J.) recently extended the discovery deadline upon motion by the Plaintiff.[7]  In response, Plaintiff refutes Defendants' argument, noting that Defendants filed the instant motion "almost five months" after learning of Plaintiff's conduct.  In addition, Plaintiff

_____

permission from the AE Companies to do so.

Docket No. 56, Exh. F, at ¶1.

[6]

While it became clear (at least to the Court) at oral argument and in the parties' supplemental briefs that the main point of contention as to Defendants' motion to amend is futility, the Court will nevertheless address the other factors, which Plaintiff raised in her initial response.  (*See* Docket No. 58).

[7]

Discovery was set to close on October 26, 2007.  However, on October 23, 2007, the Court enlarged discovery until February 4, 2008, given the deaths of family members sustained by Plaintiffs' counsel, the numerous discovery disputes, and the instant pending motions.

alleges that Defendants have already caused significant discovery delays thus far.  As to bad faith, Plaintiff asserts that Defendant's proposed counterclaims represent "pure and transparent retaliation, and cannot be condoned by this Court."  Docket No. 58, at 8.  Finally, as to prejudice, Plaintiff argues that if the Court allows the proposed amendments, it would cause significant delay and thus prejudice her in the form of additional fact discovery and depositions.  *See* Docket No. 58, at 6.

"The denial of a motion to amend a complaint based on the movant's undue delay must be based on more than the mere passage of time."  *Logan v. In-Ter-Space Services, Inc.*, Civil Action No. 07-0761, 2007 WL 2343868, at *2 (E.D. Pa. Aug. 15, 2007).  "However, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Id. (*citing *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir.2001) (citation and quotations omitted). While "[t]he question of undue delay, as well as the question of bad faith, requires that [a court] focus on the [moving party's] motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that [a court] focus on the effect on the [non-moving party]." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir.1984).

"Specifically, we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273 (citing *Adams*, 739 F.2d at 869).  Given the liberal standard under Rule 15(a), "the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 700 (E.D. Pa. 2007).

First, as to undue delay, the Court finds credible Defendants' assertion that it only recently learned of Plaintiff's possession of disputed documents on or about May 8, 2007.  As to the four-

month gap between the time that the Defendants learned of Plaintiff's conduct establishing the basis for their affirmative defense and counterclaims on or about May 8, 2007 and the filing of the instant motion to amend on September 20, 2007, the Court finds that such a period of time is *de minimis*.[8] *See In-Ter-Space*, 2007 WL 2343868, *2 (finding that five month delay in seeking leave to amend was "understandable and reasonable") (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir.2006) (providing that "only one appellate court uncovered in our research has approved of denial of leave to amend based on a delay of less than one year" and that "a period of eleven months from commencement of an action to the filing of a motion for leave to amend is not, on its face, so excessive as to be presumptively unreasonable")).

Second, as to bad faith, with the exception of argument of counsel, Plaintiff fails to offer any evidence that Defendants' proposed counterclaims are brought in bad faith. Further, as noted *supra*, the Court finds that Defendants' four-month delay in filing the instant motion was reasonable, and thus said delay does not support a finding of bad faith.

Third, as to prejudice, while the allowance of Defendants' proposed amended answer and counterclaims may lead to additional discovery, "the need for additional discovery does not conclusively establish prejudice." *Guy Chemical Co., Inc. v. Romaco N.V.*, No. CIVA 3:06-96, 2007 WL 184782, at *3 (W.D. Pa. Jan. 22, 2007) (citing *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990)). Further, in the Court's view, any "additional" discovery in this case can be worked into the ongoing discovery requests and deposition schedule. First, the relevant documents that serve

---

[8]   Furthermore, the Court opines that when a party discovers facts that may amount to a cause of action, it is prudent of said party to investigate and to conduct sufficient factual and legal research before running to the courthouse doors. For example here, after learning of Plaintiff's alleged conduct on or about May 8, 2007, Defendants investigated said allegations, which included Plaintiff's deposition, which began on May 21, 2007 and reconvened and concluded on August 20, 2007.

as the basis for Defendants' amended answer and counterclaims have already been produced by the Plaintiff to the Defendants.  Thus, presumably, the need for additional discovery requests would be significantly limited.  Second, and perhaps more importantly, the facts comprising Defendants' counterclaims stem solely from Plaintiff's conduct in copying and removing the disputed documents.  Therefore, as far as the Court can tell, while other parties may possess some relevant information, the majority of relevant testimony and evidence would come from Plaintiff's deposition.  While Defendants already deposed Plaintiff on August 20, 2007, presuming that Defendants would request a "second bite at the apple", the Court would allow a second, streamlined deposition to take place with significant restrictions as to time and subject matter, thus, in turn, limiting the resulting prejudice to Plaintiff.  Finally, as this case approaches the one-year mark, with discovery now set to close on February 4, 2008, the parties have not yet filed motions for summary judgment and, as the Defendants note, there is no trial date set.  In other words, this case is relatively young, perhaps middle-aged, but certainly full of vigor.

Accordingly, the Court finds that the Plaintiff has failed to meet her burden to show prejudice, bad faith, and/or undue delay.  *See Pottsgrove*, 501 F.Supp.2d at 700 (providing that "under Rule 15(a), the burden is on the party opposing the amendment to show prejudice, bad faith, [and/or] undue delay ...").

  2. *Futility*

Plaintiff next contends that Defendants fail to plead sufficient facts in order to support their affirmative defense of after-acquired evidence as well as their proposed counterclaims for breach of contract and breach of fiduciary duty.

As noted by the Supreme Court in *Foman*, leave to amend may be denied if the amendment

9

would be futile. *See Foman*, 371 U.S. 182. "Futility" challenges an amendment's legal sufficiency. In assessing futility, the Court applies the same standard of legal sufficiency as applied under Rule 12(b)(6). *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted); *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988) ("Futility is determined by the likelihood that the content of the amendment will survive a renewed motion to dismiss"). Accordingly, the Third Circuit has noted that "an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.' " *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (quoting *Burlington*, 114 F.3d at 1434); *see also Warner-Lambert Co. v. Teva Pharm., Inc.*, 289 F.Supp.2d 515, 544-45 (D. N.J. 2003) (denying defendant's motion for leave to amend its answer to add an additional inequitable conduct defense as futile because plaintiff "would be entitled to summary judgment in its favor on the defense"); *Med. Graphics Corp. v. Hartford Fire Ins. Co.*, 171 F.R.D. 254, 257 (D. Minn. 1997) (noting that "leave to amend an [a]nswer should be denied if the proposed defenses are legally insufficient ... so as to invite a motion to strike under Rule 12(f)"). Therefore, in considering a motion to amend to add counterclaims and/or an affirmative defense under the standard for a motion to dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the Defendants (as the moving party). *Doswell v. City of Pittsburgh*, Civil Action No. 07-761, 2007 WL 2907886, at *1 (W.D. Pa. Oct. 2, 2007) (citing *Hasoel v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 2030272 at *1 (3d Cir. July 16, 2007)).

As a threshold point, Plaintiff argues that the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), "requires that Defendants' Motion to Amend be

denied." (Docket No. 66, at 2).[9]  In *Twombly*, the Supreme Court rejected the famous and often

quoted pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), specifically

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt

that the plaintiff can  prove no set of facts in support of his claim which would entitle him to relief."

*Twombly*, 127 S.Ct. at 1969, *abrogating Conley v. Gibson*, 335 U.S. 41(1957) (providing that "this

famous observation has earned its retirement").  In lieu thereof, and adhering to the language of

Federal Rule of Civil Procedure 8(a)(2), the Supreme Court implemented a fact-based, plausibility-

in-pleading standard:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation to
> provide 'grounds' of his [or her] 'entitle[ment] to relief' requires
> more than labels and conclusions, and a formulaic recitation of the
> elements of cause of action will not do ... .  Factual allegations must
> be enough to raise a right to relief above a speculative level ... on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

*Twombly*, 127 S.Ct. at 1965 (internal citations omitted; first alteration added; second alteration in

original).  The Court further explained that *Conley's* "no set of facts" language allowed a

"conclusory statement of a claim" to survive a motion to dismiss "whenever the pleadings left open

the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support

recovery." *Id.* at 1168.  On the contrary, the Court stated that "a complaint ... must contain either

direct or inferential allegations respecting all the material elements necessary to sustain recovery

under some viable legal theory." *Twombly*, 127 S.Ct. at 1969.  In conclusion, the Court explained

---

[9]

While Plaintiff only argues the application of *Twombly* as to Defendants' proposed counterclaims (as opposed to Defendants' proposed affirmative defense as well), the Court finds it pertinent to address the Supreme Court's holding therein at this point.

that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974.

While the Court will address the elements of each counterclaim in detail below, from a broader perspective, to the extent that Plaintiff generally argues that Defendants' proposed counterclaims fail to meet the refined motion to dismiss standard under *Twombly*, the Court disagrees. In particular, the Allegheny Defendants plead specific factual allegations as to Plaintiff's copying and removal of documents, including approximate dates of Plaintiff's conduct and the contents of said documents. *See* Docket No. 56, Exh. A, ¶10, 13 (providing that between October 11, 2004 and October 31, 2004, Plaintiff copied and removed documents, including emails between Plaintiff and Defendant Hertzog discussing "confidential legal issues, settlement strategies, internal thought processes about pending cases and case preparation as well as information and communications from Allegheny's retained outside counsel regarding various legal matters"). Accordingly, even in light of *Twombly*, the Court finds that the Allegheny Defendants' proposed counterclaims plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

The Court now turns to each proposed amendment.

  *i.*  *After-acquired evidence*

Defendants argue that Plaintiff's conduct of copying and removing documents provides "ample ground" for the affirmative defense of after-acquired evidence because such an "ethical violation provides additional independent grounds for termination of Plaintiff's employment." Docket No. 56, at 8-9. Plaintiff responds asserting that such an affirmative defense would be futile because not only do Defendants fail to allege (in their answer and counterclaims) that they would have terminated Plaintiff for said alleged violations, "[n]or could they, because Defendants would

12

not have terminated Plaintiff if they had known then what they claim to know now."  Docket No. 58, at 10.

"Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362-363 (1995).  *McKennon* held that after-acquired evidence does not bar an employee's discrimination suit, but may be used to bar reinstatement and front pay as well as to limit backpay to the period prior to the discovery of this evidence.  *Id.* at 362. " 'After-acquired evidence' in an employment discrimination case denotes evidence of the employee's or applicant's misconduct or dishonesty which the employer did not know about at the time it acted adversely to the employee or applicant, but which it discovered at some point prior to, or, more typically, during, subsequent legal proceedings; the employer then tries to capitalize on that evidence to diminish or preclude entirely its liability for otherwise unlawful employment discrimination."  *Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221, 1222 (3d Cir. 1994), *judgment vacated by* 514 U.S. 1034 (1995) (in light of *McKennon*).

In the instant case, the application of the after-acquired evidence doctrine hinges on when Plaintiff actually copied and removed the disputed documents.  For example, if said conduct occurred before Defendants informed her of her termination on October 11, 2004, the after-acquired evidence doctrine may apply because had Defendants known of said conduct, they may have terminated her.  However, if said conduct occurred after Defendants informed her of her termination on October 11, 2004, the after-acquired evidence doctrine appears inapplicable because Defendants could not have terminated Plaintiff for conduct to occur in the future.

13

In their proposed First Amended Answer and Counterclaims, Defendants plead that at sometime "[b]etween October 11, 2004 and October 31, 2004, Plaintiff copied proprietary, confidential and/or attorney-client privileged Allegheny documents and removed those documents from Allegheny premises." Docket No. 56, Exh. A, ¶10.  Accordingly, because the alleged conduct occurred after Defendants made the decision and informed Plaintiff of her termination on October 11, 2004, Defendants could not have terminated Plaintiff for conduct in which she had not yet engaged.  As stated by the Supreme Court in *McKennon*, in order to rely upon after-acquired evidence of wrongdoing, an employer "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone *if the employer had known of it at the time of the discharge*." *McKennon*, 513 U.S. at 362-63 (emphasis added) (where plaintiff-employee admitted in her deposition of copying confidential documents because she believed that "she was about to be fired because of her age", i.e., the alleged misconduct occurred before her actual termination); *see also Ryder v. Westinghouse Electric Corp.*, 879 F.Supp. 534, 537 (W.D. Pa. 1995) (providing that the definition of after-acquired evidence "presupposes that there was an employer-employee relationship at the time the misconduct occurred, *i.e.*, *that the employee had not yet been terminated*.  Moreover, there cannot be misconduct that the employer did not know about prior to making its adverse decision if the misconduct did not even occur until after the adverse decision was made") (emphasis added).  However here, Defendants did not know (based on their proposed first amended answer and counterclaims), and could not know, of the alleged misconduct at the time of termination on October 11, 2007 because it had not yet occurred. Therefore, such misconduct cannot serve as a alternative basis (thus invoking the after-acquired

evidence defense) for Defendants' decision to terminate Plaintiff.[10]

Based on the facts pled in Defendants' proposed amended answer and counterclaims, the Court finds that the affirmative defense of after-acquired evidence does not apply here and thus Defendants' motion to amend to the extent that it seeks to add the same is futile.[11]

ii.     Breach of contract

Defendants also argue that Plaintiff's copying and removal of documents as well as her refusal to return said documents upon demand to do so supports a claim for breach of her contractual obligations to the Allegheny Defendants, in particular as to the Employee Confidentiality Agreement

---

[10]

The Court recognizes that here, unlike *Ryder*, Defendants still employed (and presumably paid) Plaintiff at the time she allegedly engaged in misconduct, i.e., between October 11, 2004 and October 31, 2004. Such a scenario makes this case factually unique. However, in the Court's estimation, to allow an employer to rely on the after-acquired evidence doctrine for misconduct occurring after the decision to terminate but before an employee's actual last day of employment turns said doctrine on its head because, in such a situation, the employer could not have terminated the employee for conduct that said employee engaged in after the decision to terminate but before his or her last day of employment–the application of the after-acquired evidence doctrine to such a situation is too speculative (e.g., perhaps notice of termination motivated to engage in said misconduct) and undermines the centerpiece of the doctrine, i.e., "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362-63. Numerous cases are in accord. *See Ryder*, 879 F.Supp. 534 (W.D. Pa. 1995); *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F.Supp. 667 (S.D.N.Y. 1995); *Carr v. Woodbury County Juv. Det. Ctr.*, 905 F.Supp. 619 (N.D. Iowa 1995); *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545 (10th Cir. 1999). *But see Sellers v. Mineta*, 358 F.3d 1058 (8th Cir. 2004) (holding that after-acquired evidence doctrine may apply to post-termination conduct in Title VII case, in particular as to equitable remedies of reinstatement and front pay). In *Sellers*, the Eighth Circuit distinguished *McKennon* as involving "pre-termination on-the-job misconduct that the employer advanced as a legitimate justification for termination.." *Id.*, at 1065 n.1. On the contrary, the *Sellers* Court explained that the employer there did "not rely on [plaintiff's] post-termination conduct as justification for her termination, nor could it as the conduct occurred two years after the termination", *id.*–which belies this Court's interpretation. Rather, the *Sellers* Court explained that "the [defendant] relies on [the misconduct] solely to avoid the equitable remedies of reinstatement or front pay, thereby shifting the inquiry to whether [plaintiff] would have been reinstated." *Id.* While the Court expresses no opinion as to the holding in *Sellers* and its framing of *McKennon*, a cursory review of Plaintiff's Complaint reveals that she seeks reinstatement (amongst other relief); however, because Defendants have not briefed (or even raised) this finite issue, i.e., after-acquired evidence as a bar to reinstatement and/or front pay only, the Court declines to opine further at this stage of the litigation.

[11]

The Court notes that to the extent that Defendants can demonstrate (through discovery) that Plaintiff engaged in the alleged misconduct prior to her termination (and thus, Defendants would argue, they would have terminated her regardless), the Court may revisit this issue. *See Ryder*, 879 F.Supp. 538 (allowing employer to conduct discovery as to the timing of misconduct).

and Defendant Allegheny Energy's Code of Business Conduct and Ethics.[12]  *See* Docket No. 56,

Exhs. F and G.

In order to survive a motion to dismiss, a party "need only plead properly the elements of

a cause of action for breach of contract: (1) the existence of a contract, including its essential terms;

(2) a breach of a duty imposed by the contract; and (3) resultant damages."  *Temple University*

*Hosp., Inc. v. Group Health, Inc.*, No. Civ.A. 05-102, 2006 WL 146426, at *6 (E.D. Pa. Jan. 12,

2006) (citations omitted).  Plaintiff only challenges Defendants' pleading with the latter two

requirements.

As to breach, Plaintiff argues that Defendants' proposed counterclaim for breach of contract

"utterly and wholly fails to specify how Plaintiff breached her agreements with them" by failing to

establish the confidential nature of said documents.  Docket No. 58, at 16.  However, the Court finds

that Defendants need not, at this stage of the litigation, establish the confidential nature of the

documents at issue in order to state a claim for breach of contract when the contract at issue is a

confidentiality agreement.[13]  *See e.g., Carescience, Inc. v. Panto*, 2003 WL 22266101, at *2 (Pa.

---

[12]

In particular, the Allegheny Defendants allege that Plaintiff's conduct violated said agreements between Plaintiff and the Allegheny Defendants in the following manner:  (1) as to the "Current Employees['] Employee Confidentiality Agreement", to the extent that Plaintiff (i) agreed to "safeguard and maintain on the premises of the [Allegheny] Companies ... all documents and things that contain or embody confidential information"; (ii) agreed that "upon termination of [her] employment, for whatever reason, [Plaintiff] will deliver to the [Allegheny] Companies all Confidential Information including, but not limited to, the originals and all copies of notes, sketches, drawings, specifications, memoranda, correspondence and documents, records, notebooks, computer systems, computer disks and computer tapes and other repositories of Confidential Information then in [her] possession or under [her] control, whether prepared by [her] or by others", (*see* Docket No. 56, Exh. F, ¶¶29-30), and (iii) has refused to return the disputed documents, (*see* Docket No. 56, Exh. A, ¶32); and (2) as to the "Allegheny Energy Inc. Code of Business Conduct and Ethics", to the extent that Plaintiff "failed to protect Allegheny's proprietary information both during her employment with Allegheny and after her employment with Allegheny terminated", (*see* Docket No. 56, Exh. G, ¶31).

[13]

The Court reads Plaintiff's argument as requiring Defendants to plead and allege how each specific document at issue is confidential, which, in all likelihood, would require Defendants to attach each alleged confidential document to its proposed counterclaim.  Such a requirement (which requires discovery) goes far beyond what is required by the Federal Rules' notice pleading standard, even under *Twombly*.

Com. Pl. 2003) (providing that, as to a claim for misappropriation of proprietary information, "[w]hether the materials that defendant has allegedly improperly retained contain trade secrets or otherwise protected confidential information is a determination of fact to be made at a later stage in this litigation").  On the contrary, under the liberal notice pleading standards of the Federal Rules, Defendants need only properly plead a breach of a duty imposed by a contract, which Defendants have plainly done here.  *See* Docket No. 56, Exh. A, ¶¶29-32 (pleading that Plaintiff's copying and removal of documents amounts to breach of the described employment agreements).

As to damages, Plaintiff argues that the Allegheny Defendants' proposed counterclaim for breach of contract fails to allege "how they were damaged or what kinds of damages might be involved."  Docket No. 66, at 3.  However, Plaintiff fails to point to any case law in support of her argument.  Further, "Pennsylvania law allows a party who can establish that it has been harmed by another's breach of contract, but who cannot establish the amount of its loss, to receive an award of nominal damages." *Fishkin v. Susquehanna Partners, G.P.*, 2007 WL 560703, at *8 (E.D. Pa. 2007) (citations omitted); *see also Zeno v. Ford Motor Co., Inc.*, 480 F.Supp.2d 825, 834 (W.D. Pa. 2007) ("In light of the law of Pennsylvania allowing nominal damages for a breach of contract, summary judgment cannot be granted for failure to show damages").

Accordingly, the Court finds that Plaintiff has not met her burden to demonstrate that the Allegheny Defendants' proposed counterclaim for breach of contract is futile.  *See Pottsgrove*, 501 F.Supp.2d at 700 (providing that "under Rule 15(a), the burden is on the party opposing the amendment to show ... futility").

iii.     *Breach of fiduciary duty*

The Allegheny Defendants assert that "prior to the end of her employment with Allegheny,

Plaintiff violated her fiduciary duties by copying and removing attorney-client privileged documents from Allegheny's premises without authorization."  Docket No. 56, at 6 (citation omitted).  Plaintiff responds arguing that a counterclaim for breach of fiduciary duty should fail because (1) Defendants have not established that the documents are confidential[14] and (2) Defendants have not identified any injury.  (Docket No. 58, at 13).  In addition, Plaintiff cites Pennsylvania Rule of Professional Conduct 1.6(c)(4) as well as supporting case law in order to demonstrate that an employee may use documents that would otherwise be privileged, in the course of litigation.  The Court will address each argument in turn.

"To prove a fiduciary duty claim in Pennsylvania, a [defendant] must establish three elements: 1) that the [plaintiff] negligently or intentionally failed to act in good faith and solely for the benefit of the [defendant] in all matters for which [s]he was employed; 2) that the [defendant] suffered injury; and 3) that the agent's failure to act solely for the [defendant]'s benefit was a real factor in bringing about the [defendant]'s injuries."  *Synthes (USA) v. Globus Medical, Inc.*, Civil Action No. 04-1235, 2007 WL 2043184, at *10 (E.D. Pa. July 12, 2007) (citing *Dinger v. Allfirst Fin., Inc.*, 82 Fed. Appx. 261, 265 (3d Cir. 2003) (quoting *McDermott v. Party City Corp.*, 11 F.Supp.2d 612, 626 n. 18 (E.D. Pa. 1998))).  Plaintiff only challenges the first two elements.[15]

First, Plaintiff argues that Defendants have not pled the confidential nature of the disputed documents.  However, based on the elements required to be set forth to state a claim for fiduciary

---

[14]

In her supplemental brief, Plaintiff elaborates, apparently arguing that the Allegheny Defendants must plead the confidentiality of the disputed documents by specifying said documents.  *See* Docket No. 66, at 3 ("What remains unplead [sic], and needs to plead, is what documents are involved and how that violates Plaintiff's fiduciary duty").

[15]

The Court notes that Plaintiff does not raise the issue of a confidential relationship between her and the Allegheny Defendants.

duty, it does not appear that Defendants need to plead the confidentiality of the documents.  On the contrary, Defendants need only plead that Plaintiff negligently or intentionally failed to act in good faith.  Accordingly, at issue is whether Plaintiff breached her duty to the Allegheny Defendants by failing to act in good faith.  Accepting Defendants' well-pled, factual allegations as true, (*see* Docket No. 56, Exh. A, ¶26) ("Plaintiff violated her fiduciary duty to Allegheny when, during her employment, she copied and removed confidential, proprietary and/or attorney-client privileged documents from Allegheny's workplace without authorization from Allegheny"), the Court has no trouble in finding that Defendants' proposed counterclaim establishes as much.[16]

Second, Plaintiff argues that Defendants' proposed counterclaim for breach of fiduciary duty fails because Defendants have not pled any injury or damages.  (*See* Docket No. 58, at 13; Docket No. 66, at 3).  In their proposed counterclaim, the Allegheny Defendants assert that they have "suffered damages as a result of Plaintiff's breach in an amount to be determined at trial." (Docket No. 56, Exh. A).  "Parties alleging breaches of fiduciary duty need not show the existence of damages other than the offending party's receipt of a benefit that should have inured to the complainant."  *Synthes*, 2007 WL 2043184, at *11 (citations omitted); *see also First American*

---

[16]

Furthermore, in a recent case involving breach of fiduciary duty and misappropriation of trade secrets, a court rejected the defendant's argument that he cannot be liable for breach of fiduciary duty because the plaintiff had not adequately alleged that his position as a sales supervisor was sufficiently confidential to give rise to such duties. *Freedom Medical Inc. v. Gillespie*, Civil Action No. 06-3195, 2007 WL 2480056, at *22 (E.D. Pa. Aug. 29, 2007). The Court noted that unlike fraud, a plaintiff need not plead breach of fiduciary duty with particularity. *Id.*  "Although [plaintiff] may eventually have to prove facts establishing that it had a confidential relationship with [defendant] giving rise to a fiduciary duty and that its proprietary information was sufficiently confidential to constitute a trade secret, it does not need to plead those facts in its complaint." *Id.*  In summary, the Court found that because the complaint gave adequate notice of the misappropriation and breach of fiduciary claims against them, it was sufficient to survive a motion to dismiss.

While the *Gillespie* case centered on a confidential relationship as opposed to confidential documents, the Court nevertheless finds it instructive.  At this stage of the litigation, Defendants need not establish the confidential nature of the documents in order to state a claim for breach of fiduciary duty; instead, the Court finds that Defendants' proposed counterclaim for breach of contract gives adequate notice to Plaintiff as to the alleged breach of fiduciary duty.

*Marketing Corp. v. Canella*, No. Civ. A. 03-CV-812, 2004 WL 250537, at *8 (E.D. Pa. Jan. 26, 2004) (providing that "it is not necessary to plead specific damages to survive a 12(b)(6) motion for [breach of fiduciary duty]. ...  Plaintiff has sufficiently pled the elements of [breach of fiduciary duty] and pleading specific damages at this juncture is not required") (citations omitted).[17] Accordingly, the Court finds that the Allegheny Defendants have sufficiently pled a claim for breach of fiduciary duty.

Finally, Plaintiff argues that, pursuant to Pennsylvania Rule of Professional Conduct 1.6(c)(4)[18], which allows a lawyer to reveal confidential information to the extent that the lawyer reasonably believes necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, she may use confidential information in order to pursue litigation.[19]  In support, Plaintiff relies on two cases:  *Willy v. Administrative Board*, 423 F.3d 483 (5th Cir. 2005) and *Kachmar v. Sungard Data Systems*, 109 F.3d 173 (3d Cir. 1997).

First, in *Willy*, the Fifth Circuit held that, in pertinent part, the Department of Labor

---

[17]

While the Court declines to affirmatively hold as much, courts have intimated that the injury inherently occurs. *See FMC Corp. v. Boesky*, 852 F.2d 981, 991 (7th Cir. 1988) (providing that "defendants' violation of [plaintiff]'s right to the exclusive use of its confidential business information injured [plaintiff] as distinctly and as palpably as if the defendants stole a potentially valuable new machine from one of FMC's plants").

[18]

Rule 1.6, entitled "Confidentiality of Information", provides that:

> A lawyer may reveal such information [relating to representation of a client] to the extent that the lawyer reasonably believes necessary ... to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or a civil claim or disciplinary proceeding against the lawyer based upon conduct in which the client was involved, or to respond the allegations in any proceeding concerning the lawyer's representation of the client.

Pa. R. Prof. Conduct 1.6(c)(4).

[19]

Plaintiff only argues the application of this Rule 1.6(c)(4) in response to the claim for breach of fiduciary duty, not breach of contract.

Administrative Review Board's decision upholding the administrative law judge's conclusion that no exception to the attorney-client privilege (specifically, the breach of duty exception) applied to admit the disputed report drafted by plaintiff-former employee was contrary to law. There, plaintiff, former in-house counsel, sued his former employer alleging that it violated the whistleblower provisions of several environmental statutes by firing him in retaliation for writing the "Belcher Report Environmental Audit Report", in which plaintiff concluded that said company (Belcher) was exposed to liability for violating several federal environmental statutes. In that case, the Fifth Circuit held "that no rule or case law imposes a *per se* ban on the offensive use of documents subject to the attorney-client privilege in an in-house counsel's retaliatory discharge claim against his former employer under the federal whistleblower statutes when the action is before an ALJ." *Willy*, 423 F.3d at 501 (emphasis in original). As applied to the instant case, the Court fails to see how that holding bars the Allegheny Defendants' proposed counterclaim for breach of fiduciary duty at this stage.

Second, in *Kachmar*, the Third Circuit held that plaintiff, a former in-house counsel for defendant, was not barred from pursuing her claim for retaliatory discharge under Title VII "by the attorney-client privilege and/or the ethical constraints of attorney client confidentiality." *Id.*, at 186. In that case, defendant-employer argued that by pursuing her claims, plaintiff-employee would be violating her ethical duties under Pennsylvania Rules of Professional Conduct. Further, defendant-employer asserted that Rule 1.6 did not apply because the case did not fall into either of the enumerated examples as noted in the comments, i.e., "where there is a dispute over fees and where an attorney is defending against a claim implicating his conduct." *Id.*, at 179 (citing Pennsylvania Rules of Professional Conduct 1.6 (1996)). The Court finds that *Kachmar*, while factually similar,

does not provide legal support for Plaintiff's position, i.e., that Defendants' counterclaim for breach of fiduciary duty is without merit in light of Rule 1.6(c)(4).  *See* Docket No. 66, at 4-6.  While this Rule *may*, to some extent, allow Plaintiff to use said information (perhaps at trial), an issue which the Court need not resolve at this stage and upon which the Court declines to comment, the Court fails to see, and Plaintiff fails to demonstrate, how Pennsylvania Rule of Professional Conduct 1.6(c)(4) bars Defendants' claim for breach of fiduciary duty on a motion to amend (applying the standard under a motion to dismiss).[20]  Accordingly, considering Allegheny Defendants' proposed counterclaim for breach of fiduciary duty and taking all well-pled facts as true and viewing them in the light most favorable to the Allegheny Defendants, the Court finds that Plaintiff has failed to meet her burden and demonstrate that Defendants' proposed counterclaim for breach of fiduciary duty is futile.[21]

### 3.    *Conclusion*

Based on the foregoing, the Court grants in part and denies in part Defendants' Motion for Leave to File Amended Answer and Counterclaims.  The Court grants said motion to the extent that the Allegheny Defendants seek to file an amended answer adding two counterclaims, but denies said motion to the extent that all the Defendants seek to file an amended answer adding an affirmative

---

[20]

In point of fact, in *Kachmar*, as to the defendant-employer's argument that Plaintiff's retaliatory discharge claim is precluded by Rule 1.6, the Court noted that "[i]t is premature at this stage of the litigation to determine the range of the evidence [plaintiff] will offer and whether or how it will implicate the attorney-client privilege."  *Id.*, at 181.

[21]

In addition, the Court finds that Defendants' proposed counterclaims fall squarely within the parameters of Federal Rule of Civil Procedure 13(e), which provides that "[a] claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."  Fed.R.Civ.P. 13(e).  *See Banks v. CBOCS West*, No. 01 C 0795, 2003 WL 21805121, at *1 (N.D. Ill. June 30, 2003) (granting defendant's motion to file a counterclaim for breach of fiduciary duty "in relation to [plaintiff's] alleged accessing, reviewing,, copying and removing of [defendant's] confidential information and documents for its own use in the instant litigation").

defense for after-acquired evidence at paragraph 18 of their proposed affirmative defenses.

B.     *Plaintiff's motion to amend*

In apparent response to Defendants' motion to amend, Plaintiff seeks leave to amend her Complaint in order to add a claim for retaliation based on Defendants' proposed first amended answer and counterclaims.  In particular, Plaintiff alleges that she "will establish at trial that the counterclaims which the Defendants seek to bring forth are without basis in law or fact and are being brought solely to retaliate against the Plaintiff for bringing her initial claims of discrimination and retaliation."  (Docket No. 59, at 2).  In response, the Allegheny Defendants argue that Plaintiff's proposed retaliation claim is futile because their counterclaims cannot, as a matter of law, form a basis of a new claim of retaliation by Plaintiff.[22]  In support, the Allegheny Defendants highlight the following:  (1) the Allegheny Defendants' counterclaims are compulsory under the Federal Rules; (2) there is no "adverse action"; and (3) defending Allegheny Defendants' proposed counterclaims will not cause Plaintiff any additional financial burdens or expense as she is already represented by counsel.  In addition (and/or in the alternative), Defendants assert that Plaintiff's proposed claim for retaliation is barred because she has failed to exhaust her administrative remedies.[23]   At oral argument and subsequently in her supplemental brief, Plaintiff relies on the Supreme Court's recent ruling in *Burlington Northern & Santa Fe Ry. v. White*, 126 S.Ct 2405, 2412 (2006), arguing that

---

[22]

The Court notes that Defendants do not challenge any other element of Plaintiff's proposed claim for retaliation, i.e., protected activity or the causal connection between the protected conduct and the retaliatory action, but only whether the alleged retaliatory action is materially adverse.

[23]

While Plaintiff responds to the substance of this argument in her supplemental brief, (*see* Docket No. 66, at 9-10), Plaintiff also represents that "[o]ut of an abundance of caution, Plaintiff intends to file an EEOC charge of discrimination setting forth the most recent retaliation by Defendants", *id.*, at 10.  Accordingly, Defendants' argument is moot (or will be moot) and the Court declines to comment at this time.

said case permits Plaintiff's retaliation claim.

In *Burlington Northern*, the employee alleged that her employer's actions, namely changing her job responsibilities and suspending her without pay for thirty-seven days, amounted to unlawful retaliation under Title VII.  In considering her claim, the Supreme Court addressed two questions: (1) does Title VII's retaliation provision confine actionable retaliation to activity that affects the terms and conditions of employment; and (2) how harmful must the adverse action be in order to fall within the scope of Title VII's retaliation provision?  126 S.Ct. at 2408.  In response thereto, respectively, the Supreme Court made the following conclusions: (1) "that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace", *id.*, at 2409; and (2) "that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant", *id.*  As to the latter, the Court explained that "that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id.*[24]  Applying the above standard to the instant case, Plaintiff argues that the filing of a counterclaim by an employer would dissuade a reasonable worker from engaging in protected activity.

In response, Defendants rely on *Ergo v. International Merchant Services, Inc.*, No. 04 C 6789, 2007 WL 2741795, at * (N.D. Ill. Sept. 13, 2007), in which a post-*Burlington Northern* court noted that "[t]he filing of a compulsory counterclaim is a particularly unlikely basis for a retaliation claim for a number of reasons:  the [Fair Labor Standards Act] plaintiff will have already asserted

---

[24]    Here, only the latter conclusion is at issue in that Defendants argue that the filing of a counterclaim does not constitute an "adverse action" for purposes of Title VII's retaliation provision.

his or her rights, it will not cause the plaintiff to hire a lawyer or incur significant additional expenses, and (most significantly) the Defendant must bring compulsory counterclaims or risk waiving them." *Id.*, at *15 (citing *Beltran v. Brentwood North Healthcare Center, LLC*, 426 F.Supp.2d 827, 834 (N.D. Ill. 2006)). The Court further explained that "the only circumstance in which the filing of a compulsory counterclaim might constitute retaliation is where the counterclaim is totally baseless." *Id.*

Turning to the instant matter, while the case law cited by Defendants provides for a colorable argument as to whether the filing of a counterclaim may serve as the basis for a retaliation claim under Title VII,[25] considering the Supreme Court's expansive interpretation of retaliation under Title VII in *Burlington Northern*, i.e., whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *Burlington Northern*, 126 S.Ct. at

---

[25]

With the exception of *Ergo*, cited and relied upon by Defendants, the Court has only found two other post-*Burlington Northern* cases to address a counterclaim as a basis for a retaliation claim. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1123 (10th Cir. 2007) ("While it is certainly an interesting question whether the filing of counterclaims in response to discrimination claims brought by a former employee constitutes an adverse employment action, that question, along with the disputed causation issue, need not be decided in this case"); *Walsh v. Irvin Stern's Costumes*, Civil Action No. 05-2515, 2006 WL 2380379, at *1 (E.D. Pa. Aug. 15. 2006) (allowing plaintiff-employee's retaliation claim based on defendant-employer's letter threatening to file criminal charges unless plaintiff withdraw her discrimination claims was sufficient to survive a motion to dismiss). While the *Walsh* case is distinguishable on its egregious facts, the Court finds that it nevertheless provides some instruction. There, the Court stated that "we are convinced that 'a reasonable employee facing the choice between [facing criminal charges and continuing to press her] discrimination complaint might well choose the former.' " *Id.*, at *9 (quoting *Burlington Northern*, 126 S.Ct. at 2418) (alteration in original). Likewise, the Court opines that when faced with counterclaims such as the ones at issue here, which directly attack the integrity of the plaintiff as well as her professional standing as an attorney, "a reasonable employee facing the choice between [enduring said counterclaims and continuing to press her] discrimination complaint *might well* choose the former." *Burlington Northern*, 126 S.Ct. at 2418 (emphasis added).

Furthermore, while *Ergo* is persuasive (to some extent), Defendants' argument pays short shrift to the language in *Burlington Northern* as to the applicable standard. There, in rationalizing its decision to implement an objective, reasonable employee standard, the Supreme Court left room for disagreement, explaining "[w]e phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington Northern*, 126 S.Ct. at 2415. The Court further elaborated that "[b]y focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id.*, at 2416.

2415 (citations and internal quotations omitted), as well as the liberal standard applied to a motion to amend under Rule 15(a), the Court cannot say, at this time and based on the record before it, that Plaintiff's proposed claim for retaliation is futile.   Accordingly, the Court will allow said amendment.

**III.     CONCLUSION**

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Leave to File Amended Answer and Counterclaims [DE 56] and **GRANTS** Plaintiff's Motion for Leave to Amend Complaint [DE 59].  A detailed Order to follow in accordance with this Opinion.

_s/ Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

cc:     All counsel of record