# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONI M. NESSELROTTE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 06-01390 |
| | ) | Judge Nora Barry Fischer |
| ALLEGHENY ENERGY, INC., ET AL., | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION and ORDER</u>

Pending before this Court is a determination of the applicability of the attorney-client privilege as well as other related matters precipitated by Defendants' Motion for Submission of Documents Under Seal and Incorporated Memorandum of Law [91], filed by Defendants Allegheny Energy Inc., Allegheny Energy Service Corporation, and David B. Hertzog ("Defendants") on December 6, 2007. Accordingly, over the ensuing six months, the parties provided the Court with extensive briefing, the Court held two hearings, the Court referred the matter to a Special Master, the parties filed responses to said Master's Report and Recommendation, and the Court conducted its own *in camera* review, all culminating in the instant Memorandum Opinion and Order.

At the outset, the Court wishes to highlight the import of the matters raised here, namely the application of attorney client privilege and the work product doctrine. While countless courts have opined on the sanctity of the privileges, in a case involving a corporate general counsel's (attorney) retaliation lawsuit against a former employer (client), the Court eloquently and concisely ruminated on the significance of the attorney client relationship:

> The attorney/client relationship is one that is highly valued by society and protected in the law. The relationship between lawyer and client is as sensitive a relationship as can exist and demands absolute confidence on the part of the client in order to thrive.

*Klages v. Sperry Corp.*, No. 83-3295, 1984 WL 49135 (D.C. Pa. 1984). Here, it is beyond dispute that the lawyer (Plaintiff) breached that confidence.

## FACTUAL BACKGROUND

This action stems from Plaintiff's former employment with Defendants as a senior in-house attorney in their legal department,[1] which ended with her termination on October 31, 2004. On October 11, 2004, Defendant Allegheny Energy notified Plaintiff of her termination from her employment with Allegheny Energy, effective October 31, 2004. Thereafter, and potentially until her last day of employment,[2] Plaintiff copied and removed hundreds of documents from Allegheny premises ("Allegheny documents"), which are the subject of the instant motion.[3]

On October 16, 2006, Plaintiff filed a Complaint in this Court, alleging discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* Specifically,

---

[1]

The Court notes that Defendant Allegheny Energy considered Plaintiff for a specialist position as labor and employment counsel in a reorganized legal department, which, needless to say, she did not receive.

[2]

At the April 23, 2008 motion hearing, counsel for Defendants alluded to the fact that Plaintiff began copying documents before October 11, 2008, specifically on or about October 6, 2008. (*See* Transcript at 58:12-59:1). However, for purposes of the instant motion, the precise date is inconsequential.

[3]

These documents include documents copied and removed by Plaintiff before her last day of employment at Allegheny Energy as well as documents removed by other employees terminated in or around the same time, including Attorneys David Williams and John Munsch, who also made claims against Allegheny Energy and whose claims ultimately settled. Many of the documents bear legends stating that the content is attorney-client privileged, attorney work product, and/or confidential.

Plaintiff pleads five counts: (1) age discrimination under the ADEA against the Allegheny Defendants; (2) retaliation under the ADEA against the Allegheny Defendants; (3) gender discrimination under Title VII against the Allegheny Defendants; (4) discrimination and retaliation under the PHRA against the Allegheny Defendants; and (5) discrimination and retaliation under the PHRA against Defendant Hertzog. On October 30, 2007, after the Court granted in part and denied in part Defendants' Motion for Leave to File Amended Answer and Counterclaims, (*see* Docket No. 73), Defendants filed Defendants' First Amended Answer and Counterclaims, (*see* Docket No. 75), in which they added counterclaims for breach of common law fiduciary duty and breach of contract. In their counterclaims, based on Plaintiff's removal of confidential, proprietary, and attorney-client privileged information from Allegheny Energy without authorization, Defendants allege that Plaintiff breached her fiduciary duty to Allegheny Energy (Count 1) and violated Allegheny Energy's Code of Business Conduct and Ethics ("Ethics Code") and Employee Confidentiality Agreement ("Confidentiality Agreement") (Count 2).[4] Thereafter, the Court granted Defendants' Motion for

---

[4]
     Adopted on March 4, 2004, Allegheny Energy's Ethics Code prohibits employees from "tak[ing] advantage of or disclosing to anyone ... any Company information that they know or have to reason to believe is confidential or proprietary unless such disclosure is authorized by the General Counsel or required by Legal Requirements. This obligation to preserve confidential or proprietary information continues even after a person is no longer employed by, or affiliated with, the Company." (Docket No. 92 at ¶18). Similarly, the Confidentiality Agreement requires that employees "safeguard and maintain on the premises of the [Allegheny Energy] Companies and elsewhere as required, to the extent possible in the performance of the Employee's work of the [Allegheny Energy] Companies, all documents and things that contain or embody Confidential Information, Inventions and/or Works." (Docket No. 124-5 at ¶1). The Confidentiality Agreement further provides that, upon termination, an employee "will deliver to the [Allegheny Energy] Companies all Confidential Information including, but not limited to, the originals and all copies of notes, sketches, drawings, specifications, memoranda, correspondence and documents, records, notebooks, computer systems, computer disks and computer tapes and other repositories of Confidential Information then in Employee's possession or under Employee's control, whether prepared by Employee or by others." (Docket No. 124-5 at ¶6). Moreover, the Confidentiality

Reconsideration adding the affirmative defense of after-acquired evidence, (*see* Docket No. 88), and

Defendants filed Defendants' Third Amended Answer and Counterclaims to Plaintiff's Amended

Complaint, (*see* Docket No. 92).

On November 2, 2007, Plaintiff filed a Motion for Protective Order (Docket No. 77), which

the Court granted on November 16, 2007 (Docket No.85). In said Order, the Court ordered Plaintiff

as well as Plaintiff's counsel to produce all Allegheny documents in her/their custody by November

26, 2007. (Docket No. 85). On November 21, 2007, Plaintiff filed a Motion for Reconsideration

as to the Court's November 16, 2007 Order, (Docket No. 87), which the Court denied on December

4, 2007 and ordered the Plaintiff to comply with said Order within seven days. (Docket No. 90).

## PROCEDURAL BACKGROUND

On December 6, 2007, Defendants filed the instant motion (Docket No. 91). On December

17, 2007, Plaintiff filed Plaintiff's Brief in Opposition to Defendants' Motion for Submission of

Documents Under Seal and Incorporated Memorandum of Law (Docket No. 93). On December 19,

2007, the parties filed a Consented Request for Oral Argument Regarding Defendants' Motion for

Submission of Documents Under Seal, (Docket No. 96), which the Court granted the next day and

set for oral argument. On January 14, 2008, Defendants filed Defendants' Reply Brief in Support

of Motion for Submission of Documents Under Seal (Docket No. 102). On January 17, 2008, the

Court held a motion hearing, at which counsel for the Defendants orally requested an *in camera*

review of specified documents as to the applicability of the attorney-client privilege, which the Court

construed as a motion for determination of privilege. (*See* Docket No. 103). At the hearing,

---

Agreement specifies that it survives the termination of employment. (Docket No. 124-5 at ¶5).

Defendants submitted to the Court as well as to Plaintiff a Declaration of David M. Feinberg[5] and a Privilege Log[6] and the Court set a deadline for Plaintiff's response. The Court adjourned the hearing until March 7, 2008.

Given the nature of the dispute and recognizing the ability of the Special Master ultimately appointed with consent of counsel, on January 25, 2008, the Court issued an Order referring the matter to a Special Master (William Pietragallo, II),[7] in order to inform the Court as to the "applicability of the attorney client privilege and/or the work product doctrine to certain documents in dispute." (Docket No. 105 at 1).[8] The Court ordered the parties to share the costs of the special master.

---

[5]

Since August of 2004, David M. Feinberg has been employed by Defendant Allegheny Energy as an attorney, and since October of 2006, as its Vice President, General Counsel, and Secretary. (Declaration of David M. Feinberg at ¶3).

[6]

Neither Feinberg's Declaration nor the Privilege Log were filed of record.

[7]

Mr. Pietragallo is the founding partner of Pietragallo Gordon Alfano Bosick & Raspanti, LLP. A Fellow of the American College of Trial Lawyers and a Diplomat of the International Academy of Trial Lawyers, Mr. Pietragallo's practice concentrates in the areas of commercial litigation, business, securities, and complex civil litigation. In his practice, Mr. Pietragallo has counseled and represented lawyers in malpractice claims. Of particular relevance here, Mr. Pietragallo recently completed a 6-year term on the Pennsylvania Supreme Court Civil Rules Committee and is currently Vice-Chair of the Disciplinary Board of the Supreme Court of Pennsylvania. *See* http://www.pietragallo.com (Last visited on June 26, 2008).

The undersigned Judge is a former partner of Mr. Pietragallo, and, prior to appointing him Special Master, the Court informed the parties and their counsel of the same and they had no objection to his appointment and participation in this matter.

[8]

The Court notes that while Plaintiff agreed to the appointment of a special master when first proposed by the Court at the January 17, 2008 motion hearing, Defendants initially objected to the same but later withdrew their previous opposition. (*See* Docket No. 104) ("Notice to Court Regarding Appointment of Special Master").

On February 15, 2008, the Special Master held a proceeding with the parties and their counsel in attendance, at which the Special Master outlined the scope of his assignment and counsel argued their respective positions.[9]

On February 19, 2008, Plaintiff filed Plaintiff's Response to Defendants' Privilege Log Dated January 16, 2008 (Docket No. 110).

On or about February 25, 2008, the Court received a Report and Recommendation of the Special Master.[10] The Special Master also provided copies of his Report and Recommendation to the parties through counsel. On February 29, 2008, Defendants filed Defendants' Response to Report and Recommendation of Special Master (Docket No. 117). On March 3, 2008, Plaintiff filed Plaintiff's Response and Objections to Special Master William Pietragallo's Report and Recommendation (Docket No. 120). On the same day, Defendants filed Defendants' Reply Brief in Support of the Declaration of David M. Feinberg and Attached Privilege Logs (Docket No. 119).

On March 7, 2008, the Court held another motion hearing, at which the Court heard continued argument on the pending motion for determination of privilege as well as the Special Master's Report and Recommendation.[11]

---

[9]

A court reporter recorded this proceeding and the Special Master provided a transcript of said proceeding to the Court, which has not been filed of record.

[10]

Pursuant to Federal Rule of Civil Procedure 53(e), the Court ordered that the Special Master's Report and Recommendation would be retained as confidential. (*See* Docket No. 105).

[11]

On March 31, 2008, in line with the Court's March 25, 2008 Order, (Docket No. 164), Defendant filed a Notice of Filing Privileged and/or Confidential Exhibits Under Seal. (*See* Docket No. 171).

## ANALYSIS

Before turning to the merits of the instant motion, because of the unorthodox manner in which this determination of privilege arose, the Court finds it necessary to frame the issues currently before the Court. In the Court's estimation, Defendants' initial motion to seal appeared rudimentary and did not seek a determination of privilege *at that time*.[12] However, Plaintiffs responded addressing substantive issues including waiver of the attorney client privilege and requesting a determination as to the applicability of Rule 1.6(c)(4) of the Pennsylvania Rules of Professional Conduct. (*See generally* Docket No. 93). Plaintiff's response necessarily triggered a determination of privilege, and thus, Defendants replied in kind, submitting Feinberg's Declaration and a Privilege Log at the January 17, 2008 motion hearing. Therefore, while the initial motion merely requested an *in camera* review (presumably to be followed by a request for determination of privilege),[13] Plaintiff's response expedited the determination of the attorney client privilege and other related issues including potential waiver and the implications of Rule 1.6(c)(4). Accordingly, the Court will

---

[12]

In fact, Defendants' conclusion clearly frames the scope of the requested relief therein: "Defendants request that this Court allow Defendants to file certain documents in camera and, in the interim, order that Plaintiff not be allowed access to the Allegheny Documents produced to the Court pursuant to [Docket Entries] 85 and 90 pending this Court's determination regarding the asserted privilege(s)." (Docket No. 91 at 4).

[13]

Plaintiff initially objected to the need for an *in camera* review, arguing that the same "is unnecessary, as Plaintiff is permitted to use such documents [i.e., the Allegheny documents], whether or not privileged, to pursue her claims and defend against Defendants' criticism of Plaintiff's performance as its attorney." (Docket No. 93 at 7). However, Defendants' initial motion to seal is now moot (in terms of the relief requested) insofar as both the Court (and the Special Master) have conducted an *in camera* review of the Allegheny documents and the Plaintiff has not had access to the same during that time. Nevertheless, contrary to Plaintiff's bold assertion, according to the U.S. Court of Appeals for the Third Circuit, an *in camera* review is the appropriate method for resolving privilege disputes. *See United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir.1988).

address the following: (1) the Special Master's Report and Recommendation regarding determination of the attorney client privilege and/or work product doctrine as to the Allegheny documents; (2) waiver; and (3) the applicability of Rule 1.6(c)(4).[14]

1.   *Determination of attorney client privilege and/or work product doctrine*

   a.   *Specific objections to the Special Master's Report and Recommendation*

Upon agreement of the parties and pursuant to Federal Rule of Civil Procedure 53(1)(A), the Court referred this matter to a Special Master for a determination of privilege, as to the potential applicability of both the attorney client privilege and the work product doctrine. (*See* Docket No. 105). The Special Master reviewed the Allegheny documents in detail and segregated them in three "redwelds:" (1) privileged by way of the attorney client privilege and/or the work product doctrine, (2) not privileged, and (3) waived. The Court reviews *de novo* all objections to conclusions of law made or recommended by the Special Master. *See* Fed.R.Civ.P. 53(f)(4).

In response to the Special Master's Report and Recommendation, the parties each filed supplemental briefs. In Plaintiff's response to the Special Master's Report and Recommendation, she first reasserts her arguments as to waiver and second contends that her "ability to respond to the Special Master's Report and Recommendation is unfairly compromised" insofar as "Plaintiff is being asked to discuss the contents of many hundreds of documents without having them in her possession or having the opportunity to review them in the context of these proceedings." (Docket No. 120 at 2-3). As to the former, the Court will address Plaintiff's waiver arguments below. As to the latter, in the normal course of a determination of privilege, the disputed documents are in the hands of the

---

[14] While the Court also adopts the Special Master's Report and Recommendation as to waiver and Rule 1.6(c)(4), the Court will provide its own analysis as to these issues as well.

holder of the privilege, i.e., Allegheny Energy (the client), and thus, the party opposing the application of the privilege would not have the documents to review against a privilege log.[15] Second, in Defendants' supplemental brief,[16] Defendants address and disagree with some of the Special Master's designations. First, as to one document designated in the "Non-Privileged" redweld that Defendants included in their Privilege Log (August 12, 2004 e-mail), Defendants assert an objection to the Special Master's designation contingent on the reasoning for the same. In short, Defendants assert that they object to the designation if the Special Master based his designation on the "header on the e-mail of 'Bill Nesselrotte' " but Defendants do not object if the Special Master based his designation on "the content of the e-mail." (Docket No. 167 at 2 n.3). While the Special Master did not indicate his reasoning (and the Court did not request that he do so), the Court nevertheless finds that the August 12, 2004 e-mail affords protection under the attorney client privilege. Second, as to two documents designated in the "Waiver" redweld, Defendants assert that they never claimed privilege as to said documents and thus, they "believe that none of these documents are privileged to Allegheny." (Docket No. 167 at 3). Accordingly, considering that Defendants do not assert any privilege as to these two documents, the Court finds that the same shall be produced to Plaintiff along with the documents in the "Non-Privileged" redweld. Third, as to

---

[15]

Regardless, both Plaintiff and at least one of her counsel have reviewed the Allegheny documents to some extent, which is evidenced by "Bates" labels stamped on at least some of the documents by Plaintiff.

[16]

Defendants initially filed a response to the Special Master's Report and Recommendation, in which they requested access to the Allegheny documents as designated by the Special Master. (*See* Docket No. 117). At the March 7, 2008 motion hearing, the Court ordered that the Defendants shall have the opportunity to review the Special Master's Report and Recommendation against the Allegheny documents and file a supplemental brief, (*see* Docket No. 141), which Defendants did on March 27, 2008, (*see* Docket No. 167).

approximately 220 documents designated in the "Privileged" redweld, Defendants assert that they never claimed privilege as to the same and thus they are not contained in their Privilege Log, denominated by Defendants as "over-designated documents." (Docket No. 167 at 3). Accordingly, considering that Defendants do not assert any privilege as to these documents, the Court finds that the same shall be produced to Plaintiff.[17] Fourth, as to three documents designated in both the "Privileged" and "Non-Privileged" redweld, Defendants assert that one document was erroneously placed in the "Non-Privileged" redweld[18] and two documents were erroneously placed in the "Privileged" redweld. (Docket No. 167 at 4). Based on the Court's review of the Allegheny documents, the Court agrees with Defendants' explanation. Fifth and finally, as to two documents designated in the "Privileged" redweld, Defendants assert that despite their belief that said documents are protected by the attorney client privilege (with which the Special Master agreed), Defendants agree to waive the privilege as to said documents considering that Defendants used the same documents at the May 21, 2007 deposition of the Plaintiff. Accordingly, the Court finds that the same shall be produced to Plaintiff. Having considered Defendants' specific objections, the Court now turns to its review of the Special Master's Report and Recommendation as to the application of the attorney client privilege and/or the work product doctrine.

b.    *General discussion of attorney client privilege and/or work product doctrine*

---

[17]

The Court notes that Defendants represent that "most, if not all" of said documents have been previously produced to Plaintiff. (Docket No. 167 at 4 n.5). Nevertheless, even at the risk of double disclosure, the Court orders that all said documents shall be produced to Plaintiff by the Defendants pursuant to this Memorandum Opinion and Order.

[18]

Defendants also note that the one document was included in the "over-designated documents" as well. (Docket No. 167 at 4).

Because this Court has federal question jurisdiction over the instant matter, federal law controls as to the attorney client privilege. *See* Fed.R.Evid. 501 cmt. ("In nondiversity jurisdiction civil cases, federal privilege law will generally apply"). Nonetheless, the Third Circuit and the state of Pennsylvania apply the same test in evaluating the attorney client privilege. *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994) ("No one has argued, however, that there are any principles or rules of law as to the attorney client privilege unique to Pennsylvania that should control the resolution of our decision on these matters"); *see also Gilliland v. Geramita*, No. 2:05-CV-01059, 2006 WL 2642525, at *2 n.2 (W.D. Pa. Sept. 14, 2006) (noting the lack of differences between Pennsylvania law and federal common law as to the attorney-client privilege). Hence, the Court will also look to Pennsylvania state law for guidance.

First, as to the attorney client privilege under federal law:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358-59 (D. Mass. 1950)).[19] Second, as to the work product

---

[19]

The Commonwealth of Pennsylvania has codified the attorney client privilege:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall

doctrine, Federal Rule of Civil Procedure 26 partially codified the work product doctrine, the federal common law rule announced in *Hickman v. Taylor*, 329 U.S. 495 (1947). Rule 26 provides, in relevant part: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P. 26(b)(3). "Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed.R.Civ.P. 26(b)(3)." *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 966 (3d. Cir. 1988). As to both the attorney client privilege and the work product doctrine, "[a] party relying upon either the attorney-client privilege or work-product immunity, bears the burden of establishing the applicability of the privilege/protection." *Lady Liberty Transp. Co., Inc. v. Philadelphia Parking Authority*, Civil No. 05-1322, 2007 WL 707372, at *2 n.10 (E.D. Pa. March 1, 2007) (citing *Thompson, Jr. v. Glenmede Trust Co.*, No. 92-5233,

--------

> the client be compelled to disclose the same, unless in either case the privilege is waived upon the trial by the client.

42 Pa. C.S.A. §5928. Furthermore, federal courts interpreting Pennsylvania law of attorney-client privilege have stated:

> Under Pennsylvania law, the elements of attorney-client privilege are the following: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar or court; (3) the communication relates to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion of law or legal services or assistance in some legal proceedings, and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client.

*Constand v. Cosby*, 232 F.R.D. 494, (E.D. Pa. 2006) (citing 42 Pa.C.S.A. § 5928; *Rhone Poulenc v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994)).

1995 WL 752443, at *4 (E.D. Pa. 1995)).

Considering the Special Master's Report and Recommendation and upon the Court's own *in camera* review of the Allegheny documents, the Court adopts the Special Master's designation as to the determination of the applicability of the attorney client privilege and/or the work product doctrine to the Allegheny documents with the exceptions delineated above.[20]

2.      *Waiver*[21]

Plaintiff contends that Defendants waived any argument as to privilege regarding the Allegheny Documents insofar as Defendants have placed Plaintiff's work performance at issue by asserting the same as a basis for her termination. (Docket No. 93 at 3-6). Furthermore, in response to Defendants' Privilege Log as well as in response to the Special Master's Report and Recommendation, Plaintiff reasserts her subject matter waiver argument and also responds to Defendant's argument regarding waiver, i.e., that *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994) controls. While this Court finds (and the Special Master agreed) that *Rhone-Poulenc* applies here, the Court will nevertheless address (at the outset) Plaintiff's subject

---

[20]

The Court notes that Plaintiff's argument as to the application of the attorney client privilege and/or the work product doctrine has been less than consistent. For example, while Plaintiff's initial response to Defendant's motion to seal remained silent as to the application (or lack thereof) of privilege (instead arguing waiver and Rule 1.6(c)(4)), (*see* Docket No. 93), Plaintiff's response to Defendants' Privilege Log addresses the law related to the attorney client privilege and the work product doctrine, ultimately concluding that Defendants bear the burden to demonstrate the same, (*see* Docket No. 110 at 2-4). However, Plaintiff admitted in her deposition that the Allegheny documents which she removed were "attorney/client privileged." (Deposition of Toni Nesselrotte at 331:20-21).

[21]

As to Plaintiff's waiver and Rule 1.6(c)(4) arguments, the Court addresses the same only against the portion of the Allegheny documents deemed protected by the attorney client privilege and/or work product doctrine.

matter waiver argument.

In numerous filings with the Court, Plaintiff has consistently argued that Defendants have waived the attorney client privilege by placing her work performance at issue. (*See* Docket No. 93 at 3-6; Docket No. 110 at 5-8; Docket No. 120 at 1-2). In support, Plaintiff relies on *Murray v. Gemplus International*, 217 F.R.D. 362 (E.D. Pa. 2003), in which the plaintiff sued his former employer for misappropriation of trade secrets and fraud. There, in response to plaintiff's document requests, defendants "produced approximately 415 pages of documents, including at least six internal communications among in-house counsel for Gemplus." *Gemplus*, 217 F.R.D. at 363-364. Thereafter, plaintiff used the documents in a deposition and submitted them to the court by way of letter asserting waiver of privilege, at which point defendants demanded the return of the documents. As such, plaintiff filed a motion to compel, to which defendants asserted the attorney client privilege.[22] Pertinent here, the Court in *Gemplus* found that defendants intentionally disclosed the privileged documents to the plaintiff, hence waiving the attorney-client privilege with respect to those documents, and the Court denied defendants' request for the return of the privileged documents. *Id.* at 366. The Court then built upon that intentional disclosure and found that defendant waived its attorney-client privilege with regard to the scope of the otherwise-privileged documents that it previously disclosed to plaintiff. *Id.* at 367.

Considering *Gemplus*, Plaintiff asserts that Defendants have waived the attorney client privilege and work product doctrine by "selectively disclos[ing] certain information," namely by way of Defendants' Response to Interrogatory 13: "Further, Plaintiff was unable to effectively manage

---

[22] The Court notes that, in most instances, the determination of privilege arises in this manner.

14

and direct either internal employment matters or external litigation handled by outside counsel."[23] (Docket No. 110 at 6). In particular, Plaintiff relies on the following passage from *Gemplus*: "The Court finds most persuasive the argument that when one party intentionally discloses privileged material with the aim, in whole or in part, of furthering that party's case, the party waives its attorney-client privilege with respect to the subject-matter of the disclosed communications." *Gemplus*, 217 F.R.D. at 367. However here, Defendants' Response to Interrogatory 13 contains no attorney client privileged information and Plaintiff points to no other privileged document that Defendants have intentionally disclosed, thus, waiving the attorney client privilege as to the subject matter therein, i.e., Plaintiff's work performance. In other words, Plaintiff fails to point to an occasion where Defendants used attorney client privileged information as "a sword." *See Gemplus*, 217 F.R.D. at 367 (providing that "the attorney-client privilege is a shield used to protect communications, not a sword wielded to gain an advantage in litigation"). Accordingly, the Court finds that *Gemplus* does not mandate waiver here.[24]

Similarly to the *Gemplus* analysis, the United States Court of Appeals for the Third Circuit in *Rhone-Poulenc* held that a client can waive attorney client privilege "by asserting claims or

---

[23]

In this regard, the Court finds that, upon its review of the Allegheny documents, that Plaintiff routinely forwarded information by email to Defendant Hertzog in order to keep him abreast of legal and litigation matters. In some instances, Plaintiff did not provide analysis and/or recommendations.

[24]

In Plaintiff's response to Defendants' motion to seal, Plaintiff cited additional cases for general waiver principles. (*See* Docket No. 93 at 5). Like *Gemplus*, said cases stand for the broad proposition that waiver occurs where a party intentionally discloses privileged material. *See Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1265 (Pa. Super. 2007) ("A litigant attempting to use attorney-client privilege as an offensive weapon by selective disclosure of favorable privileged communications has misused the privilege; waiver of the privilege for all communications on the same subject has been deemed the appropriate response to such misuse").

15

defenses that put his or her attorney's advice in issue in the litigation." *Rhone-Poulenc*, 32 F.3d at 863. "The advice of counsel is placed in issue where the client asserts a claim or defense, *and* attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id.* at 863 (citing *North River Insurance Company v. Philadelphia Reinsurance Corporation,* 797 F.Supp. 363, 370 (D.N.J.1992); *Pittston Company v. Allianz Insurance Co.*, 143 F.R.D. 66, 71 (D.N.J.1992)) (emphasis added).

Essentially, *Rhone-Poulenc* provides a two-step inquiry as to waiver and advice of counsel: (1) the assertion of a claim or defense, and (2) an attempt to prove that claim or defense by disclosing or describing an attorney client communication. First, as to the assertion of a claim or defense, Plaintiff points to alleged statements made by Defendant Hertzog before the Equal Employment Opportunity Commission and an answer to an interrogatory, specifically Defendants' Response to Interrogatory 13. (*See* Docket No. 93 at 3-4). While neither appear to constitute "the assertion of a claim or defense," the Court finds that Defendants appear to raise Plaintiff's work performance as a defense in other pleadings, specifically Defendants' Third Amended Answer and Counterclaims to Plaintiff's Amended Complaint (Docket No. 92) ("Third Amended Answer") and Defendants' Motion for Summary Judgment, (Docket No. 126).[25] In its Third Amended Answer, Defendant pleads the following affirmative defense: "Any action or inaction by Defendants with respect to Plaintiff was taken or not taken for legitimate, non-discriminatory, non-retaliatory reasons." (Third Amended Answer at ¶12). Building on that affirmative defense, in its motion for summary

---

[25] In addition, both Defendant Hertzog and Mr. Feinberg have testified generally regarding Plaintiff's performance and, specifically in Mr. Feinberg's case, regarding a particular discrimination case she handled. (*See* Docket No. 119-2 at 5, 44:24-45:13).

judgment, Defendants argue that assuming Plaintiff can establish a *prima facie* case of discrimination or retaliation, Plaintiff cannot "demonstrate that Defendants' reason for refusing to select her for the Specialist position, her lack of substantive expertise, is a pretext for unlawful discrimination or retaliation." (Docket No. 126 at 1-2); (*see also* Docket No. 127 at 23) ("Defendants' Memorandum of Law in Support of Motion for Summary Judgment") (arguing that "Defendants have a legitimate and non-discriminatory reason for their decision to not hire Plaintiff for the Labor and Employment Specialist position; namely, she was not qualified for the position. Accordingly, Defendants have sufficiently demonstrated legitimate, non-discriminatory reasons for their refusal to hire Plaintiff for the Labor and Employment Specialist position"). While Plaintiff fails to direct the Court to either Defendants' Third Amended Answer or their motion for summary judgment as possible avenues of Defendants' assertion of a claim or defense, for purposes of the instant motion, the Court finds that the same *may* constitute the assertion of a defense in construing whether there has been waiver of the attorney client privilege by asserting advice of counsel under *Rhone-Poulenc*.

Turning to the second element, i.e., an attempt to prove that defense by disclosing or describing an attorney client communication, the Court finds that Defendants have not disclosed or described any attorney client communication to prove their defense that Plaintiff lacked the qualifications for the position in question. In support of her argument, Plaintiff points to a "performance review" asserting that it will be a "key piece of pretext evidence in this case." (Docket No. 93, at 4). However, once again, Plaintiff fails to direct the Court to *an attempt by Defendants* to prove said defense by asserting the "performance review." However, on its own accord, the Court notes that Defendants attached two documents to their motion for summary judgment regarding

17

Plaintiff's work performance while at Allegheny Energy.[26]  Notwithstanding Defendants' reliance

on the same, neither document constitutes an attorney client privileged communication but rather

they represent documents concerning Plaintiff's work performance.  Plaintiff is certainly entitled to

said documents (and similar documents) that are *not* protected by the attorney client privilege and/or

the work product doctrine, and the Court has entered a Protective Order allowing the disclosure and

protection of such documents.  (*See* Docket No. 72).  The Court's review of the two specific

documents attached to Defendants' motion for summary judgment reveals that neither contain a legal

communication and hence, they are not entitled to the protection of the attorney client privilege.[27]

In summary, "[a]dvice of counsel 'is not in issue merely because it is relevant, and does not

necessarily become in issue merely because the attorney's advice might affect the client's state of

mind in a relevant manner.' " *Fidelity and Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516,

520 (E.D. Pa. 1996) (*Rhone-Poulenc*, 32 F.3d at 863).  Moreover, the attorney-client privilege is not

waived by bringing or defending suit.  *Barr Marine Products, Co., Inc. v. Borg-Warner Corp*., 84

F.R.D. 631, 635 (D.C. Pa. 1979) (citation omitted) ("Waiver of the privilege can occur, however,

by pleading privileged material as a defense, but such waiver has only been found where the party

resisting discovery raises as a defense that which transpired between client and counsel, or reliance

on advice of counsel, or questions counsel's authority").  At this point in the litigation,[28] the Court

---

[26]

Specifically, Defendants attached a May 19, 2004 "Memorandum For Human Resources" and an April 14, 2004 "Performance Appraisal Form."  (*See* Docket No. 148-2. at 4-5).

[27]

Likewise, the same reasoning holds true under *Gemplus*.

[28]

The Court does not foreclose the possibility that Defendant may attempt to place advice of counsel at issue later in the litigation, at which time the Court may revisit the issue of waiver.

finds that Defendants have not placed advice of counsel at issue or disclosed any attorney client privileged communication and therefore, there has been no waiver of the attorney client privilege.[29] *See Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 390 (W.D. Pa. 2005) ("Once a party demonstrates the existence of an attorney-client privilege regarding specific communications, then the party challenging the privileged communication bears the burden of demonstrating that a waiver of the attorney-client privileged communication has occurred").

3.    *Rule 1.6(c)*

Plaintiff also argues that Rule 1.6(c)(4) of the Pennsylvania Rules of Professional Conduct "allow[s] Plaintiff to use otherwise privileged information to pursue her case of illegal discrimination by Defendants, as well as to defend Defendants' criticism of Plaintiff's professional abilities." (Docket No. 93 at 6). Specifically, Plaintiff asserts that Rule 1.6(c)(4) permits an attorney (Plaintiff) to use "otherwise privileged information" against a client (Defendants) either "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client ... or to respond to the allegations in any proceeding concerning the lawyer's representation of the client." (Docket No. 93 at 7-8).[30]

---

[29] In the alternative to her waiver argument, Plaintiff asserts that if the Court "prevent[s] Plaintiff from having full access to evidence regarding her job performance, [Defendants] must forfeit any possibility of alleging that her performance was a basis for Plaintiff's termination." (Docket No. 93 at 6). First, Plaintiff cites no case law in support of her request. Second, considering that the Court is not preventing Plaintiff from access to evidence regarding her work performance but only upholding the application of the attorney client privilege where appropriate, the Court finds Plaintiff's request to be without merit.

[30] In fact, Plaintiff asserts that the Court need not determine privilege because she may use "such documents, whether or not privileged, to pursue her claims and defend against Defendants' criticism of Plaintiff's performance as its attorney." (Docket No. 93 at 7).

Turning to the Rule at issue, Rule 1.6(c)(4) of the Pennsylvania Rules of Professional Conduct, entitled "Confidentiality of Information," provides, in relevant part: "A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary: (4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client ... or to respond to the allegations in any proceeding concerning the lawyer's representation of the client." Pa. R. Prof'l Conduct R. 1.6(c)(4).[31] Furthermore, "[t]he duty of confidentiality continues after the client -lawyer relationship has terminated." Pa. R. Prof'l Conduct R. 1.6 Explanatory Comment n.25; *see also* Pa. R. Prof'l Conduct R 1.9(c) ("A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client").

As a threshold point, the Court wishes to draw a distinction between the use of privileged information in litigation and the manner or method in which an attorney obtains said privileged information. While Rule 1.6(c)(4) allows an attorney to "reveal" "information relating to the representation of a client" in specified instances, the Rule does not reference the method by which a former employer-attorney obtains such information. Plaintiff apparently contends that Rule 1.6(c)(4) not only allows her to use such information in her case but justifies her conduct in copying and removing privileged and confidential information from her former place of employment despite

---

[31]
    The Court notes that the version of Rule 1.6(c)(4) in effect at the time of Plaintiff's conduct (in or around October 2004) and relevant here is identical to the current version.

the Ethics Code and Confidentiality Agreement. While the former is open to argument (which the Court addresses immediately below), in the Court's estimation, Rule 1.6(c)(4) does not justify the method in which Plaintiff removed said documents. Stated differently, to the extent Plaintiff asserts that Rule 1.6(c)(4) allows an in-house attorney to copy and remove privileged and/or confidential documents before his or her last day of employment in order to use the same in future litigation against her former employer, the Court finds that such a reading ignores a well-settled aspect of the attorney-client privilege: the privilege belongs to the client, not the attorney. *See* 42 Pa. C.S.A. § 5928 (1982); *DiPalma v. Medical Mavin, Ltd.*, No. Civ.A. 95-8094, 1998 WL 123009, at *3 (E.D. Pa. Feb. 10, 1998) ("The attorney-client privilege belongs to the client and can be waived only by the client"); *Buck By Buck v. Aetna Life & Cas. Co.*, Civ. A. No. 91-2832, 1992 WL 130024, at *1 (E.D. Pa. June 5, 1992) ("The law of attorney-client privilege is well-settled that the privilege belongs to the client, rather than the attorney"). From a practical perspective, such a ruling would wreck havoc on the denouement of the employment relationship between in-house attorneys and employers, insofar as attorney-employees would copy and remove a slew of documents requiring employers (i.e., the clients) to litigate the return of the same (akin to the instant case). As such, the Court refuses to endorse such a reading of Rule 1.6(c)(4). On the contrary, as this Court has stated on numerous occasions, the proper avenue for a former employee (even an attorney) to obtain privileged and/or confidential documents in support of his or her claims is through the discovery process as set forth in the Federal Rules of Civil Procedure, not by self-help.[32] With the above in mind, the Court now turns to Plaintiff's argument that Rule 1.6(c)(4) trumps the attorney-client

---

[32] While not entirely achieved by self-help, Plaintiff employed the aid of two assistants to print and copy the Allegheny documents.

privilege.

In support of her argument that Rule 1.6(c)(4) permits her to use the Allegheny Documents in the instant litigation, Plaintiff relies on three authorities: (1) *Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173 (3d 1997); (2) *Willy v. Administrative Review Board*, 423 F.3d 483 (5th Cir. 2005); and (3) Formal Opinion 01-424 ("ABA Opinion") entitled "A Former In-House Lawyer May Pursue a Wrongful Discharge Claim Against Her Former Employer and Client As Long As Client Information Properly is Protected," issued by the American Bar Association. The Court will address each source.

First, in *Kachmar*, plaintiff filed retaliation and gender discrimination claims in violation of Title VII as well as pendent state law claims. There, the district court dismissed plaintiff's retaliation claim finding that she could not prove the requisite causation. On appeal, the Court held that plaintiff's complaint stated "a colorable claim as to which she is entitled to further factual development." *Id.* at 179. However, as an alternative basis to affirm the dismissal, the defendant-employer argued "that maintenance of Kachmar's retaliatory discharge action would improperly implicate communications subject to the attorney-client privilege and/or information relating to Kachmar's representation of Sungard." *Id.* at 179. After discussing relevant federal and state case law concerning discrimination actions brought by in-house attorneys and opining that a trial court may be able "to draft a procedure that permits vindicating Kachmar's rights while preserving the core values underlying the attorney-client relationship," the Court concluded the following: "we cannot affirm the dismissal of Kachmar's retaliatory discharge claim at this preliminary stage on the alternative ground suggested by Sungard." *Id.* at 182.

As such, *Kachmar* stands for the proposition that an in-house attorney may bring a claim for

retaliation under Title VII against his or her former employer even if such an action implicates the attorney-client privilege or confidential information. *See id.* at 181 ("We do not suggest that concerns about the disclosure of client confidences in suits by in-house counsel are unfounded, but these concerns alone would not warrant dismissing a plaintiff's case, especially where there are other means to prevent unwarranted disclosure of confidential information"). The Court does not quarrel with this conclusion.[33] However, despite Plaintiff's contention, *Kachmar* did not go so far as to hold that the Pennsylvania Rules of Professional Conduct generally, let alone Rule 1.6(c)(4) specifically, require that a plaintiff be permitted to access and use (or, in the words of Rule 1.6(c)(4), "reveal") privileged documents in litigation.[34] In fact, the Court in *Kachmar* recognized that the Pennsylvania

---

[33]

Further, this conclusion is relatively unremarkable given similar rulings by other courts. *See Crews v. Buckman Laboratories International, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002) (holding "that a lawyer may generally bring a claim for retaliatory discharge when the lawyer is discharged for abiding by the ethics rules as established by this Court"); *Burkhart v. Semitool, Inc.*, 5 P.3d 1031, 1042 (Mont. 2000) (concluding that "in-house counsel may maintain an action for employment related claims against an employer-client, and that such claims are within the contemplation of Rule 1.6 of the Montana Rules of Professional Conduct, which permits an attorney to reveal confidential attorney-client information to establish a claim in a controversy between the lawyer and the client"); *General Dynamics Corp. v. Superior Court*, 876 P.2d 487, 490 (Cal. 1984) (concluding "that there is no reason inherent in the nature of an attorney's role as in-house counsel to a corporation that in itself precludes the maintenance of a retaliatory discharge claim, *provided* it can be established without breaching the attorney-client privilege or unduly endangering the values lying at the heart of the professional relationship") (emphasis in original). *But see Balla v. Gambro, Inc.*, 584 N.E.2d 104, 111 (Ill. 1991) (concluding "that in-house counsel generally are not entitled to bring a cause of action for retaliatory discharge against their employer/client"). While not raised by Plaintiff, *Burkhart* appears to lend support to her position regarding the application of the Montana-equivalent of Rule 1.6, however that case is merely persuasive and easily distinguishable given the egregious facts surrounding Plaintiff Nesselrotte's conduct here.

[34]

In point of fact, the Court declined to determine potential privilege of evidence obtained by plaintiff as part of her employment: "It is premature at this stage of the litigation to determine the range of the evidence Kachmar will offer and whether or how it will implicate the attorney-client privilege." *Kachmar*, 109 F.3d at 181.

Rules of Professional Conduct "do not address affirmative claims for relief under a federal statute," which represents the issue at bar. *Kachmar*, 109 F.3d at 179-80. Based on the silence of the Rules, *Kachmar* describes the Rules as "at best inconclusive on the issue Sungard raises," i.e., the right to bring suit by former in-house attorneys against employers where said suits implicate confidential or privileged information. *Id.* Accordingly, the Court finds that *Kachmar* does not stand for the proposition espoused by Plaintiff, i.e., Rule 1.6(c)(4) trumps the attorney client privilege in causes of action by a former in-house counsel against his or her former employer.

Second, in *Willy*, the U.S. Court of Appeals for the Fifth Circuit reviewed a decision of the Department of Labor Administrative Review Board ("ARB") dismissing a former in-house counsel's retaliation claims. 423 F.3d at 485-86. Relevant here, the ARB upheld an administrative law judge's conclusion that no exception to the attorney client privilege existed to admit certain documents. However, on appeal, the Court held that the ARB's rejection of the breach of duty exception was "contrary to law." *Id.* at 496. While the Court discussed *Kachmar*, the Model Rules, and other cases involving similar facts, the Court noted the limited reach of its narrow holding:

> [W]e merely hold that no rule or case law imposes a *per se* ban on the offensive use of documents subject to the attorney-client privilege in an in-house counsel's retaliatory discharge claim against his former employer under the federal whistleblower statutes when the action is before an ALJ.

*Id.* at 501. Moreover, the Court emphasized the unusual procedural posture of that case: "the claim of a former in-house counsel against his former employer before an ALJ only ... ." *Id.* at 500. Of particular significance here, the Court left open the question of a case such as the one at bar: "What is *not* before us is a suit involving a jury and public proceedings, so we leave that possibility for another day." *Id* (emphasis in original).

Third, ABA Opinion 01-424 addresses "the constraints that may be imposed on retaliatory or wrongful discharge claims by in-house lawyers against their former employers and claims under the Model Rules of Professional Conduct." *Id.* at 1. In finding that the Model Rules of Professional Conduct do not preclude an in-house lawyer from suing his or her former client, ABA Opinion 01-424 determines that, in maintaining such an action, a lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary. *Id.* at 3-4. However, the scope of ABA Opinion 01-424 is limited by its own words: "The Committee only addresses the ethical considerations that arise under the Model Rules when such an action is permitted under applicable state law." *Id.* at 1-2. As the Court reads Opinion 01-424, it does not appear to consider the implications of the attorney client privilege and/or work product doctrine and how they interact with the Model Rules. Accordingly, the Court finds that Opinion 01-424 provides little assistance in favor of Plaintiff's position.[35]

In summary, the Court does not foreclose the notion of a former in-house counsel revealing information relating to the representation of a client in a proceeding against a client (and former employer). As noted above, courts in California, Tennessee and Montana have held as much. In support of their respective arguments, Plaintiff only focuses on her right to bring suit under Title VII and related statutes and Defendants only focus on their right of protection from disclosure under the

---

[35]

Furthermore, ABA Opinion 01-424 provides that "[a]n in-house lawyer pursuing a wrongful discharge claim *must* comply with her duty of confidentiality to her former client and *may* reveal information to the extent necessary to establish her claim against her employer." ABA Opinion at 5 (emphases added). However, the Pennsylvania statute makes no exception and the Plaintiff has not directed the Court to any recognized exception under federal common law. Furthermore here, the Plaintiff's compliance (or alleged lack thereof) with her duty of confidentiality is the subject of a counterclaim. (*See* Docket No. 92 at 10-16).

attorney client privilege; however, the Court must weigh both considerations. Plaintiff points to Rule 1.6(c)(4), but, as pointed out by Defendants, "[t]he rules that govern the ethical obligations of the legal profession (presently, the Rules of Professional Conduct) do not constitute substantive law." *Commonwealth v. Chmiel*, 738 A.2d 406, 415 (Pa. 1999). Further, while *Kachmar* opines on "equitable measures ... 'designed to permit the attorney to attempt to make necessary proof while protecting from disclosure client confidences subject to the privilege,' " *Kachmar*, 109 F.3d at 182 (quoting *General Dynamics Corp. v. Superior Court*, 876 P.2d 487, 504 (Cal. 1994) (en banc)),[36] this Court recognizes that "[a]s the [attorney client] privilege serves the interests of justice, it is worthy of maximum legal protection." *Rhone-Poulenc*, 32 F.3d at 862 (citing *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992)). Considering the Court's determination of the application of the attorney client privilege and work product doctrine to a portion of the Allegheny documents, and absent a recognized exception, *see Oak Lane Printing & Letter Service, Inc. v. Atlantic Mut. Ins. Co.*, Civil Action No. 04-3301, 2007 WL 1725201, at *3 (E.D. Pa. June 13, 2007) (citing *Rhone-Poulenc*, 32 F.3d at 862) ("The privilege being properly invoked, the burden shifts to the party seeking disclosure of the communications to demonstrate that one of the limited exceptions to privilege applies"), the Court declines to hold that Rule 1.6(c)(4) of the Pennsylvania Rules of Professional Conduct trumps the attorney client privilege *in the context of this case*, where an attorney employed

---

[36] "Among those [equitable measures] referred to in *General Dynamics* were '[t]he use of sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings.' " *Kachmar*, 109 F.3d at 182 (quoting *General Dynamics*, 876 P.2d 504) (alteration in original). On October 23, 2007, after the instant matter had been pending for over one year, this Court entered a Protective Order. (*See* Docket No. 72). Furthermore, on numerous occasions throughout this case, the Court has allowed the parties to file documents under seal and, as part of the resolution of the instant motion, the Court has conducted an *in camera* review of disputed documents.

self help by removing without authorization privileged and confidential documents seemingly in breach of her former employer's Ethics Code and Confidentiality Agreement.[37]

## CONCLUSION

Accordingly, based on the foregoing, the Court **GRANTS** Defendants' Motion for Submission of Documents Under Seal and Incorporated Memorandum of Law [91] to the extent that Defendants seek a determination of the attorney client privilege and/or the work product doctrine as to the Allegheny documents. The Court adopts the Special Master's Report and Recommendation, with the respective amendments referenced herein, and, in accordance therewith, the Court fashions the following relief: (1) all documents deemed subject to the attorney client privilege and/or the work product doctrine shall not be returned to Plaintiff's counsel; instead, the Court shall return the same to the Defendants; and (2) all documents deemed non-privileged shall be returned to Defendants and they shall produce the same to the Plaintiff within ten (10) days of receipt of said documents.[38]

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc:     All counsel of record.

Date:   July 22, 2008.

---

[37]

While federal law controls here, the Court notes that the attorney client privilege under Pennsylvania law prohibits counsel from testifying or being compelled to disclose "confidential communications" made to counsel by a client "unless in either case this privilege is waived upon the trial by the client." 42 Pa. C.S.A. § 5928. Plaintiff has not directed the Court to any other exception to the attorney client privilege codified by Pennsylvania law or recognized by any court, notably any exception stemming from the Rules of Professional Conduct.

[38]

The Court will return all of the Allegheny documents to the Defendants in the same manner in which it received them from the Special Master and Defendants *shall bear* the sole responsibility to produce the relevant documents in accordance with the instant Memorandum Opinion and Order.