IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONI M. NESSELROTTE, <br>     Plaintiff, <br> <br> vs. <br> <br> ALLEGHENY ENERGY, INC., ET AL., <br>     Defendants. | Civil Action No. 06-01390 <br> Judge Nora Barry Fischer |

## MEMORANDUM OPINION and ORDER

On October 11, 2004, Defendant Allegheny Energy notified Plaintiff, an in-house attorney, of her termination from her employment with Allegheny Energy, effective October 31, 2004. Thereafter and until her last day of employment,[1] Plaintiff copied and removed hundreds of documents ("Allegheny documents").[2]

Pending before the Court for consideration is a Motion for Monetary Sanctions and for Disqualification of Plaintiff's Counsel [115], filed by Defendants, Allegheny Energy Inc., Allegheny Energy Service Corporation and David B. Hertzog ("Defendants"), in which they request disqualification of Plaintiff's counsel as well as monetary sanctions and attorneys' fees and costs based on "his unethical conduct in failing to alert Allegheny of his possession--for nearly 3 years--of Allegheny's privileged documents." (Docket No. 115 at 7). For the following reasons, the Court denies Defendants' motion.

---

[1] At the April 23, 2008 motion hearing, counsel for Defendants alluded to the fact that Plaintiff began copying documents before October 11, 2008, specifically on or about October 6, 2008. (*See* Transcript at 58:12-59:1). However, for purposes of the instant motion, the precise date is inconsequential.

[2] In a Memorandum Opinion and Order dated July 22, 2008, this Court found that a portion of the Allegheny documents are protected by the attorney client privilege and/or the work product doctrine. (*See* Docket No. 194).

# PROCEDURAL BACKGROUND

Defendants filed the instant motion on February 26, 2008. After the Court granted her an extension of time to respond, on March 14, 2008, Plaintiff Nesselrotte filed Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Monetary Sanctions and Disqualification of Plaintiff's Counsel (Docket No. 155). On March 17, 2008, Defendants filed Defendants' Supplement to Motion for Monetary Sanctions and for Disqualification of Plaintiff's Counsel (Docket No. 156) and the Declaration of John Kostuch in support of their motion (Docket No. 157). On March 24, 2008, Defendants filed Defendants' Reply in Support of Motion for Monetary Sanctions and Disqualification of Plaintiff's Counsel (Docket No. 161). On March 31, 2008, in line with the Court's March 25, 2008 Order, (Docket No. 164), Defendant filed a Notice of Filing Privileged and/or Confidential Exhibits Under Seal. (*See* Docket No. 171). On April 1, 2008, Plaintiff filed Plaintiff's Brief in Opposition to Defendants' Supplement to Motion for Monetary Sanctions and for Disqualification of Plaintiff's Counsel (Docket No. 172). On April 9, 2008, Defendants filed Defendants' Reply in Support of Supplemental Motion for Monetary Sanctions and Disqualification of Plaintiff's Counsel. On April 23, 2008, the Court held a motion hearing, in which it heard oral argument on the pending motion.[3] At the conclusion of the hearing, the Court instructed the parties to meet and attempt to agree as to the exhibits presented at the hearing (all from the Defendants). (*See* Transcript at 207:10-14). Thereafter, on April 29, 2008, Defendants filed their Notice of Filing Exhibits Used at the April 23, 2008 Hearing, in which they attached a complete set of the demonstrative exhibits presented at the hearing but indicated that the Plaintiff did not consent

---

[3] All citations to "Transcript" refer to the April 23, 2008 motion hearing.

to the Notice. (Docket No. 185). Thus, on April 30, 2008, Plaintiff filed a Motion for Leave to File Response to Defendants' Exhibits (Docket No. 187), which the Court granted on the same day and instructed Plaintiff to file her response on or before May 9, 2008 (Docket No. 188). Thereon, Plaintiff filed Plaintiff's Response to Defendants' Exhibits, in which she, in her words, seeks to place the exhibits in their "proper context." (Docket No. 191 at 1). On May 12, 2008, Defendants filed another Notice of Filing, to which they attached copies of the Pennsylvania Rules of Professional Conduct, including current versions as well versions in effect in 2004. (Docket No. 192). Lastly, on May 16, 2008, Plaintiff filed certain exhibits under seal (specifically, exhibits C, D, F, G, L, M, N, O), (*see* Docket No. 193), which the Court had previously granted her leave to do. Needless to say, the instant motion is fully briefed and ripe for disposition.

**ANALYSIS**

Defendants request the following in terms of relief: (1) disqualify Plaintiff's counsel from further representation of Plaintiff in this case; (2) require Plaintiff and her counsel, jointly and severally, to reimburse Defendants for fees and costs relating to this case dating back to May of 2007; and (3) prohibit Plaintiff's counsel from seeking recovery from Defendant of any fees and costs "expended by Plaintiff's counsel in responding to or otherwise attempting to thwart through motion practice the return of Allegheny's privileged and confidential documents to Allegheny." (Docket No. 115 at 16). The Court shall consider Defendants' motion in this manner.

However, before addressing the merits of Defendants' requested relief, the Court first wishes to address three arguments proffered by Plaintiff, which, in the Court's estimation, fail to directly speak to the issue of disqualification: (1) Defendants have conceded that Plaintiff's use of privileged documents is "proper" and hence, the doctrine of judicial estoppel prohibits Defendants from

3

asserting a contrary position at this point; (2) the prior presiding Judge's decision on a motion to compel represents the law of the case which prevents Defendants from relitigating the issue here; and (3) Rule 1.6 of the Code of Professional Conduct allowed Plaintiff to disclose privileged documents. (*See generally* Docket No. 155 at 2-12).[4]

First, Plaintiff asserts that Defendants have adopted two "inconsistent" positions and thus, the doctrine of judicial estoppel prevents Defendant from arguing the latter. Specifically, the two purported "inconsistent" positions are as follows: (1) Rule 1.6(c) of the Rules of Professional Conduct trumps the attorney-client privilege, allegedly asserted by counsel for Defendants during the deposition of David Williams and subsequently, to the Court during oral argument arising out of the same deposition on August 21, 2007, (Docket No. 155 at 3); and, (2) Defendants' current position, namely that "Rule 1.6 provides no relief to Plaintiff as it relates to her taking of and use of what otherwise may be privileged documents," (Docket No. 155 at 4). While the Court agrees that the latter represents Defendants' position (in some form), the complete context of the former demonstrates that counsel for Defendants' recitation as to Rule 1.6 constituted an explanation of Plaintiff's position, not Defendants' position:

> So, Your Honor, with regard, you know, whether they were on notice and whether we've always asserted the privilege, there's no dispute here whatsoever that we've always asserted and have maintained the privilege.
> What they [i.e., Plaintiff and her counsel] are falling under, Your Honor, is a rule which we have also put before you, which is Rule 1.6, Confidentiality of Information, and for an attorney, in this case the Plaintiff, Ms. Nesselrotte, in a case where the attorney is

---

[4] The Court notes that after asserting the above three arguments in its response brief, Plaintiff finally argues the merits of the disqualification, which the Court will consider below. (*See* Docket No. 155 at 12-16).

> preparing her case, matters that are necessary for the presentation of her case, that that trumps the privilege.

(Deposition of David Williams at 37:15-22). At best, Plaintiff's argument is without merit.

Second, Plaintiff asserts that the doctrine of the "law of the case" prevents Defendants from relitigating "the merits of Defendants' argument that Plaintiff and her counsel engaged in wrongdoing as it relates to the documents that Plaintiff copied and retained from her employment at Allegheny Energy." (Docket No. 155 at 6). Specifically, Plaintiff relies on the July 23, 2007[5] Order (Docket No. 48), denying Defendants' Motion to Compel Responses to Certain Interrogatories and Requests for Production of Documents (Docket No. 44). According to Plaintiff, because the Court denied Defendants' request to return all copies of documents that she removed from her employment, said Order represents the law of the case and Defendants may not relitigate this issue. (*See* Docket No. 155 at 5-7). This argument fails for three reasons. First, at the most basic level, the merits of the instant motion were not briefed or ruled upon by the Court in the July 23, 2007 Order in any meaningful way whatsoever. Second, while Defendants' motion to compel touched on Plaintiff's removal of documents and requested the return of the same, (*see* Docket No. 45 at 10-11), as this Court has previously noted, (*see* Docket No. 73, at 8 n.8), Defendants did not finish the deposition of the Plaintiff until August 20, 2007, more than two months after they filed the motion to compel. Thus, the prior Judge did not have the benefit of all of the facts depicting the Plaintiff's conduct. And third, even in light of the July 23, 2007 Order, the Court ordered Plaintiff (and her counsel) to submit to it all Allegheny Energy documents in her custody. (*See* Docket No. 85). Upon

---

[5] While the Order is dated July 23, 2007, the Order was not docketed until the next day, July 24, 2007. The Order was signed by the prior Judge assigned to this matter, the Honorable Gary L. Lancaster.

5

reconsideration, the Court addressed and rejected the precise argument raised here, noting (1) no conflict exists between the Court's July 23, 2007 Order (denying the motion to compel) and the Court's November 16, 2007 Order (instructing Plaintiff to submit all Allegheny Energy documents to the Court), and, to the extent a conflict exists, (2) the circumstances occurring after July 23, 2007, in particular the conclusion of Plaintiff's deposition and the filing of counterclaims by the Defendants, provide ample grounds for the Court's latter order. (*See* Docket No. 90). In other words, the Court has previously rejected Plaintiff's "law of the case" argument and the Court does so again here.

Third and finally, Plaintiff's argument regarding Rule 1.6(c)(4) misses the point of Defendants' motion for disqualification. At issue in the pending motion is Plaintiff's removal of documents and Plaintiff's counsel retention of said documents for over three years, until ordered otherwise by the Court. In raising the application of Rule 1.6(c)(4) here, Plaintiff seeks to argue the convergence of Rule 1.6(c)(4) and the attorney-client privilege. While Plaintiff attempts to blur the line between (1) her decision to remove documents and her counsel's retention of the same and (2) whether Rule 1.6 trumps the attorney-client privilege, the Court sees a clear distinction between the two inquiries. The Court reads Defendants' instant motion as challenging Plaintiff's method of removal of documents and counsel for Plaintiff's retention of the same, not the underlying merits of whether an in-house attorney (former employee) may *reveal* privileged/confidential documents in litigation against a client (former employer), which the Court has previously resolved. (*See* Docket No. 194).[6]

---

[6] Nonetheless, to the extent Plaintiff contends that Rule 1.6(c)(4) justifies her conduct in removing the Allegheny documents, the Court disagrees. (*See* Docket No. 194).

Having considered and rejected the above arguments, the Court now turns to the requested relief.

1.  *Disqualification*

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980) (citations omitted). When considering a motion to disqualify, a court "must strike a balance between several competing considerations," including "the unfettered practice of law," "the judiciary's responsibility to ensure that the integrity of the profession is maintained," and striking a "balance [between] the plaintiff's right to retain counsel of his or her choice against the opposing party's right to prepare and try a case without prejudice." *Belote v. Maritrans Operating Partners, L.P.*, 1998 WL 136523, at *6 (E.D. Pa. March 20, 1998) (citation omitted). "Motions to disqualify are generally disfavored, and a party's choice of counsel is entitled to substantial deference." *Walsh v. Consolidated Design & Engineering, Inc.*, Civil Action No. 05-2001, 2008 WL 131135, at *3 (E.D. Pa. Jan. 14, 2008) (citing *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1203 (E.D. Pa. 1992)).

In support of their motion, Defendants rely (almost exclusively) on *Furnish v. Merlo*, Civ. No. 93-1052-AS, 1994 WL 574137, at *1 (D. Or. Aug. 29, 1994). In *Furnish*, plaintiff brought an employment discrimination action against her former employer and individual defendants alleging discrimination (sex, marital status, and pregnancy) and retaliation under state and federal law as well as other state law claims. Before her termination, plaintiff, an executive assistant to the Chief Financial Officer ("CFO") at Louisiana-Pacific Corporation, her employer, unlocked the CFO's desk, reviewed her personnel file, and removed documents, in particular a memorandum prepared by her

employer's in-house counsel discussing her ensuing termination, known as the "Biencourt memo." *Furnish*, 1994 WL 574137, at *2. Plaintiff made a copy of the Biencourt memo. Either at that time or some time later, plaintiff returned and printed additional documents from the CFO's computer and copied documents from her personnel file as well as from the work area of one of the individual defendant's assistant, all of which were "highly confidential." *Id.* Shortly thereafter, plaintiff delivered the documents to her attorney. While counsel for Furnish used the Biencourt memo in the deposition of the CFO, they later decided to return the same as well as the other documents to the defendants but retained "compilations." *Id.* at *3.

Defendants filed a motion for summary judgment on the basis of the defense of after-acquired evidence, which provided the Court the opportunity to discuss the conduct of plaintiff and her counsel.[7] In short, the Court found the following: (1) plaintiff improperly took all the documents (both the Biencourt memo and the other documents); (2) counsel for plaintiff's retention of the Biencourt memo was "inexcusable given their knowledge of their client's conduct in obtaining it," *id.* at *9, and (3) counsel for plaintiff's delay and retention of the other "sensitive financial information" was "at a minimum, unduly cavalier," *id.* at *10. However, noting the incomplete record before it at that time, the Court did not recommend a remedy but instead ordered defendants to submit the Biencourt memo and "compilations" to the Court for an *in camera* review. *Id.* at *11.

Relevant here, on a separate motion for summary judgment regarding sanctions, the Court in *Furnish* addressed the appropriate remedies for plaintiff's and her counsel's misconduct.[8] As to

---

[7] The *Furnish* Court's disposition on the motion for summary judgment and discussion regarding after-acquired evidence is not relevant to this analysis.

[8] The Court notes that Defendants attached to their motion a copy of the magistrate judge's

8

remedies, defendants requested the following: (1) dismissal of the case; (2) disqualification of counsel; (3) prohibition of further disclosure of documents; and (4) the award of expenses. In structuring a remedy, the Court weighed five factors as instructed by the United States Court of Appeals for the Ninth Circuit. However, before turning to the same, the Court made two findings: (1) plaintiff's misconduct in reading, copying and taking the documents as well as her counsel's misconduct in retaining and using the Biencourt memo and retaining the other documents was "willful;" and (2) "the misrepresentations of Furnish's counsel to the court were made in bad faith." *Furnish*, Civ. No. 93-1052-AS, at 6:17-24. Of particular significance here, is the Court's discussion of alternatives to dismissal, i.e., exclusion of the documents and disqualification of counsel. As to exclusion of the documents, the Court found that "[i]n light of the fact that I find Furnish and her attorneys improperly obtained knowledge of the documents, Furnish and her attorneys should be prohibited from referring to or using them or their contents, directly or indirectly, or disclosing their contents." *Furnish*, Civ. No. 93-1052-AS, at 8:5-8. As to disqualification, the Court found that considering "Furnish's counsel's wrongdoing--especially in misrepresenting matters to the court--I conclude that without disqualification, there is a substantial risk that the documents, and their contents, will continue to influence this litigation." *Furnish*, Civ. No. 93-1052-AS, at 10:19-23. Finally, the Court found that considering the risk of prejudice to the defendants, public policy favoring disposition on the merits, and the availability of alternatives less drastic than dismissal, the Court declined to recommend dismissal.

The Court finds that the instant case differs from the facts in *Furnish* in two significant ways.

---

"Findings and Recommendation" as well as the district court's "Findings and Order" in *Furnish* with regard to the remedies. (*See* Docket No. 115-7, Exh. E).

First, in fashioning a remedy, the Court in *Furnish* based its decision to disqualify on two points: (1) "[n]o reasonable argument can be made that [plaintiff and her counsel's] actions were taken inadvertently or unknowingly;" and (2) "the misrepresentations of Furnish's counsel to the court were made in bad faith." *Furnish*, Civ. No. 93-1052-AS, at 6:20-24. As to the latter, the Court elaborated: "As discussed in the Sealed Findings and Recommendations, I find that Furnish's counsel made misrepresentations, in bad faith, to the court. These acts are beyond the possibility of impropriety. They are actual wrongdoing, related to the merits of the case." *Furnish*, Civ. No. 93-1052-AS, at 9:9-12. Furthermore, the Court based its ruling regarding disqualification on the same: "Based on my findings of Furnish's counsel's wrongdoing--especially in misrepresenting matters to the court--I conclude that without disqualification, there is a substantial risk that the documents, and their contents, will continue to influence this litigation." *Furnish*, Civ. No. 93-1052-AS, at 10:19-23. Accordingly, the imposition of the sanction of disqualification in *Furnish* stemmed, in large measure, from counsel's "wrongdoing" as opposed to the conduct of Furnish herself.[9]

Although it is beyond dispute that Plaintiff's removal of the documents and counsel for Plaintiff's retention of the same was knowing (and they admit as much), the Court finds no evidence of bad faith on behalf of counsel for the Plaintiffs, especially in light of Plaintiff's counsel's

---

[9] The Court finds this significant insofar as Defendants assert that the facts of the instant case are more egregious than the facts of *Furnish* considering (among other points) that (1) Plaintiff is an attorney and (2) Plaintiff was subject to a Confidentiality Agreement. (*See* Docket No. 161 at 3-4). While these facts certainly color Plaintiff's conduct, the Court in *Furnish* focused on counsel's "wrongdoing" in fashioning the remedy of disqualification. *See Furnish*, Civ. No. 93-1052-AS, at 10:19-23. Although relevant, considering the reasoning in *Furnish*, the Court finds that the instant Plaintiff's position as an attorney and the existence of a Confidentiality Agreement are not dispositive of the disqualification motion in Defendants' favor. In fact, the Court opines that said facts are more relevant to the merits of Defendants' counterclaims for breach of contract and breach of fiduciary duty, which remain pending before the Court.

representation that he conducted legal research as to the ethical rules regarding Plaintiff's removal of the Allegheny documents and his decision to retain the same, (*see* Docket No. 172-2, at ¶¶1-6), as well as his decision to retain an expert in support of his position,[10] (*see* Docket No. 175) ("Expert Report of Thomas Ross").[11] Even though the Court has rejected Plaintiff's argument regarding the application of Rule 1.6(c)(4), (*see* Docket No. 194),[12] a distinction exists, albeit a fine one, between the Court's disagreement with and rejection of Plaintiff's counsel's arguments and a finding of bad faith. Thus far, there is no evidence of the latter on behalf of Plaintiff's counsel in this case.

Second, the Court in *Furnish* centered its discussion (both in the initial Findings and Recommendation on the motion for summary judgment and in the subsequent Findings and Recommendation as to the remedy) on the nature of the so-called "Biencourt Memorandum," marked "Attorney-Client Privileged" and which "discuss[ed] the reasons for terminating [Furnish's] position." *Furnish*, 1994 WL 574137, at *2. There, considering the nature of her claim for discrimination under state and federal law as well as other common law claims, the "Biencourt

---

10

The Court notes that (in addition to his discussion of Rule 1.6(c)(4)) Professor Ross relies on Section 83 of the Restatement of the Law Governing Lawyers of the Restatement of the Law Third for the proposition that an exception to the attorney client privilege exists as to the use of confidential information in a situation such the one at bar. However, Plaintiff fails to point to any court in Pennsylvania adopting section 83 and the Court's own research has not located the same.

11

The Court notes that Defendants also employed their own expert, Professor Steven Lubet, who filed a Declaration and Report on September 20, 2007, (*see* Docket No. 57), as well as a Supplemental Declaration and Report on April 23, 2008, (*see* Docket No. 183).

12

*But see Burkhart v. Semitool, Inc.*, 5 P.3d 1031, 1042 (Mont. 2000) (concluding that "in-house counsel may maintain an action for employment related claims against an employer-client, and that such claims are within the contemplation of Rule 1.6 of the Montana Rules of Professional Conduct, which permits an attorney to reveal confidential attorney-client information to establish a claim in a controversy between the lawyer and the client")

Memorandum" and its lingering effects on the case by way of Furnish's counsel's knowledge of the same played a significant role in the Court's decision to disqualify: "The interests of society, this court and the defendants require that Furnish and her counsel make extraordinary efforts to purge their knowledge of the documents from this case." *Furnish*, Civ. No. 93-1052-AS, 10:15-17. Here, the Court finds that no similar "purge" is required given counsel for Plaintiff's limited knowledge of the Allegheny documents.[13] Hence, even in the absence of disqualification, the Court finds that the documents removed by Plaintiff will not influence the litigation, unlike the case in *Furnish*. Nevertheless, even if Mr. Carroll had reviewed the documents (and considering that Ms. Cami Davis, co-counsel for Plaintiff, presumably reviewed the documents to some extent in light of the Bates stamped on many of the documents), the Court still finds that counsel for Plaintiff's knowledge of the same would have a minimal effect on this litigation. Based on the Court's review of the documents in question, there is no document in the hundreds of pages of documents removed by Plaintiff that even closely resembles the "Biencourt Memorandum" in terms of relevance to the instant cause of action. The "Biencourt Memorandum" provided a roadmap to defendant's case (at least as to retaliation) including "reasons we [employer] are going to give for termination," *Furnish*,

---

[13]

As a subplot to the instant dispute, Defendants raise alleged misrepresentations made to the Court by counsel for Plaintiff (specifically, James W. Carroll) regarding whether he reviewed the documents in question. (*See* Docket Nos. 156, 172, & 176). According to Defendants, Mr. Carroll has made conflicting representations to the Court in pleadings, at oral argument, and in affidavits regarding review of the documents. (*See* Docket No. 156 at 7-11). Contrary to counsel for Defendants' argument, the Court finds that Mr. Carroll's statements to the Court (while hardly a beacon of clarity) are consistent in that he has represented to the Court that he (personally) has not reviewed the documents in question. Further, the Court notes that Mr. Carroll has practiced law for over thirty years in this locale with an emphasis in employment law. Further, Mr. Carroll is a former President of the Allegheny County Bar Association (2004-05) as well as a member of numerous other local bar associations, and enjoys a solid reputation as a competent attorney and counselor.

Civ. No. 93-1052-AS, 5:25-6:5, and Defendants here cannot point to any near similar (and hence prejudicial) document among the Allegheny documents. Furthermore and regardless of their relevance, while this Court cannot unring the bell in terms of (at least one) counsel for Plaintiff's knowledge of the subject matter of documents, the fact that the majority of said documents will not come into play in this case (as a result of the attorney-client privilege, *see* Docket No. 194) appropriately purges any taint from the case, making disqualification superfluous.[14] Hence, any prejudice to Defendants is *de minimis*, at best.

In addition to *Furnish*, Defendants rely on a case from within this Circuit, *Maldonado v. New Jersey*, 226 F.R.D. 120 (D.N.J. 2004), in which the Court disqualified plaintiff's counsel as a result of a privileged letter that "ended up" in plaintiff's mailbox. *Id.* at 125. Before engaging in its analysis, the Court made two initial points:

> First, there is a focus on the attorney conduct itself; that is, adherence to the "cease, notify, and return" requirement. Second, there is an emphasis on the effects of the conduct; namely, whether the conduct is prejudicial to the administration of justice. It stands to reason that a district court deciding a motion to disqualify counsel, on a substantive case pending before it, is most concerned with the second issue.

*Maldonado*, 225 F.R.D. at 139. Applying the same, the Court finds that *Maldonado* weighs against disqualification insofar as the Court sees no prejudice (to the administration of justice or to the Defendants) as a result of Plaintiff's and her counsel's conduct, especially in light of the exclusion

---

[14] The Court finds it curious that Defendants did not request exclusion of all of the Allegheny documents as a sanction directed to Plaintiff's and her counsel's conduct, a sanction requested by the moving party in both *Furnish* and *Herrera*. The Court surmises that the answer lies in Defendants' assertion of (and confidence in) their argument regarding the attorney client privilege.

of the Allegheny documents by operation of the attorney client privilege and/or work product doctrine. (*See* Docket No. 194).

After making its initial observations, the *Maldonado* Court then applied a set of factors borrowed from *Richards v. Jain*, 168 F.Supp. 2d 1195 (W.D. Wash. 2001), in which the Court considered actions by an attorney who inadvertently received privileged information from opposing counsel. While neither of the parties argue for the application of said factors here, the Court nevertheless finds significant the absence of three factors, which were present in *Maldonado*. First, in *Maldonado*, counsel reviewed and relied upon the letter in formulating the plaintiff's case. *Maldonado*, 225 F.R.D. at 140. On the contrary here, to the extent Plaintiff's counsel reviewed the Allegheny documents, there is no assertion that Plaintiff used or relied upon any of the Allegheny documents in any meaningful way in prosecution of her case. Second, similarly to the "Biencourt memo" in *Furnish*, the *Maldonado* Court stressed the significance of the privileged information to the case at hand: "Essentially, the letter was a blue print to merits of Plaintiff's case, as well as Defendants' defenses; therefore, its significance cannot be overstated." *Maldonado*, 225 F.R.D. at 140. On the contrary here, the Court's review of the Allegheny documents indicates that they fall far short of a "blue print" to Plaintiff's case, with some documents bordering on the irrelevant. As such, Defendants have not (and will not) experience "substantial prejudice," unlike the defendants in *Maldonado*. *Id.* Third, in *Maldonado*, the Court concluded that plaintiff would not be "severely prejudiced by the loss of his counsel of choice" considering the fact that the discovery process had just begun. *Id.* at 141. On the contrary here, discovery has concluded and Defendants have filed

motions for summary judgment, to which Plaintiff still has to respond.[15] The Court finds that Plaintiff would be severely prejudiced by disqualification of her current counsel. Hence, the Court finds that *Maldonado* does lend support to Defendants' position.

In further support of their motion for disqualification, Defendants raise an incident occurring between Mr. Carroll and John Kostuch, "an employee of Electronic Data Systems Corporation ("EDS"), which provides information technology services to Allegheny Energy, Inc. ("Allegheny") pursuant to a Professional Services Agreement dated October 19, 2005." (*See* Docket No. 157 at ¶2) ("Kostuch Declaration"). In particular, on March 6, 2008 at approximately 11:37 a.m., Mr. Carroll called Mr. Kostuch, indicated that he represented Ms. Nesselrotte, and asked to discuss her case. Kostuch Declaration at ¶9. Mr. Kostuch responded that he was "not comfortable" discussing the case and that he would refer him to an EDS attorney and Allegheny's attorney. Kostuch Declaration at ¶9. According to Defendants, "[t]his latest action by Plaintiff's counsel constitutes a violation of Rule 4.2 of the Pennsylvania Rules of Professional Conduct." (Docket No. 156 at 1).[16] In response, Plaintiff asserts numerous arguments that her counsel did not violate Rule 4.2. (*See* Docket No. 172

---

[15] The Court held in abeyance Plaintiff's responses to Defendants' respective motions for summary judgment. (*See* Docket No. 141).

[16] Rule 4.2 of the Pennsylvania Rules of Professional Conduct, entitled "Communication with Person Represented by Counsel," provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Pa. Rules of Prof'l Conduct R. 4.2 (Jan. 1, 2005).

at 2-11). In reply, Defendants attempt to establish Mr. Carroll's actual knowledge of Mr. Kostuch's role with Allegheny Energy. (*See* Docket No. 176 at 1-4).

"In determining the proper sanction or remedy [for a violation of Rule 4.2], the court must consider the client's right to be represented by the counsel of his choice, as well as the opposing party's right to prepare and try its case without prejudice." *See University Patents, Inc. v. Kligman*, 737 F.Supp. 325, 329 (E.D. Pa.,1990) (citing *Plunto v. Wallenstein*, No. 84-1854, 1986 WL 15007, at *3 (E.D. Pa. Dec. 31, 1986)).[17] Here, it does not appear at this time that Plaintiff (or her counsel) obtained the benefit of any information through the *ex parte* communication from Mr. Kostuch. *See Belote*, 1998 WL 136523, at *8 (denying disqualification but precluding plaintiff from using any information obtained through *ex parte* contacts). Hence, the Court finds no prejudice to Defendants resulting from Mr. Carroll's attempted communication with Mr. Kostuch.[18]

In conclusion, considering the lack of demonstrated bad faith on the part of Plaintiff or her counsel and the absence of prejudice towards Defendants resulting from the conduct of Plaintiff and her counsel, especially in light of the Court's decision to return all privileged documents to Defendants, (*see* Docket No. 194), as well as the "substantial deference" surrounding a party's

---

[17] The United States Court of Appeals for the Third Circuit has cited with approval the prejudice requirement on a motion to disqualify for a Rule 4.2 violation espoused in *University Patents* in *E.E.O.C. v. Hora*, 239 Fed. Appx. 728, 731 (3d Cir. 2007).

[18] In fact, Defendants do not even argue that Mr. Carroll's communication with Mr. Kostuch has prejudiced them, but merely that said conversation violated Rule 4.2. Moreover, Defendants attempt to paint Mr. Carroll's question regarding whether Allegheny had discussed the litigation with Mr. Kostuch as an attempt to elicit attorney-client privileged communications. (*See* Docket No. 156 at 6-7). However, as Defendants should know, not all communications between an attorney and a client (or employee of the client) constitute attorney-client communications, and, in the Court's view, Mr. Carroll's question did not necessarily seek such privileged communications.

choice of counsel, the Court finds that the draconian measure of disqualification is not warranted.

2.      *Monetary sanctions*

Second, Defendants request monetary sanctions (including attorney's fees and costs) stemming from May of 2007 related to Defendants' efforts to obtain the return of the Allegheny documents. While not specifically stated in their motion, Defendants presumably request sanctions pursuant to Federal Rule of Civil Procedure 11. (*See* Docket No. 115 at 14) (discussing *Furnish* and a court's inherent authority to impose monetary sanctions under Rule 11 as well as section 1927).[19]

As an initial point, Defendants' motion for sanctions is procedurally defective in that (1) the motion for sanctions was not made "separately from any other motion" but in conjunction with a motion for disqualification of Plaintiff's counsel,[20] Fed.R.Civ.P. 11(c)(2), and (2) Defendants have failed to demonstrate compliance (by way of proof of service) with the "safe harbor" provision of Rule 11, requiring a moving party to serve a motion for sanctions under Federal Rule of Civil Procedure 5 in order to allow the opposing party to take appropriate action "within 21 days after service or within another time the court sets," Fed.R.Civ.P. 11(c)(2). *See Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 158-59 (D.N.J. 1999) (denying motion for Rule 11 sanctions for failure to comply with the "safe harbor" provision of Rule 11).

---

[19] To the extent that Defendants seek sanctions pursuant to 28 U.S.C. § 1927, the Court finds that the lack of willful (or even implicit) bad faith on the part of Plaintiff (or her counsel) renders sanctions under section 1927 inappropriate. *See Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College of Pennsylvania*, 103 F.3d 294, 297 (3d Cir. 1996) (quoting *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1191 (3d Cir. 1989) (providing that "before a court can order the imposition of attorneys' fees under § 1927, it must find wilful bad faith on the part of the offending attorney")).

[20] In point of fact, the title of Defendants' motion reads "Defendants' Motion for Monetary Sanctions *and* For Disqualification of Plaintiff's Counsel." (Docket No. 115) (emphasis added).

Nevertheless, turning to the merits, Defendants rely on *Herrera v. Clipper Group, L.P.*, No. 97-CIV-560(SAS), 97-CIV0561 (SAS), 1998 WL 229499, at *1 (S.D.N.Y. May 6, 1998), in which plaintiff produced over 3,000 documents, which she admitted in her deposition that she copied "while in defendants' employ as part of an effort to collect evidence for this suit." *Id.* at *1. In light of this conduct, defendants filed a motion to disqualify plaintiff's counsel and to preclude plaintiff from using certain documents that she obtained from defendants outside the discovery process. *Id.* at *1. There, the Court declined to disqualify counsel and further declined to exclude the documents at issue, but granted the moving party expenses related to that motion in light of the Court's conclusion that the plaintiff "acted in bad faith." *Id.* at *3. The Court's bad faith conclusion turned on the plaintiff's conduct in that case, specifically: (1) "[plaintiff] deliberately subverted the discovery rules of this court by secretly misappropriating thousands of pages of documents, many of which contained clearly confidential information;" (2) "[plaintiff] lied about this course of conduct, both to her supervisors and in her response to defendants' discovery request;" and (3) "[plaintiff] disclosed defendants' confidential information in a publicly-filed affidavit." *Id.* at *3.

However, the Court finds that some but not all similar egregious facts exist here. First, while Plaintiff's conduct subverted the Federal Rules of Civil Procedure by removing documents that she should have formally requested in discovery, she did not do so "secretly."[21] While Defendants argue that Plaintiff simply "did not attempt to conceal her blatant wrongdoing," (Docket No. 161 at 2), the

---

21

As a basis for comparison, Plaintiff points to the conduct in both *Herrara* (plaintiff took documents not in her possession, lied to her supervisor, and denied the existence of said documents in discovery) and *Furnish* (opened her superior's locked desk, used information in prosecution of the case, and made intentional misrepresentations), noting that she has not engaged in such conduct. (*See* Docket No. 155 at 14-15).

intent behind Plaintiff's conduct is certainly in the eye of the beholder. In the Court's estimation, Plaintiff's removal of the documents (employing the aid of two assistants) as well her ready and repeated admission to her conduct demonstrates her belief that she acted within the bounds of the law and the professional rules. While the Court happens to disagree,[22] Plaintiff's intent is nevertheless relevant to the imposition of sanctions and it weighs against the same.[23] Second, and along the same lines, Defendants have not pointed to a single instance where Plaintiff or her counsel have directly lied to the Court regarding Plaintiff's conduct. Third, Defendants have not pointed to a single instance where Plaintiff disclosed any privileged or confidential information in a publicly-filed document.[24] Accordingly, the Court finds that monetary sanctions are not appropriate at this time based on the current record before the Court.

3. *Prohibition of Plaintiff to seek fees*

Third and finally, Defendants request that the Court prohibit Plaintiff's counsel from seeking recovery from Defendant of any fees and costs expended by Plaintiff's counsel in responding to or otherwise attempting to thwart through motion practice the return of Defendants' privileged and

---

[22] In fact, this Beholder has said and finds here again that Plaintiff's conduct not only violated the attorney client privilege as well as Plaintiff's agreements with her employer but it also supports one of Defendant's contentions, i.e., that Plaintiff was not strategic in handling legal matters, perhaps including her own.

[23] The same reasoning further distinguishes *Furnish* from the instant matter insofar as Furnish "took her key, unlocked [the CFO's desk] and reviewed her personnel file" and ultimately "returned and printed other documents from her computer, copied documents from her personnel file and the work area of [another officer's] Executive Assistant." *Furnish*, 1994 WL 574137, at *2.

[24] In fact, on numerous occasions, Plaintiff took the additional step of filing exhibits to motions under seal.

confidential documents. (Docket No. 115 at 16). While Defendants do not specifically state as much, the Court surmises that Defendants' request anticipates a motion for attorney fees and costs pursuant to 42 U.S.C. § 1988(b), in the event that Plaintiff is a "prevailing party" at the end of the litigation. However, because Defendants' request hinges on potential future events, the Court declines to consider the same at this point.

## CONCLUSION

Accordingly, based on the foregoing, the Court **DENIES** Defendants' Motion for Monetary Sanctions and for Disqualification of Plaintiff's Counsel [115].

Finally, the Court wishes to make clear that its denial of Defendants' motion in no way reflects the Court's view as to Plaintiff's conduct in copying and removing documents. In short, Plaintiff's conduct was improper in that she sought to circumvent the well-settled principles of the discovery process. *See Herrara*, 1998 WL 229499, at *2. However, as to such conduct, the Court opines that the prosecution of Defendants' pending counterclaims is the proper avenue of recourse to address her conduct.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc: All counsel of record.

Date: July 23, 2008.