# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TONI M. NESSELROTTE,    )
            Plaintiff,    )
                )
      v.    )    Civil Action No. 06-01390
                )    Judge Nora Barry Fischer
ALLEGHENY ENERGY, INC., ET AL.,    )
            Defendants.    )


## MEMORANDUM OPINION

## I.    INTRODUCTION

This case stems from Plaintiff Toni M. Nesselrotte's ("Plaintiff" or "Nesselrotte") termination from her position as Senior Attorney at Defendant Allegheny Energy, Inc. After her termination, Plaintiff commenced the instant action claiming that Defendants Allegheny Energy, Inc. and Allegheny Energy Services Corp. (collectively, "Allegheny") discriminated and retaliated against her on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (Counts I and II), and discriminated and retaliated against her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(Counts III and IV), and retaliated against her under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951, et seq. (Count V)(Docket No. 76). Plaintiff has also brought claims of discrimination and retaliation based on age and gender discrimination in violation of the PHRA against Defendant David Hertzog ("Hertzog"),[1] who served as Allegheny Energy Service Corp.'s Vice President and

---

[1] Any reference to "Defendants" refers to both Allegheny and Hertzog.

General Counsel during the time period at issue (Count VI)(Docket No. 76). Before this Court is

Defendants' Motion for Summary Judgment (Docket No. 126).[2] For the reasons outlined herein,

Defendants' motion is **GRANTED,** in part, and **DENIED**, in part.


## II.    FACTUAL BACKGROUND

Defendant Allegheny Energy, Inc. is a utility company which, in July 2003, was on the verge

of filing for bankruptcy and began to implement company-wide changes.[3] (Docket No. 227 at ¶¶ 1-

2). At that time, Allegheny hired a new Chairman, President and CEO, Paul Evanson ("Evanson"),

who had previously been a member of Allegheny's upper-level management team. (*Id.* at ¶ 2).

Evanson's task was to restructure Allegheny to save it from bankruptcy. (*Id.* at ¶ 3). In July of 2003,

Evanson hired Defendant Hertzog to assist him with Allegheny's restructuring. (*Id.* at ¶ 4).

Hertzog was an attorney with over 30 years experience in the areas of securities law, mergers,

and acquisitions, and private equity, including accounting matters related to financial reporting. (*Id.*

at ¶ 5). Additionally, he had a legal background in the areas of SEC filings, financial accounting,

and compliance with the Sarbanes-Oxley Act. Moreover, Hertzog had successfully run his own firm,

---

[2]

Defendants have also moved for partial summary judgment on the affirmative defense of after-acquired evidence and liability as to Defendant Allegheny's counterclaims. (Docket No. 121). Said motion is the subject of a separate memorandum opinion.

[3]

The parties disagree over whether such changes were necessary for the survival of Allegheny. Defendant asserts that Allegheny was in a dire financial position that resulted in the restructuring of its legal department. Plaintiff contends that by the time she was terminated, Allegheny's financial difficulties were largely resolved and was no longer on the verge of bankruptcy. (Docket No. 227 at ¶ 2).

Hertzog, Calamari & Gleason, in New York City for over 20 years, a firm that in 1999 merged with Winston & Strawn,[4] where Hertzog was a senior partner until joining Allegheny in July 2003. (Docket No. 227 at ¶¶ 6-7).

Upon his arrival at Allegheny, Hertzog was tasked by Evanson to run Allegheny's legal department, as well as the company's communications, environmental, security, and human resources divisions. (*Id.* at ¶ 9). At that time, Plaintiff had been employed by Allegheny's legal department for 21 years. (*Id.* at ¶ 150). Allegheny's legal department was organized regionally, with attorneys in various locations, including: Greensburg, Pennsylvania; Hagerstown, Maryland; and Fairmont, West Virginia. (*Id.* at ¶ 12).[5] Hertzog decided to reorganize Allegheny's legal department by: (1) hiring three deputy general counsel to report directly to him and supervise the remaining attorneys in the legal department; (2) consolidating the legal department geographically to Allegheny's corporate headquarters in Greensburg, Pennsylvania; and (3) redefining Allegheny's in-house legal positions according to specific substantive practice areas, thereby eliminating generalist positions. (*Id.* at ¶ 16).

In connection with the reorganization, Hertzog notified many existing in-house attorneys that they would be given the opportunity to compete for one of the legal department's specialized

_____

[4]

Winston & Strawn is an international, 800+ practitioner law firm. (Docket No. 227 at ¶ 7).

[5]

The parties dispute whether the attorneys at these offices were general practitioners or whether they were specialists as to a particular practice area. Plaintiff states that her practice areas were employment and real estate. (Docket No. 227 at ¶ 13). Additionally, the parties disagree as to the nature of these attorney's functions. Defendant contends that Allegheny's attorneys did not have in-depth experience in the substantive areas in which they were working and were, for the most part, handling only minor day-to-day legal matters and acting as conduits to outside counsel. Plaintiff, however, disputes these contentions. (*Id.* at ¶ 14).

positions. (Docket No. 227 at ¶ 17). A Labor and Employment Specialist position was created[6] as a result of the restructuring; the position required the provision of legal advice to and counseling of others within Allegheny concerning employment and labor law issues, as well as the active and capable oversight of employment litigation, including discrimination charges and complaints. (*Id.* at ¶¶ 18-20).[7]

In November of 2003, Defendant Hertzog met with Plaintiff and informed her of the requirements for the Labor and Employment Specialist. (*Id.* at ¶ 23). Plaintiff assured Hertzog that she could handle the demands of the position. (*Id.* at ¶ 24). At this point, Plaintiff thought she had been given the position of Labor and Employment Specialist because, as she understood it, she was going to be the point person concerning human resources issues internally going forward; however, Defendants assert that Plaintiff was merely given the opportunity to try out for the job to determine whether she could handle its demands.[8] (*Id.* at ¶¶ 25-26).

---

[6]

Plaintiff denies that this position was created as part of the legal department reorganization, and claims she had been responsible for the employment and human resources work for Allegheny since 1983. (Docket No. 227 at ¶ 17).

[7]

As is more fully detailed in the Discussion section of this Memorandum Opinion (Section V), the parties dispute the exact requirements and qualifications for the position of Labor and Employment Specialist, and whether Plaintiff possessed the requisite qualifications for said position. (*Id.* at ¶¶ 21,22). Defendant asserts that the job posting for the Labor and Employment Specialist stated, in part: "All areas of employment law are on the agenda at this organization. In particular, the client is looking for general employment law, ERISA, and labor negotiation experience. Must have minimum 8yrs. experience in employment law, excellent academic qualifications and some major law firm experience." (*Id.* at ¶ 21). Though Plaintiff had experience in labor dealings, she did not consider herself to have expertise in the area of labor negotiations or ERISA. (*Id.* at ¶ 22).

[8]

The details and legal ramifications of this dispute are outlined in Section V, *infra*.

Prior to November of 2003, Plaintiff had never been responsible for all labor and employment issues for Allegheny company-wide. (*Id.* at ¶ 27). Before Hertzog's arrival, Plaintiff spent about half her time handling non-labor and employment matters, such as real estate and contract issues. (*Id.* at ¶¶ 29-30). Though Plaintiff had experience in workers' compensation and human resources, the parties dispute whether Plaintiff was a specialist in the areas of labor and employment law. (*Id.* at ¶¶ 28, 31). As a part of the legal department's restructuring, the decision was made to outsource Allegheny's workers' compensation work to outside counsel. (Docket No. 227 at ¶ 32).

In connection with Allegheny's restructuring of its legal department, the decision was made to close its Fairmont, West Virginia office. (*Id.* at ¶ 57). Hertzog alerted Plaintiff and other in-house attorneys in the Fairmont office that the office would be closing before the end of 2004 and that he would let the attorneys in Fairmont know about their employment status when the closing was officially announced. (*Id*). On October 11, 2004, in conjunction with a meeting held in Fairmont to announce that office's closing, Hertzog formally notified Plaintiff that she had not been selected as Allegheny's Labor and Employment Specialist. (*Id.* at ¶¶ 58-59). Plaintiff was also not asked to relocate. (*Id.*). At this time, Plaintiff was 51 years old. (*Id.* at ¶ 155). Her termination was effective October 31, 2004. (*Id.* 227 at ¶¶ 61, 160).

In November of 2004, Allegheny reissued a job posting for the Labor and Employment Specialist position that read, in part: ". . . responsible for all employment litigation and general employment law. In particular, the client is looking for general employment law, ERISA and labor negotiation experience. Must have minimum 10 years experience in employment law, excellent academic qualifications, and some major law firm experience . . ." (*Id.* at ¶ 109). Allegheny

ultimately hired Kimberlee Ullner for the position of Labor and Employment Specialist. (Docket No. 227 at ¶ 93). At the time she was hired, Ullner was 35 years old, unmarried, and did not have children. (*Id*. at ¶ 168). The parties dispute the number of years of experience Ullner had in the area of employment law. (*Id.* at ¶¶ 94,169).

On December 7, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").(Docket No. 249). In that Charge, Plaintiff alleged that she had been discriminated against on the basis of age by Defendants Allegheny and Hertzog. (*Id.* at ¶ 69). Plaintiff also alleged that Hertzog had retaliated against her for her participation in an internal investigation which took place in September of 2004. (Docket No. 227 at ¶ 70). Five months later, on May 20, 2005, Plaintiff filed an Amended Charge of Discrimination with the EEOC. In her Amended Charge, Plaintiff alleged that she had been discriminated against because she was a married female with dependent children. (*Id*. at ¶ 71). Plaintiff also alleged that Defendants retaliated against her based on the fact that Allegheny sued her husband's coal company, NESCO, Inc. ("NESCO"), for the non-delivery of coal on March 1, 2005.[9] (*Id.* at ¶¶ 72 and 209).

The EEOC conducted an investigation of Plaintiff's discrimination allegations. (Docket No. 227 at ¶ 73). On or about July 20, 2006, the EEOC sent correspondence to Plaintiff dismissing her charges of discrimination against Allegheny and Hertzog, stating specifically that the agency was

---

[9]

NESCO is a small coal operator solely owned by Plaintiff's husband, William Nesselrotte. (Docket No. 227 at ¶¶ 99, 203). Plaintiff is not a named defendant in the lawsuit filed against NESCO by Allegheny and the lawsuit does not seek damages from Plaintiff or her husband personally. (*Id.* at ¶ 100). Plaintiff was employed by NESCO at the time Allegheny filed the lawsuit. (*Id.* at ¶ 204).

unable to conclude that Plaintiff's age or sex were factors in Plaintiff's alleged harm, and that it was unlikely that further investigation would result in a finding of a violation against Allegheny. (*Id.* at ¶¶ 73, 77 ).


### III.    PROCEDURAL HISTORY

Plaintiff commenced the instant civil action on October 16, 2006, by filing a complaint against Allegheny Energy, Inc.,[10] Allegheny Energy Service Corporation, and David B. Hertzog. (Docket No. 1).  Defendants filed an answer on December 12, 2006. (Docket No. 5). At that time, the case was assigned to Judge Gary L. Lancaster.  Subsequently, this case was reassigned to the undersigned Judge on August 31, 2007. (Docket No. 53).

On September 20, 2007, Defendants filed a Motion for Leave to File an Amended Answer and Counterclaims to assert claims for breach of fiduciary duty and breach of contract, and the affirmative defense of after-acquired evidence. (Docket No. 56).  Plaintiff filed a Motion to Amend/Correct her Complaint on September 27, 2007 to allege retaliation based on Allegheny's counterclaims. (Docket No. 59).  A hearing was held on October 9, 2007, during which the Court heard argument from the parties as to said motions, and additionally advised that it would entertain discovery motions and a motion to enlarge discovery. (Docket No. 62). Thereafter,  Plaintiff filed a Motion for Extension of Time to Complete Discovery. (Docket No. 64). Said motion was granted and discovery was extended until February 4, 2008, by order dated  October 23, 2007. (Docket No. 70).

---

[10] Allegheny Energy, Inc. has been identified as the corporate parent of Allegheny Energy Service Corporation via a disclosure statement filed on December 29, 2006. (Docket No. 9).

On October 25, 2007, this Court issued an order granting in part and denying in part Defendants' Motion for Leave to File Amended Answer and Counterclaims and granting Plaintiff's Motion for Leave to Amend Complaint. (Docket No. 74). Defendants filed a First Amended Answer on October 30, 2007, in which Allegheny asserted counterclaims for breach of contract and breach of fiduciary duty. (Docket No. 75). Plaintiff filed a First Amended Complaint on October 31, 2007, in which she amended her original complaint to include a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964. (Docket No. 76). Subsequently, on November 5, 2007, Defendants filed a Motion for Reconsideration as to the Court's October 25, 2007 order. (Docket No. 78).

On November 15, 2007, Plaintiff filed an Answer to Defendants' Counterclaims. (Docket No. 81), and Defendants filed a Second Amended Answer. (Docket No. 84). The Court granted Defendants' Motion for Reconsideration on December 3, 2007, and ordered that Defendants file an Amended Answer within twenty (20) days. (Docket No. 88). Accordingly, on December 7, 2007, a Third Amended Answer was filed by Defendants, in which they asserted the affirmative defense of after-acquired evidence, and Allegheny reasserted its counterclaims for breach of fiduciary duty and breach of contract. (Docket No. 92). Plaintiff filed an Answer to Defendant's Amended Counterclaims on December 26, 2007. (Docket No. 101).

On March 4, 2008, Defendants filed a Motion for Summary Judgment on Plaintiff's claims (Docket No. 126). The Motion for Summary Judgment was also accompanied by a brief in support (Docket No. 127), a Concise Statement of Undisputed Material Facts (Docket No. 128), and an appendix (Docket No. 129). Generally, Plaintiff would have had thirty (30) days to respond to the motion by filing a responsive statement of material facts, a memorandum in opposition, and any

appendix. W.D.Pa.L.R. 56.1(C). However, prior to filing the instant motion for summary judgment, Defendants filed a Motion for Monetary Sanctions and for Disqualification of Plaintiff's Counsel ("Motion for Sanctions and Disqualification"). (Docket No. 115). Accordingly, the Court held in abeyance Plaintiff's responses to Defendant's Motion for Summary Judgment until its ruling on the Motion for Sanctions and Disqualification. (*See* Docket No. 141).

On July 23, 2008, this Court issued a Memorandum Opinion denying Defendants' Motions for Sanctions and Disqualification (Docket No. 195). Defendants supplemented their briefs in support of their motions for summary judgment on August 29, 2008.[11] Plaintiff timely responded with a Brief in Opposition to Defendants' Motion for Summary Judgment (Docket No. 205), and a Counterstatement of Material Facts on October 7, 2008. (Docket No. 209). Defendants filed a Reply Brief in Support of their Motion for Summary Judgment on November 5, 2008 (Docket No. 213), along with a Reply in Support of their Statement of Undisputed Material Facts, in which Defendants responded to Plaintiff's Counterstatement of Material Facts. (Docket No. 215). On November 17, 2008, Plaintiff filed a Motion for Leave to File a Sur-Reply to Defendants' Reply in Support of Motion for Summary Judgment (Docket No. 221), and this Court granted said motion, ordering Plaintiff's Sur-Reply by December 4, 2008. (Docket No. 222). Hence, Plaintiff filed a Sur-Reply

---

[11]

The Court ordered Defendants to supplement their briefs in support of the instant motion for summary judgment by August 22, 2008. In turn, Plaintiff was ordered to respond to Defendants' motion on or before September 22, 2008. (Docket No. 196). Defendants then filed a consent motion to extend both parties' filing dates. The Court granted said motion and ordered Defendants to supplement their briefs by August 29, 2008, and further ordered Plaintiff to file her response by September 29,2008. (Docket No. 198). Thereafter, Plaintiff filed and the Court granted a consent motion to extend the time for Plaintiff to respond until October 7, 2008. (Docket No. 201).

Brief in Opposition to Defendants' Motion for Summary Judgment. (Docket No. 226). Plaintiff also filed a Sur-Reply in Opposition to Defendants' Statement of Undisputed Material Facts and Response to Plaintiff's Counterstatement of Material Facts and Consolidated Statement of Facts. (Docket No. 227).[12] As the motion is more than fully briefed, it is now ripe for disposition.

## IV.    LEGAL STANDARD

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248 (1986).

A dispute of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). In determining

---

[12]

In this document, Plaintiff incorporates Defendants' Concise Statement of Undisputed Material Facts (Docket No. 128), Plaintiff's response via her Counterstatement of Material Facts (Docket No. 209), Defendant's Reply in Support of their Statement of Undisputed Material Facts and Response to Plaintiff's Counterstatement (Docket No. 215), and Plaintiff's Sur-Reply (Docket No. 227). For the sake of efficiency, this Court will solely reference Docket No. 227 in its discussion of the factual background of this case.

whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 412 F.3d at 249. As to materiality, the relevant substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir.2007). However, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers,* 142 F.3d 639, 643 n.3 (3d Cir.1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir.1994)).

## V.     DISCUSSION

At the outset, the Court notes that the parties disagree as to the nature of the discrimination claims brought by Plaintiff. Defendants contend that Plaintiff's discrimination claims amount to a "failure to hire" case, as her claims stem from the fact that she was not hired for the Labor and Employment Specialist Position. (Docket No. 213 at 1). Plaintiff, however, contends that her discrimination claims are based on a theory of unlawful termination, as she believes that her age and sex were a determinative factor in Defendants' decision to terminate her. (Docket No. 226 at 3).

Plaintiff's Amended Complaint sets forth a claim for unlawful termination in violation of the

ADEA and Title VII. (Docket No. 76 at ¶¶ 44, 57). Nowhere in Plaintiff's Amended Complaint does she frame her discrimination claims as based on Allegheny's failure to hire her for the position of Labor and Employment Specialist. (Docket No. 76). Further, Plaintiff's EEOC charge and amended charges set forth claims for unlawful termination, not failure to hire. (Docket No. 249). In their Third Amended Answer, Defendants also admitted that Plaintiff was told on October 11, 2004 that she was being terminated as of October 31, 2004. (Docket No. 92 at ¶ 24). In addition, the deposition testimony of Hertzog demonstrates that he viewed the act in question as a decision to terminate Plaintiff rather than a decision not to hire her:

> Question:      When was the decision made to **terminate** Toni Nesselrotte?
>
> Hertzog:.      My best recollection was the decision was made sometime in June, July period of '04.
>
> Question:      And why was the decision made?
>
> Hertzog:      Because we did not believe she had the capabilities to handle the job.

(Docket No. 129-2 at 172-173)(emphasis added).

Accordingly, based on the claims set forth in Plaintiff's Amended Complaint, Plaintiff's EEOC charges, Defendants' Third Amended Answer, and the testimony of Hertzog, the Court concludes that Plaintiff's discrimination claims are properly analyzed under the framework for unlawful termination rather than failure to hire.

### A.      Applicable Evidentiary Standard

The parties dispute whether Plaintiff has produced direct evidence of discrimination. (Docket No. 205 at 4, n. 3). While Plaintiff refers generally to statements made by Hertzog that she argues support her claims of discrimination, she cannot point to any statement made by Hertzog that relates

directly to Defendants' decision to terminate her. (Docket No. 205 at 2). *See Fakete v. Aetna, Inc.*, 308 F.3d 335, 338, n. 2 (3d Cir. 2002)(statements by decisionmakers unrelated to the contested employment decision do not constitute direct evidence).[13] Accordingly, Plaintiff's discrimination claims will be analyzed by the Court under the indirect evidence standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, Plaintiff must first establish a prima facie case of discrimination. If Plaintiff offers sufficient evidence to establish a prima facie case, "[t]he burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge." *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1108 (3d Cir. 1997). If Defendants satisfy this burden, Plaintiff may survive summary judgment, "by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).[14]

Defendants have moved to dismiss all six of Plaintiff's claims. (Docket No. 126). The Court will address each claim, in turn.

### B.      Age Discrimination under the Age Discrimination in Employment Act (ADEA)

---

[13]

Furthermore, Plaintiff has testified that she has no evidence that Hertzog acted with discriminatory animus towards her. (Docket No. 210-10 at 287).

[14]

The *McDonnell Douglas* framework applies to Plaintiff's Title VII, ADEA, and PHRA claims. *Rabinowitz v. AmeriGas Partners, L.P.*, 252 Fed. Appx. 524, 527 (3d Cir. 2007).

1.    *Prima Facie Case*

In order to establish a prima facie case of age discrimination, a plaintiff must show that she was

1) 40 years of age or older, 2) terminated, 3) qualified for the job she held, and 4) "replaced by a

sufficiently younger person to create an inference of age discrimination."  *Keller v. Orix Credit*

*Alliance*, 130 F.3d 1101, 1108 (3d Cir. 1997).  Defendants contend that Plaintiff has failed to establish

the third and fourth elements of a prima facie case of age discrimination.  (Docket No. 127 at 10).[15]

Plaintiff counters that she has presented sufficient evidence to satisfy each element. (Docket No. 205

at 5).

### a.    Plaintiff's Qualifications

Regarding the third element of age discrimination, Plaintiff's qualifications, Defendants assert

that Plaintiff has failed to demonstrate that she was qualified for the position of Labor and

Employment Specialist, and point to a November 2004 job posting[16] as evidence of the qualifications

required for the position.  (Docket No. 127 at 11; Docket No. 215 at ¶ 109).  Plaintiff counters that

based on the work she performed in Allegheny's Legal Department during her 21 years at the

company, she had experience in all of the areas set forth in the May 10, 2004 job description[17] for the

---

[15]

To the extent that Defendants have argued that the standards for failure to hire cases apply, the Court interprets these arguments as they relate to the analogous standards applicable in unlawful termination claims.

[16]

See discussion at Section II, *infra*.

[17]

The May 2004 job description states that the Labor and Employment Specialist would:

Labor and Employment Specialist, with the exception that she had not previously taken part in labor negotiations.  (Docket No. 205 at 10).  Defendants' argument fails for three reasons.

First, this is not a case where the defendant claims that the plaintiff has misrepresented her qualifications.  Rather, Defendants had full knowledge of Plaintiff's background when they chose to give her the responsibilities of the Labor and Employment Specialist position.  Thus, this Court can infer that Defendants' decision to give Plaintiff the responsibilities of the Labor and Employment Specialist position was based on her satisfactory performance in her previous position.  *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 268 (3d Cir. 2005).  "Once [Defendants] made this choice, it was deeming [Plaintiff's] prior satisfactory performance sufficient qualification for the position."  *Id.*

Second, Defendants cannot rely on a November 2004 job posting as evidence of the objective requirements of the position of Labor and Employment Specialist.  Defendants claim the decision to terminate Plaintiff was made in June 2004.  (Docket No. 129-2 at 172-173; Docket No. 227 ¶ 53).  However, Defendants have presented no evidence that the objective criteria set forth in the November 2004 job posting were the criteria used when Plaintiff was terminated.  Without any such evidence, it is possible that these criteria are a post-hoc rationalization of its employment decision.  *Cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989)(in a mixed-motives case, employer may not proffer as a legitimate, nondiscriminatory reason a reason that "did not motivate it at the time of the

---

Provide the day-to-day legal services on all labor and employment matters, including general policy and procedures, preventative training, employment contracts, incentive or commission plans, employee investigation and terminations, severance agreements and releases, FMLA, ADA, HIPAA, Garnishment, QDROs, QMCSOs, visas, union matters, discrimination or wrongful termination claims, worker's compensation claims, employment contract disputes.  Manage outside counsel on ERISA.

(Docket No. 210-17, Ex. 7).

decision."). Moreover, even the May 2004 job description does not set forth objective qualifications necessary for the position; rather, it simply details the duties of the position. (Docket No. 210-17, Ex. 7).

Third, the record indicates that Defendants' proffered reasons for terminating Plaintiff were based on her alleged poor performance rather than her lack of any objective qualification. (Docket No. 129-2 at 152-158 and 173-174). None of these proffered reasons can be used to rebut Plaintiff's evidence of her qualifications at the prima facie stage as they are based on subjective criteria. *Weldon v. Kraft, Inc*., 896 F.2d 793, 798 (3d Cir. 1990)(holding that an employer's subjective evaluation of an employee should be considered at the pretext stage of the *McDonnell Douglas* analysis).

Accordingly, Plaintiff has produced sufficient evidence to meet the third prong of her prima facie case of age discrimination.

### b.      Plaintiff's Replacement

Defendants also contend that Plaintiff has failed to establish a prima facie case of age discrimination because the woman who replaced Plaintiff in the role of Labor and Employment Specialist had superior qualifications. (Docket No. 127 at 15). Plaintiff counters that her replacement's qualifications are irrelevant in determining whether she has met the fourth element of the prima facie case. (Docket No. 205 at 13).

As previously noted, when evaluating an ADEA claim based on indirect evidence, the fourth element a plaintiff must demonstrate is that she "was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination." *Duffy v. Paper Magic Group*, 265 F.3d 163, 167 (3d Cir. 2001); *see also Minetola v. Commonwealth Tel. Co.*, 298 Fed. Appx. 177 (3d Cir.

2008)(same). There is no requirement that Plaintiff must demonstrate she was equally or more qualified than her replacement to meet the fourth element.

Here, Allegheny ultimately hired Kimberlee Ullner, a 35-year old female attorney, to replace Plaintiff. (Docket 129-4 at 8-9). As Plaintiff was 51 years old at the time of her termination, this 16 year age difference is sufficient to satisfy the fourth prong of Plaintiff's prima facie case of age discrimination. *See Barber v. CSX Distrib. Servs.,* 68 F.3d 694, 699 (3d Cir. 1995) (eight year age difference sufficient to permit an inference of age discrimination); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729-30 (3d Cir. 1995) (combined difference in age between plaintiff and coworkers who were four and ten years younger sufficient to satisfy the fourth prong of a prima facie case of age discrimination).

Accordingly, Plaintiff has produced sufficient evidence to satisfy the fourth prong of her prima facie case of age discrimination.

> 2. *Defendants' Legitimate, Non-Discriminatory Reason for Plaintiff's Termination*

Having presented sufficient evidence to establish a prima facie case of age discrimination, it is the Defendants' burden to offer evidence of a legitimate, nondiscriminatory reason for the discharge. *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1108 (3d Cir. 1997). In sum, Defendants contend that Plaintiff was terminated because she was not qualified for the role of Labor and Employment Specialist as demonstrated by her poor performance in that role. (Docket No. 127 at 13-14). For the purposes of summary judgment, Plaintiff does not dispute Defendants' legitimate, non-discriminatory reasons for her firing. (Docket No. 205 at 26).

### 3. Pretext

Plaintiff may survive summary judgment, "by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller*, 130 F.3d 1101 at 1108 (quoting *Fuentes,* 32 F.3d 759 at 763). Plaintiff points to several pieces of evidence to establish issues of material fact as to whether Defendants' legitimate, non-discriminatory reasons were pretextual.

Plaintiff has offered evidence that could lead a jury to disbelieve Defendants' proffered reasons for her dismissal, including conflicting evidence as to: whether she ever received poor performance reviews (Docket No. 227 at ¶¶ 48-51); whether her performance was criticized by anyone other than Hertzog; and when the decision to terminate her was actually made. (*Id*. at ¶¶ 193-194). Furthermore, there is evidence of record which demonstrates that during the time period in question, Hertzog made several statements about his desire to hire "young" litigators, as well as referring to old employees as "old-timers." (*Id.* at ¶¶ 111-123).

Plaintiff has raised genuine issues of material fact as to whether Defendants' proffered reasons for her termination were a pretext for age discrimination; accordingly, Defendants' motion for summary judgment regarding Plaintiff's age discrimination claim is DENIED.

### C. Plaintiff's Title VII Discrimination Claim

### 1. Prima Facie Case

With respect to her Title VII discrimination claim, Plaintiff argues that this is a case of "sex-plus" discrimination, in that she was discriminated against on the basis of her gender in combination

with the fact that she had a child, in violation of Title VII. (Docket No. 205 at 6). In order to establish a prima facie case sex discrimination resulting in unlawful termination under Title VII, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was terminated; and (4) the circumstances of her termination give rise to an inference of discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)). Defendants argue that Plaintiff has failed to meet the first, second,[18] and fourth elements of this test (Docket No. 127 at 10), while Plaintiff counters that she has established her prima facie case.

### a.    Protected Class of Persons

Defendants argue that Plaintiff is not a member of the protected class of persons because she did not have a young child at the time of her termination. (Docket No. 127 at 10). Plaintiff counters that there is no requirement that a plaintiff must have a child under the age of 18 in order to bring a sex-plus claim; rather, she contends that she must only demonstrate that she had a dependent child. (Docket No. 205 at 6).

Both parties have confused the first and fourth prongs of the prima facie case. Even where a plaintiff brings a "sex-plus" claim, the underlying cause of action is discrimination on the basis of sex. Thus, Plaintiff is a member of the protected class because she is a woman. *See Chadwick v. WellPoint, Inc.*, 2008 U.S. Dist. LEXIS 9763 (D. Me. Feb. 8, 2008)(where female plaintiff alleged gender discrimination based on her status as a working mother, the legally protected group was women, not women with children). Whether Plaintiff was discriminated against because she is a mother is

---

[18]

As the Court has previously discussed the ways in which Plaintiff has met her burden as to the second element, it will not repeat that discussion herein. *See* Section V.B.1.a.

irrelevant in determining whether she is a member of the protected class; rather, those issues are more properly considered under the fourth prong of the analysis, as set forth below.

### b.    Circumstances Giving Rise to an Inference of Discrimination

Plaintiff asserts she has met the fourth prong of her prima facie case of sex discrimination because she was replaced by Kimberlee Ullner, a woman who did not have children at the time she was hired by Plaintiff.  (Docket No. 205 at 13).  Defendants counter that this is insufficient to establish an inference of discrimination as Plaintiff has failed to point to how she was treated differently than similarly situated males with children.  (Docket No. 213 at 14).

The United States Court of Appeals for the Third Circuit has not specifically addressed the elements of a sex-plus discrimination claim;[19] thus, Plaintiff relies on two district court decisions within this Circuit in support of her sex-plus claim, *McGrenaghan v. St. Denis Sch.*, 979 F. Supp. 323 (E.D. Pa. 1997), and  *Arnett v. Aspin*, 846 F. Supp. 1234, 1239 (E.D. Pa. 1994).

However, Plaintiff's reliance on these district court decisions is misplaced when considered in light of subsequent holdings of the United States Court of Appeals for the Third Circuit.  In analyzing the plaintiff's claims under a "sex-plus" theory in *Arnett* and *McGrenaghan,* the courts in both cases noted that the rationale behind the theory was "to enable Title VII plaintiffs to survive summary judgment where the employer does not discriminate against all members of a sex." *McGrenaghan v. St. Denis Sch.*, 979 F. Supp. 323, 327 (E.D. Pa. 1997)(citing *Arnett v. Aspin*, 846 F.

---

[19]

While the Third Circuit has never ruled on a Title VII sex-plus discrimination case, it has recognized the viability of such a claim.  *See Bryant v. International Schools Services, Inc.*, 675 F.2d 562, 573 n.18 (3d Cir. 1982).

Supp. 1234, 1238 (E.D. Pa. 1994)).  That distinction was important at the time, because both courts

defined the fourth prong of the prima facie case as requiring a Title VII plaintiff to demonstrate she

was replaced with "someone outside her protected class," i.e., a male.  *McGrenaghan*, 979 F. Supp.

at 326.  Both cases were decided prior to *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 353 (3d Cir. Pa.

1999).  In *Pivirotto*, the Court of Appeals held that even where a plaintiff is replaced by someone

within her protected class, she may still demonstrate that she was treated less favorably than others

because of her sex.  *Pivirotto*, 191 F.3d at 353.  In so holding, the Court of Appeals explained:

> [E]ven if a woman is fired and replaced by another woman, she may have been treated
> differently from similarly situated male employees. This seems to us to be self-evident.
> An employer may fire a woman who makes a single mistake (while retaining men who
> make numerous similar mistakes), yet replace her with another woman whom the
> employer hopes will meet his (higher) expectations for female employees.  Or an
> employer may fire women who fail to act in a particular manner (e.g., "feminine,"
> assertively, non-assertively), but not require male employees to act in any particular
> way.  Such a requirement would be discriminatory, although an employer applying this
> double-standard would not necessarily hire a male employee to replace a fired female
> employee.

*Pivirotto*, 191 F.3d at 353-354(internal citations omitted.).  Thus, the framework applied in

*McGrenaghan* and *Arnett* is no longer necessary, because under Third Circuit law, the fourth prong

of the prima facie case is not whether a plaintiff is replaced by someone outside of her protected class,

but rather whether the termination occurred, "under circumstances that raise an inference of

discriminatory action."  *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

Plaintiff asserts that the fact that she was replaced by a woman without children is sufficient

to raise an inference of discrimination.  (Docket No. 205 at 14; Docket No. 226 at 5-6).  The Court

disagrees.  The focus of Title VII is discrimination on the basis of gender, not parental status.  Even

under a sex-plus framework of analysis, the discrimination in question "must be premised on gender."

*Coleman v. B-G Maint. Mgmt.*, 108 F.3d 1199, 1203 (10th Cir. 1997). As the United States Court of

Appeals for the Tenth Circuit explained in *Coleman*:

> Title VII contemplates gender-plus claims because 'when one proceeds to cancel out
> the common characteristics of the two classes being compared [e.g., women with
> children and men with children], as one would do in solving an algebraic equation, the
> cancelled-out element proves to be that of [parental status], and *sex remains the only
> operative factor in the equation.*'

*Id.* (quoting Lex K. Larson, Employment Discrimination § 40.04, at 40-12 (2d ed. 1996)(emphasis

in original)); *see also Philipsen v. Univ. of Mich. Bd. of Regents*, Civ. A. No. 06-11977, 2007 U.S.

Dist. LEXIS 25898 (E.D. Mich. Mar. 22, 2007)(same). "[A]lthough the protected class need not

include all women, the plaintiff must still prove that the subclass of women was unfavorably treated

as compared to the corresponding subclass of men." *Id.* Thus, Plaintiff has failed to present evidence

of the relevant comparator under the fourth prong of the prima facie analysis, i.e., men with dependent

children. This finding is also in line with the only decision issued by the United States Court of

Appeals for the Third Circuit in which "sex-plus" claims were discussed. *See Bryant v. Int'l Sch.

Servs.*, 675 F.2d 562, 573 n.18 (3d Cir. 1982)(noting that a sex-plus claim arises where "employer adds

a criterion or factor for one sex (e.g., marital status), which is not added for *the other sex*."(emphasis

added)).

Plaintiff has failed to provide this Court with evidence that she was treated less favorably than

a male comparator, or evidence of any other circumstances, such as impermissible stereotyping, that

raise an inference of gender discrimination under Title VII. *See, e.g., Back v. Hastings on Hudson

Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004)("stereotyping of women as caregivers can by

itself and without more be evidence of an impermissible, sex-based motive"). Accordingly, Plaintiff

has failed to establish a prima facie case of sex discrimination under Title VII, and Defendants' motion

for summary judgment as it relates to Plaintiff's Title VII discrimination claims is GRANTED.

### D.    Plaintiff's Retaliation Claims under the ADEA

In addition to her discrimination claims, Plaintiff asserts that Defendants retaliated against her

in violation of the ADEA by terminating her and filing a lawsuit against NESCO, a company owned

by her husband.[20] (Docket No. 76). Defendants[21] contend that Plaintiff has failed to establish a prima

facie case of retaliation under any of the relevant statutes. (Docket No. 127 at 16).

### 1.    Prima Facie Case

To establish a prima face case of retaliation, Plaintiff must demonstrate that: 1) she engaged

in a protected activity; 2) she was subject to adverse action by the employer either subsequent to or

contemporaneous with the protected activity; and 3) there is a causal connection between the protected

activity and the adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-341 (3d Cir.

2006)(setting forth standard for retaliation under Title VII); *Fasold v. Justice*, 409 F.3d 178, 188 (3d

Cir. Pa. 2005)(setting forth standard for retaliation under ADEA and PHRA). Where there is only

indirect evidence of retaliation presented, retaliation claims under Title VII, the ADEA, and the PHRA

are analyzed using the *McDonnell Douglas* framework. *Fasold*, 409 F.3d 178 at 188; *Farrell v.

Planters Lifesavers Co.*, 206 F.3d 271, 278-79 (3d Cir. 2000). When determining whether Plaintiff

---

[20]     Plaintiff's claims of retaliation in violation of Title VII are discussed in Section V.E.

[21]     Plaintiff has brought claims of retaliation against Defendant Allegheny under the ADEA
and Title VII, and against Defendant Hertzog under the PHRA.

has established a prima facie case of retaliation, the Court must consider the evidence in a light most favorable to Plaintiff. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000).

In moving for summary judgment on Plaintiff's retaliation claims brought pursuant to the ADEA, Defendants contend that 1) Plaintiff has failed to establish a causal connection between her termination and any protected activity; 2) Allegheny's filing of a lawsuit against NESCO does not constitute an adverse action; and 3) even if the suit against NESCO constitutes an adverse action, Plaintiff has failed to establish a causal connection between her protected activity and those actions. (Docket No. 213 at 4-10).

### a.      Plaintiff's Termination

Plaintiff has established a prima facie case of retaliation under the ADEA based on her termination. On August 5, 2004, she complained to Defendant Allegheny's Interim Company Compliance Officer, David Lutz, that Hertzog had made what she believed to be discriminatory comments about the age of certain attorneys in the Legal Department, and that Hertzog's treatment of one attorney, David Williams, was potentially illegal. (Docket No. 227 at ¶ 174-175). Thereafter, on October 11, 2004, Plaintiff was notified that she would be terminated as of October 31, 2004.[22] (Docket No. 227 at ¶ 61). The fact that Plaintiff was terminated less than three months after her initial complaint to Lutz is sufficient to satisfy the causal connection prong of her prima facie case. *See*

---

[22]      While Defendants claim that Plaintiff has not met her prima facie case because the decision to terminate her was made in June 2004, this argument is relevant to the pretext analysis, not whether Plaintiff has established her prima facie case. To the extent that Defendants rely on *Windfelder v. May Dep't Stores Co.*, 93 Fed. Appx. 351 (3d Cir. 2004) in support of their argument, *Windfelder* is distinguishable from the instant case in that the employee knew that he was in the process of being terminated when he complained of age discrimination. *Windfelder*, 93 Fed. Appx. 351 at 355.

*Fasold*, 409 F.3d 178 at 190(where time elapsed between protected activity and adverse action is less than three months, there is a sufficient evidentiary basis from which an inference of retaliation can be drawn).  Accordingly, Plaintiff has satisfied her prima facie case of retaliation under the ADEA.

### b.      Lawsuit Against NESCO

Defendants argue that Plaintiff may not base her retaliation claims on the fact that Defendant Allegheny has filed a lawsuit against NESCO, a company owned by Plaintiff's husband, as the filing of said lawsuit does not constitute an "adverse action."  (Docket No. 213 at 6).  Plaintiff counters that that the suit against NESCO constitutes an adverse action under the standard set forth in *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).  (Docket No. 205 at 20). Defendants further contend that even if the NESCO lawsuit constitutes an adverse action, Plaintiff has failed to establish a causal connection between her protected activity and the lawsuit.  (Docket No. 127 at 18).

In *Burlington Northern*, the United States Supreme Court held that an adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (internal quotation marks and citation omitted). In so holding the Court emphasized that:

> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.  The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.

*Id.* (internal quotation marks and citation omitted).

Defendants argue that the filing of the NESCO lawsuit does not constitute an adverse action because the suit was directed not at Plaintiff, but rather at a company owned by her husband.

However, Defendants' characterization of the lawsuit does not adequately account for its impact on Plaintiff. First, NESCO is a family business whose sole owner is Plaintiff's husband. (Docket No. 227 at ¶ 203). At the time the lawsuit against NESCO was filed, Plaintiff was an employee of NESCO. (Docket No. 227 at ¶ 204). Furthermore, Defendant Allegheny acknowledged Plaintiff's interest in the company during her employment at Allegheny by requiring her to file a Conflict of Interest Statement in which she declared that she had an interest in NESCO. (Docket No. 210-16 at ¶ 18). Thus, given the particular circumstances of this case, the Defendant's filing of a lawsuit against NESCO may well have dissuaded Plaintiff from making or supporting a charge of discrimination. *Burlington*, 548 U.S. 53 at 68. Accordingly, Allegheny's lawsuit against NESCO can be considered an adverse action against Plaintiff.

The Court also finds that Plaintiff has established a causal link between her protected activity and the filing of the lawsuit. In establishing a causal link in a retaliation claim, a plaintiff may rely on "a broad array of evidence to do so." *Farrell*, 206 F.3d at 284. Here, Defendants admit that Allegheny first contemplated suing NESCO in October 2004, less than three months after Plaintiff initially complained about Hertzog's conduct to David Lutz, and less than two months after she participated in an investigation into Hertzog's conduct. (Docket Nos. 213 at 7; 227 at ¶ 180). The short time period between Plaintiff's protected activity and the time during which it first contemplated suing NESCO is evidence of a causal connection. *Fasold*, 409 F.3d 178 at 190. In addition, Plaintiff testified that she heard Allegheny's Director of Fuels, James Longacre, specifically identify Hertzog as the person who was "taking a hard line against NESCO." (Docket No. 227 at ¶ 208). Furthermore, Plaintiff has presented evidence that Hertzog played a role in the NESCO litigation even after he left

Allegheny's employ. (Docket No. 227 at ¶ 211). Thus, for all of the aforementioned reasons, the Court finds that Plaintiff has established a prima facie case of retaliation based on Allegheny's filing of the NESCO lawsuit.

### 2. *Defendants' Legitimate, Non-Discriminatory Reasons*

For the purpose of summary judgment, Plaintiff does not dispute that Defendants have proffered a legitimate, non-discriminatory reasons for the aforementioned actions. (Docket No. 205 at 26).

### 3. *Pretext*

As Plaintiff does not dispute that Defendants have offered a legitimate, non-discriminatory reason for her termination and the NESCO lawsuit, she may survive summary judgment, by presenting evidence from which a reasonable jury could believe "that the employer's articulated reason is a pretext and that retaliation was the true motive." *Sanders v. Nicholson*, 2009 U.S. App. LEXIS 4954 (3d Cir. 2009)(citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997)).

In regard to Plaintiff's termination, the Court addressed above the evidence presented by Plaintiff that raises genuine issues of material fact as to whether Defendants' proffered reasons for her termination were a pretext for age discrimination. *See* Section VI.B.3. Thus, there are genuine issues of material fact as to whether Defendants' articulated reasons for Plaintiff's termination were pretextual, and whether they were motivated by retaliation. *Woodson*, 109 F.3d at 920 n.2.

As to the filing of the lawsuit against NESCO, in addition to the temporal proximity of Defendant Allegheny's decision to sue the company in relation to Plaintiff's complaints about Hertzog, it is unclear why NESCO was the first small coal operator to be sued by Defendant Allegheny.

(Docket No. 227 at ¶ 210). Moreover, there are also genuine issues of material fact related to Defendant Hertzog's role in the NESCO litigation. (*Id.* at ¶¶ 211-214).

Accordingly, Defendants' motion for summary judgment as to Plaintiff's retaliation claims under the ADEA is DENIED.

### E. Plaintiff's Title VII Retaliation Claims

Plaintiff contends that Defendants have also retaliated against her for filing a charge of sex discrimination with the EEOC and pursuing said claims in this action by virtue of Allegheny's counterclaims of breach of contract and breach of fiduciary duty against Plaintiff. (Docket No. 76 at ¶ 63). Defendants counter that Allegheny's filing of compulsory counterclaims in this suit does not constitute an adverse action, and even if the filing of said counterclaims constitutes an adverse action, Plaintiff has failed to establish a causal connection between her protected activity and those actions. (Docket No. 213 at 4-10).

While Defendants contend that the filing of compulsory counterclaims is not a basis upon which Plaintiff can bring a claim of retaliation, this Court has previously opined that, in the context of the instant case, "when faced with counterclaims such as the ones at issue here, which directly attack the integrity of the plaintiff as well as her professional standing as an attorney, 'a reasonable employee facing the choice between [enduring said counterclaims and continuing to press her] discrimination complaint might well choose the former.'" (Docket No. 74 at 25, n. 25 (*quoting Burlington Northern*, 548 U.S. 53 at 73)).

Although this Court has already indicated that Defendants' filing of counterclaims against Plaintiff may constitute an adverse action in the context of this case, Plaintiff has failed to establish

a causal connection between her filing of the sex-based EEOC charge (and subsequent lawsuit) asserting sex discrimination, and Defendant Allegheny's filing of its counterclaims. Plaintiff filed her charge of sex discrimination with the EEOC on May 20, 2005. (Docket No. 249 at 1). The instant lawsuit was filed on October 16, 2006. (Docket No. 1). Defendants requested leave to file counterclaims for breach of fiduciary duty and breach of contract on September 20, 2007 (Docket No. 56), and filed said counterclaims on October 30, 2007. (Docket No. 75). Thus, unlike Plaintiff's ADEA retaliation claims, the temporal proximity between Plaintiff's protected activities and the adverse action does not create an inference of discrimination, as more than two years had elapsed between Plaintiff's filing of the EEOC charge and Allegheny's filing of its counterclaims, and more than one year elapsed between Plaintiff's filing of the instant lawsuit and Allegheny's filing of its counterclaims. *See Neely v. United States Postal Serv.*, 2009 U.S. App. LEXIS 1493 (3d Cir. 2009)(two-year time period between protected activity and adverse action insufficient to establish a causal connection); *see also Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (five-month time period between employee's complaint and adverse action was, without additional evidence, insufficient to raise an inference of causation).

Furthermore, the timing of Allegheny's filing of counterclaims indicates that they were not filed in response to Plaintiff's claims of sex discrimination, but rather as a result of facts that came to light during the discovery process. Notably, Allegheny did not file any counterclaim with its answer to Plaintiff's original complaint, which included a claim for sex discrimination. (Docket No. 5). Rather, Allegheny asserted its counterclaims after it learned, through the discovery process, that Plaintiff had copied and removed documents that it believed to be confidential, privileged, and

proprietary. (Docket No. 56 at 2-3). Further, Allegheny only took legal action against Plaintiff after it retained an expert who deemed Plaintiff's conduct as a breach of her ethical duty to Defendant Allegheny, and Plaintiff refused to return the documents in question. (*See* Docket Nos. 56 and 57). Moreover, this Court does not find Allegheny's counterclaims to be frivolous. Rather, they have proffered sufficient evidence that suggests that Plaintiff violated her fiduciary responsibilities to Defendant Allegheny and breached its Confidentiality Agreement.[23]

Plaintiff contends that she has established a causal connection between her protected activity and Defendants' filing of counterclaims because she has produced evidence that 1) Defendants knew Plaintiff downloaded the documents in question as early as December 2004 and 2) this is the first time Defendants have filed suit against an employee for violating the Confidentiality Agreement. (Docket No. 205 at 25).

In regard to Plaintiff's contention that Defendants knew of her actions in December 2004, she has produced no evidence to support this claim, and therefore, cannot support her argument that there is a causal connection between her protected activity and Defendants' filing of counterclaims. Regarding the fact the Plaintiff has not previously brought a legal action against a former employee who violated the Confidentiality Agreement, Plaintiff has failed to produce evidence that any other employee engaged in the same conduct. While she points to one woman, Carol Russ, who "may" have violated the Agreement by downloading and removing documents from Defendant Allegheny's

---

[23]

This Court will address Defendants' motion for partial summary judgment on the affirmative defense of after-acquired evidence and liability as to Allegheny's counterclaims (Docket No. 121) in further detail in a separate memorandum opinion.

computer systems (Docket No. 205 at 25), Plaintiff has not provided the Court with any evidence that Ms. Russ downloaded and removed documents that were privileged, proprietary, or confidential. Thus, as Plaintiff has failed to present any evidence to support her allegations in this regard, the Court cannot infer a causal connection between Plaintiff's filing of the EEOC charge based on sex discrimination (as well as the pursuit of said claims in the instant suit) and Allegheny's counterclaims. *See Ridgewood Bd. of Ed. v. N.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (speculation and conclusory allegations are insufficient to survive summary judgment).

For the foregoing reasons, the Court finds that Plaintiff has failed to establish a prima facie case of retaliation under Title VII. Accordingly, Defendants' motion for summary judgment as it relates to said claims is GRANTED.

### E.   PHRA Claims

Plaintiff has also brought claims for gender and age discrimination, as well as retaliation, against both Allegheny and Hertzog under the PHRA.[24]  Claims under the PHRA are "interpreted as

---

[24] The relevant provisions of the PHRA state as follows:

It shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . age [or] sex . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S. § 955(a).

It shall be an unlawful discriminatory practice . . . [f]or any person, employer, employment agency or labor organization to discriminate in any manner against any

identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fasold v. Justice*, 409 F.3d 178, 184 n.8 (3d Cir. 2005)(quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)).  Plaintiff's claims of sex discrimination and retaliation on the basis of her complaint of sex discrimination are interpreted under the same standards as Title VII claims.  *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir. 1996); *Slagle v. County of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006).  Therefore, as Plaintiff has failed to establish a prima facie case of discrimination or retaliation under Title VII, her analogous claims of sex discrimination and retaliation under the PHRA similarly fail.  Accordingly, Defendants' motion for summary judgment in regard to Plaintiff's PHRA claims of sex discrimination and retaliation based on her complaint thereof is GRANTED.

Similarly, Plaintiff's claims of age discrimination and retaliation based on her complaint thereof under the PHRA are interpreted under the same standards as the ADEA.  *Fasold v. Justice*, 409 F.3d 178, 183 (3d Cir. 2005).  As the Court has found that there are genuine issues of material fact as to whether Defendants discriminated and/or retaliated against Plaintiff in violation of the ADEA, there remain genuine issues of material fact as to whether Defendants have violated the analogous provision of the PHRA.  Accordingly, Defendants' motion for summary judgment on her claims of age discrimination and retaliation based on her complaint thereof is DENIED.

---

individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

43 P.S. § 955(d).

## VI.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket No. 126) is GRANTED, in part, and DENIED, in part.  Defendants' motion is GRANTED with respect to Plaintiff's claims of discrimination and retaliation under Title VII, as well as Plaintiff's analogous claims brought pursuant to the PHRA.  Defendants' motion is DENIED with respect to Plaintiff's claims of age discrimination and retaliation in violation of the ADEA, as well as Plaintiff's analogous PHRA claims.  An appropriate Order will follow.


<u>/s Nora Barry Fischer</u>
Nora Barry Fischer
United States District Judge


Date:   March 16, 2009
cc/ecf:  All counsel of record.