**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TONI M. NESSELROTTE,         )
                                   )
        Plaintiff,       )
                                   )
       v.                )     Civil Action No. 06-1390
                                   )     Judge Nora Barry Fischer
ALLEGHENY ENERGY, INC.,   )
ALLEGEHENY ENERGY SERVICE )
CORPORATION, and DAVID B.   )
HERTZOG,                  )
                                   )
        Defendants.    )

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Defendants Allegheny Energy, Inc. and Allegheny Service Corporation (collectively, "Allegheny") have asserted claims of breach of fiduciary duty and breach of contract against Plaintiff Toni M. Nesselrotte's ("Plaintiff" or "Nesselrotte"). (Docket No. 92). Before this Court is Allegheny Energy, Inc., Allegheny Service Corporation, and David B. Hertzog's ("Hertzog") Motion for Partial Summary Judgment on their After-Acquired Evidence Affirmative Defense and Liability as to Counterclaims (Docket No. 121). Specifically, Defendants[1] argue that pursuant to Federal Rule of Civil Procedure ("Rule") 56 and Local Rule ("LR") 56.1, partial summary judgment on liability will permit application of the After-Acquired Evidence affirmative defense to limit or preclude

---

[1] Any reference to "Defendants" refers to both Allegheny and Hertzog.

Plaintiff's remedies. (Docket No. 121). For the foregoing reasons, Defendants' motion is

**GRANTED**.[2]

## II.  FACTUAL BACKGROUND

Toni Nesselrotte is an attorney who worked for Allegheny for over twenty years. (Docket

No. 241 at ¶ 1). Prior to her termination, Nesselrotte was employed as a Senior Attorney at

Allegheny, and was a member of the bars of the Commonwealth of Pennsylvania and the State of

West Virginia. (*Id.* at ¶¶ 2-3).

On April 7, 2000, Nesselrotte signed an employee confidentiality agreement ("Confidentiality

Agreement") that defined her obligations and responsibilities as they pertained to Allegheny's

confidential and proprietary information. (Docket No. 241 at ¶ 4). The Confidentiality Agreement

defines "confidential information" as follows:

> all information, including but not limited to, proprietary information
> and/or trade secrets, and all information disclosed to Employee or
> known by Employee as a consequence of or through Employee's
> employment, which is not generally known in the industry in which
> [Allegheny Energy Service Corporation, or its parents, affiliates or
> subsidiaries, or any successors or assigns (hereinafter, "AE
> Companies")] are or may become engaged, about the AE Companies'
> business, products, processes, and services, including, but not limited
> to, information relating to Inventions and/or Words, research,
> development, computer program designs, computer data, flow charts,
> source or object codes, products or services under development,
> pricing and pricing strategies, marketing and selling strategies,
> sources of supply, customer lists, customer requirements, business
> methods or practices, training and training programs, and the

---

[2]

Defendants also moved for summary judgment as to Plaintiff's discrimination and retaliation
claims. (Docket No. 126). Said motion is addressed in a separate memorandum opinion at Docket
No. 251.

documentation thereof. It will be presumed that information supplied to the AE Companies from outside sources is Confidential Information unless and until it is designated otherwise.

(Docket No. 124-5 at ¶ 1). The Confidentiality Agreement also covers all "works" prepared by Plaintiff, including "all material and information which is fixed in a tangible medium of expression including, but not limited to" notes, memoranda, correspondence, documents, and intellectual property. (*Id.* at ¶ 2).

Pursuant to the Confidentiality Agreement, Plaintiff agreed to "safeguard and maintain" all confidential documents, as the term "confidential" is defined in the Confidentiality Agreement, and not "use, divulge, or disseminate" confidential information or works without first having obtained Allegheny's written permission. (Docket No. 124-5 at ¶¶ 1, 2). Finally, under the Confidentiality Agreement, Plaintiff agreed that upon termination of her employment she would deliver to Allegheny "all Confidential Information, including, but not limited to, the originals and all copies of notes...memoranda, correspondence and documents, records, notebooks...and other repositories of Confidential Information then in Employee's possession or under Employee's control, whether prepared by Employee or by others." (*Id.* at ¶ 6).[3]

On October 11, 2004, Plaintiff was informed that she was being terminated and that her last day of employment would be October 31, 2004. (*Id.* at ¶ 13). On or around October 6, 2004,

---

[3]

In addition to the Confidentiality Agreement, Plaintiff was bound by the Allegheny Energy, Inc. Code of Business Conduct and Ethics ("Ethics Code"). (Docket No. 241 at ¶ 9). The Ethics Code prohibited Plaintiff from using confidential or non-public information in a manner that could create a conflict between Allegheny's interests and Plaintiff's personal interests. (*Id.*). As more fully detailed in Section V, it is not necessary for purposes of the instant motion for the Court to determine whether Plaintiff violated the Ethics Code.

Plaintiff began to download certain documents in anticipation of her potential termination. (Docket No. 241 at ¶ 17). Between October 11 and October 31, 2004, Plaintiff downloaded a number of documents from her work computer at Allegheny to a computer disk, some of which were subject to attorney-client privilege. (Docket No. 236 at ¶ 14-15). Among the documents Plaintiff downloaded were a series of emails between Plaintiff and David Hertzog; most of these emails were also marked confidential and were subject to the attorney-client privilege. (Docket No. 241 at ¶¶ 16, 18).[4]

Plaintiff did not have permission from anyone at Allegheny to take the documents in question. (*Id.* at ¶ 21). After taking the documents, she showed them to her attorneys, but did not share them with anyone else. (*Id.* at ¶ 22). Plaintiff claims she retained copies of the emails and other documents at issue to prove that she was competent, and that she felt she needed the documents to "protect herself" because she felt that Defendants had discriminated against her. (Docket No. 236 at ¶¶ 23-24).

Both Plaintiff and Defendants hired consultants whom they believed to be authors, scholars, and experts in the field of legal ethics. For the Defendants, Professor Steven Lubet[5] opined that

---

[4]

In order to determine whether certain documents in dispute were privileged, both parties agreed to the Court's appointment of William Pietragallo, II as Special Master. (Docket No. 105). The Special Master found that certain documents were privileged and not subject to disclosure. (Docket No. 236 at ¶ 19).

[5]

Professor Lubet is the Williams Memorial Professor of Law and director of the Program on Advocacy and Professionalism at the Northwestern University School of Law. He has served on the Drafting Committee for the Multistate Professional Responsibility Examination and is the coauthor of EXERCISES AND PROBLEMS IN PROFESSIONAL RESPONSIBILITY (2d edition, 2003).

4

Plaintiff's conduct had violated her professional obligations under the West Virginia Rules of Professional Conduct and Pennsylvania Rules of Professional Conduct. (Docket No. 123 at ¶ 32). For Plaintiff, Professor Thomas Ross[6] opined that Plaintiff did not violate any of her ethical responsibilities by either copying and retaining the documents at issue in this litigation or showing said documents to her counsel in pursuing her discrimination claims. (Docket No. 236 at ¶ 32).

## III.    PROCEDURAL HISTORY

Defendants filed the instant Motion for Partial Summary Judgment on After-Acquired Evidence Affirmative Defense and Liability as to Counterclaims on March 4, 2008. (Docket No. 121). Said motion was accompanied by a Brief in Support (Docket No. 122), a Concise Statement of Undisputed Material Facts (Docket No. 123), and an Appendix (Docket No. 124). The Court held the instant motion in abeyance pending the outcome of several intervening motions,[7] and upon their resolution, ordered Defendants to file a supplement to their Motion for Partial Summary Judgment. (Docket No. 196). Defendants filed said supplemental brief on August 29, 2008. (Docket No. 199).

---

[6]

Professor Ross is a Professor of Law at the University of Pittsburgh School of Law. He has authored several articles on the subject of legal ethics and is the coauthor of THE LAW AND ETHICS OF CONTEMPORARY LEGAL PRACTICE (2009).

[7]

A more detailed procedural history can be found in the Court's Memorandum Opinion of March 16, 2009. (Docket No. 251).

Plaintiff responded to the motion by filing a Brief in Opposition on October 7, 2008. (Docket No. 206).[8] Plaintiff filed her Response to Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Partial Summary Judgment filed her response on February 2, 2009. (Docket No. 236). Defendants filed a revised Reply Brief in support of the instant motion on February 17, 2009 (Docket No. 240), along with a reply in support of their Concise Statement of Material Facts, (Docket No. 241) and Appendix (Docket No. 242). The issues are now fully briefed and the motion is ripe for disposition.

## IV.    LEGAL STANDARD

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against

---

[8]

Contemporaneously with that brief, Plaintiff filed one responsive concise statement of material facts. (Docket No. 209). However, the responsive concise statement only addressed those facts set forth in Defendants' Statement of Undisputed Material Facts filed in connection with the Motion for Summary Judgment at Docket No. 128; it did not address the Defendants' Statement of Undisputed Material Facts filed in connection with the instant motion. Defendants filed its reply brief in support of the instant motion on November 5, 2008 (Docket No. 214), in which they argued the Court should deem admitted the material facts set forth in Docket No. 123, as Plaintiff had failed to respond to the facts contained therein in violation of Rule 56.1(C) of the Local Rules (Docket No. 214 at 3). The parties submitted briefs on the issue of whether Plaintiff should be granted leave to file a response to Docket No. 123, and the Court heard argument and testimony on the issue on December 19, 2008. The Court granted Plaintiff's motion for leave to file on January 30, 2009. (Docket No. 235).

the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248 (1986).

A dispute of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 412 F.3d at 249. As to materiality, the relevant substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Watson v. Abington Twp*., 478 F.3d 144, 147 (3d Cir.2007). However, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers,* 142 F.3d 639, 643 n.3 (3d Cir.1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir.1994)).

## V.    DISCUSSION

### A.    The After-Acquired Evidence Doctrine

"'After-acquired evidence' in an employment discrimination case denotes evidence of the employee's or applicant's misconduct or dishonesty which the employer did not know about at the time it acted adversely to the employee or applicant, but which it discovered at some point prior to, or, more typically, during, subsequent legal proceedings." *Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221, 1222 (3d Cir.1994), *judgment vacated by* 514 U.S. 1034 (1995)(in light of *McKennon v. Nashville Banner Publ. Co.,* 513 U.S. 352 (U.S. 1995)).  While after-acquired evidence of a former employee's misconduct will not prevent an employer from being held liable for discrimination, it can limit the remedies available to the employee.  *McKennon*, 513 U.S. at 354.  Where the employer establishes the affirmative defense of after-acquired evidence, "neither reinstatement nor front pay is an appropriate remedy." *Id.* at 361-62.  "The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." *Id.* at 362.

Defendants argue that Plaintiff's remedies should be limited or precluded based on the affirmative defense of after-acquired evidence, as Allegheny would have terminated her for copying and taking the confidential documents in question if it had known of Plaintiff's actions at the time it told her of her termination on October 11, 2004 with an end date of October 31, 2004.  (Docket No. 122 at 7).  Plaintiff counters that her taking of the documents in question was neither an ethical or contractual violation, and that she used the documents in question pursuant to written authorization by her employer.  (Docket No. 206 at 8).  Plaintiff also contends that the affirmative defense of after-

acquired evidence is not applicable in this case because she took the documents in question after she was notified that she would be terminated. (*Id.*). Finally, Plaintiff argues that even if the doctrine of after-acquired evidence is applicable, there remain genuine issues of material fact as to whether she would have been terminated for her conduct. (*Id.* at 10). The Court will address each of these issues, in turn.

### 1. Plaintiff's Taking of the Documents in Question

Defendants contend that by copying and removing the documents in question, Plaintiff violated the Confidentiality Agreement she entered into with Allegheny, as well as Allegheny's Ethics Code, and that violations of either is a terminable offense. (Docket No. 222 at 1-3). Plaintiff counters that she has not violated any ethical or contractual obligation she owed to Allegheny. (Docket No. 206 at 3-7). However, Plaintiff does not dispute that she was bound by both the Confidentiality Agreement and the Ethics Code, or that violating either could result in termination. (Docket No. 241 at ¶¶ 4, 9,12, 45). She merely claims that the documents she downloaded and copied were not covered by those agreements.[9] (Docket No. 241 at ¶¶ 4-12). For the reasons outlined herein, the Court finds that Plaintiff's downloading and copying of the documents in question violated Allegheny's Confidentiality Agreement.[10]

---

[9]

The Court notes that Nesselrotte also enlisted the assistance of two of her secretaries in downloading the documents at issue. (Docket No. 210-12 at 3).

[10]

As Defendants have produced sufficient evidence upon which to find that Plaintiff has violated the Confidentiality Agreement, it is unnecessary for the purposes of the instant motion to determine whether Plaintiff's actions also constitute a violation of Allegheny's Code of Business Conduct and Ethics.

Plaintiff has admitted that among the documents she copied and/or downloaded from Allegheny were documents that were subject to attorney-client privilege. (Docket No. 241 at ¶ 14). The Confidentiality Agreement specifically defines "Confidential Information" as "all information disclosed to Employee or known by Employee as a consequence of or through Employee's employment." (Docket No. 124-5 at ¶ 1). Naturally, any of the documents in question that are subject to the attorney-client privilege could only have been obtained by Plaintiff "as a consequence or through" her employment with Allegheny. Thus, any of the documents in question that were subject to the attorney-client privilege constitute "Confidential Information" under the Confidentiality Agreement.

Furthermore, the Confidentiality Agreement provides that the employee "will safeguard and maintain on the premises [of Allegheny Energy Companies] . . . all documents and things that contain or embody Confidential Information." (Docket No. 124-5 at ¶ 1). As previously discussed, the documents Plaintiff admits to copying and/or downloading fell within the definition of "Confidential Information." Plaintiff also admits that those documents were taken off of Allegheny's premises for reasons that were not authorized by Allegheny. (Docket No. 241 at ¶ 21). Furthermore, Plaintiff admits that she did not return the documents to Allegheny upon her termination (Docket No. 241 at ¶ 31); however, the Confidentiality Agreement specifically states that employees must return all disks and documents containing Confidential Information to Allegheny. (Docket No. 124-5 at ¶ 6).[11]

---

[11]

The Court also notes that the Confidentiality Agreement specifically provides that termination "shall not impair or relieve Employee of any of Employee's obligations hereunder." (Docket No. 124-5 at ¶ 5).

The Court does not agree with Plaintiff's position that Allegheny authorized Plaintiff's use of the documents in question in the instant litigation. Plaintiff claims that, pursuant to the Confidentiality Agreement, she received written authorization to use the confidential information at issue in a letter from Defendants' counsel dated December 27, 2004. However, as this Court has noted in a previous hearing in this matter, that letter specifically states that Allegheny does *not* consent to the disclosure of any information that is subject to the attorney-client privilege. (Docket No. 210-18 at 9; Docket No. 216-14 at 3). Furthermore, Allegheny was not aware of Plaintiff's misconduct until April of 2007 (Docket No. 56); thus, it could not have consented to Plaintiff's taking and use of documents it had no way of knowing were in Plaintiff's possession.[12] Moreover, upon discovering in the course of the instant litigation that Plaintiff had taken the documents in question, Allegheny immediately requested that Plaintiff return the documents. (Docket No. 241 at ¶ 31). Thus, the Court concludes that Allegheny did not authorize Plaintiff's conduct by virtue of the December 24, 2004 letter.

Accordingly, the Court finds that by copying and/or downloading documents which were subject to the attorney-client privilege, removing them from Allegheny's premises without the permission of Allegheny, and failing to return said documents at the time of her termination, Plaintiff violated the Confidentiality Agreement.

---

[12]

To the extent that Plaintiff now claims that Defendants may have known that Plaintiff was in possession of the documents at issue because it had the technical *capability* to make such a determination (Docket No. 241 at ¶ 31), Plaintiff has produced no evidence that Defendants had any knowledge that Plaintiff had taken the documents in question until after the instant suit was initiated.

### 2.     Applicability of the After-Acquired Evidence Doctrine to the Instant Case

"Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 362-363 (1995). Plaintiff contends that she began to take privileged information only after she was notified on October 11, 2004 that she would be terminated, and, therefore, the defense is inapplicable.[13] Plaintiff's argument fails for several reasons.

While Plaintiff was notified on October 11, 2004 that she would be terminated, her actual date of termination was October 31, 2004. Thus, in addition to the existence of an employer-employee relationship during the time period in question, Plaintiff, by her own admission, owed a fiduciary duty to Allegheny and was bound by her Confidentiality Agreement with Allegheny at the time of her misconduct. (Docket No. 241 at ¶¶ 4, 39). Plaintiff argues that she only took the documents in question to prove she was "competent" in this discrimination claim against Defendants, and therefore the after-acquired evidence doctrine is inapplicable. (Docket No. 241 at ¶¶ 15, 33). However, this does not distinguish her motive from that of the plaintiff in *McKennon*, who also copied confidential

---

[13]

Plaintiff has also admitted that she began copying and downloading documents prior to October 11, 2004. However, as it is not clear from the evidence whether those documents were also confidential in nature (*See* Docket No. 227 at ¶ 259), the Court will only focus on those documents which both parties agree were subject to the attorney-client privilege, i.e, the documents taken after October 11, 2004 but before October 30, 2004.

documents for "insurance" and "protection" when she believed she was discriminated against on the basis of her age. 513 U.S. at 355.

To the extent that Plaintiff's conduct occurred after Allegheny's adverse decision was made and communicated to Plaintiff, this does not prevent Defendant from relying on the after-acquired evidence defense. The language of *McKennon* indicates that each case must be considered on its own, as the facts of each case and the equitable considerations raised will vary. *McKennon*, 513 U.S. at 361. Here, as previously discussed, Plaintiff violated the Confidentiality Agreement into which she entered with Allegheny by copying, downloading, and taking Allegheny's confidential information, some of which was subject to the attorney-client privilege. Thus, given the nature of Nesselrotte's transgressions, as well as the sanctity of the attorney-client relationship and its attendant privilege,[14] reinstatement in this case would be impractical, at best. Accordingly, limiting Plaintiff's remedies through the application of the after-acquired evidence doctrine is appropriate, as "[i]t would be inequitable for [Plaintiff] to avail herself of the disfavored and exceptional remedy of front pay where her own misconduct precludes her from availing herself of the favored and more traditional remedy of reinstatement." *Sellers v. Mineta*, 358 F.3d 1058, 1064 (8th Cir. 2004)(applying the after-acquired evidence doctrine to post-termination misconduct); *see also O'Day v. McDonnell Douglas Helicopter*

---

[14]

As this Court has previously opined, "[t]he attorney/client relationship is one that is highly valued by society and protected in the law. The relationship between lawyer and client is as sensitive a relationship as can exist and demands absolute confidence on the part of the client in order to thrive." (Docket No. 194 at 1)(quoting *Klages v. Sperry Corp.*, Civ. A. No. 83-3295, 1984 WL 49135 (E.D. Pa. 1984)).

*Co.*, 79 F.3d 756 (9th Cir. 1996)(after-acquired evidence doctrine applicable where misconduct occurred after plaintiff was informed of adverse employment decision).

Thus, the Court finds that Defendant may assert the after-acquired evidence defense as it relates to Plaintiff's conduct from the period of October 11, 2004 to October 30, 2004.

> *3.    Whether Plaintiff's Conduct Would Have Resulted in Termination*

In order for Defendant to successfully assert the after-acquired evidence defense on the basis of a former employee's misconduct, it must "establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 362-363 (1995). Plaintiff contends that there is a genuine issue of material fact as to whether Allegheny would have terminated her for copying and removing the documents in question. (Docket No. 206 at 10).

As to evidence that Allegheny would have terminated Plaintiff for the conduct in question, Defendants point to the affidavits of Hertzog and Allegheny's current General Counsel, David Feinberg.[15] (Docket No. 241 at ¶ 33). In his affidavit, Hertzog stated that he considered it a violation of Allegheny's Ethics Code and Confidentiality Agreement for an employee to copy and remove confidential documents for non-business reasons. (Docket No. 124-6 at ¶ 17). He further stated that had he known of Plaintiff's conduct, he would have terminated her immediately. (*Id.* at ¶ 18). In addition, Feinberg declares that he considered Plaintiff's conduct in copying and removing the

---

[15]

Feinberg has held the positions of Vice President, Secretary, and General Counsel since October 2006. (Docket No. 124-9 at ¶ 1). Thus, he held these positions at the time Allegheny discovered that Plaintiff had engaged in the misconduct at issue.

documents in question to be a violation of Allegheny's Ethics Code, Security Policy, and Confidentiality Agreement. (Docket No. 124-9 at ¶¶ 14, 15). Feinberg further stated that had he known about Plaintiff's conduct at the time it occurred, he would have recommended to Hertzog that Plaintiff be terminated immediately. (*Id.* at ¶ 17).

Hertzog also stated that during his tenure, he did not permit any attorney or employee of the legal department to copy and remove confidential documents for non-business reasons. (Docket No. 124-6 ¶ 17). Hertzog further stated that when another employee of the legal department, Lisa Tatone, copied and removed confidential information from Allegheny for non-business reasons, he immediately terminated Tatone.[16]

In response to this evidence, Plaintiff claims a genuine issue of material fact remains as to whether she would have been terminated because "she did not believe she would have been fired" (Docket No. 206 at 10) and she believes Tatone was fired for using a former employee's password to download and delete files. (Docket No. 241 at par. 34). Plaintiff has provided no other evidence to rebut the evidence set forth by Allegheny that they would have terminated her for her misconduct.

Further, Plaintiff has provided no evidence that would support her "belief" that she would not have been fired for her conduct, and cannot rely on her own testimony as to same to create a genuine issue of material fact on this issue. *See Ridgewood Bd. of Ed. v. N.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (speculation and conclusory allegations are insufficient to survive summary judgment); *see also Cehula v. Janus Distribs., LLC*, Civ. A. No. 07-00113, 2008 U.S. Dist. LEXIS 56406 (W.D. Pa. July

---

[16] Unlike the instant case, the documents removed by Tatone were returned to Allegheny. (Docket No. 245-2 at 3).

23, 2008).  Plaintiff has not provided any evidence that an employee who engaged in similar conduct was not terminated by Allegheny.  In addition, while Plaintiff has attempted to distinguish her misconduct from that of Ms. Tatone, even assuming, *arguendo*, that the two situations are factually distinct, this distinction does not create a genuine issue of material with regard to Defendants' evidence – namely, Hertzog's sworn statement that he would have immediately terminated Plaintiff, and Feinberg's sworn statement that he would have recommended Plaintiff's immediate termination.

As Plaintiff has failed to present any evidence that would create a genuine issue of material fact as to Defendants' affirmative defense of after-acquired evidence, Defendants' motion for summary judgment on the defense of after-acquired evidence is GRANTED.  Accordingly, Plaintiff is barred from seeking reinstatement and front pay.  If, at the time of trial, the jury determines Plaintiff was terminated in violation of the ADEA, the Court will calculate backpay from Plaintiff's last day of employment to the date Allegheny discovered her misconduct.  *McKennon*, 513 U.S. 352 at 362. ("The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered.").  In making this ruling, the Court is mindful that it may also consider "extraordinary equitable circumstances that affect the legitimate interests of either party."  *Id.*

### B. Breach of Contract

As to Allegheny's breach of contract claim, Pennsylvania law requires that a claimant establish "1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage." *Church v. Tentarelli*, 953 A.2d 804, 808 (Pa. Super. Ct. 2008)(quoting *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 580 (Pa. Super. Ct. 2003)).  "When

16

the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone." *Mace v. Atl. Ref. Mktg. Corp.*, 785 A.2d 491, 496 (Pa. 2001) (citing *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)). This Court "may grant summary judgment on an issue of contract interpretation if the contractual language being interpreted 'is subject to only one reasonable interpretation.'" *Atkinson v. Lafayette College*, 460 F.3d 447, 452 (3d Cir. 2006)(quoting *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999)).

As previously noted, Plaintiff asserts that her actions do not constitute a breach of the duties she owed Allegheny under the Confidentiality Agreement because the documents she took from Allegheny are not covered by the Confidentiality Agreement. (Docket No. 205 at 5). Plaintiff further claims that Allegheny's motion fails as a matter of law because it has not demonstrated that Plaintiff's actions resulted in any damages. (Docket No. 206 at 13). Allegheny counters that the documents in question are covered by the agreement and, at a minimum, the attorneys fees it has incurred in this litigation are sufficient to establish that it has been injured as a result of Plaintiff's breach. (Docket No. 240 at 12). Allegheny further argues that summary judgment is appropriate because it is moving for summary judgment on the issue of liability only, while reserving a damage determination for trial. (Docket No. 240 at 13).

Plaintiff does not dispute that the Confidentiality Agreement constitutes a contract between her and Allegheny. (*See generally* Docket No. 206; Docket No. 241 at ¶ 4). As previously discussed, the language of the contract clearly defines "confidential information" as "all information disclosed to Employee or known by Employee as a consequence of or through Employee's employment." (Docket No. 124-5 at ¶ 1). Among the documents taken by Plaintiff are those that are

subject to the attorney-client privilege; by their very definition, the privileged documents could have only been obtained "as a consequence of or through" Plaintiff's employment as an attorney for Allegheny. Thus, the contract's definition of "confidential information" clearly encompasses that information which is subject to the attorney-client privilege, and Plaintiff's argument that there was no breach because the contract does not explicitly use the term "privileged information" is simply "an attempt to create ambiguity where there is none." *Atkinson*, 460 F.3d at 452. Thus, as discussed in greater detail in Section V.A.1, Plaintiff has breached her duties to Allegheny under the Confidentiality Agreement.

Furthermore, Plaintiff's argument that summary judgment is precluded because Allegheny has failed to demonstrate damages is misplaced. Allegheny has moved for summary judgment only as to liability on its breach of contract claim, and requested that the amount of damages it has incurred as a result of Plaintiff's breach be determined at trial. Even if Allegheny is unable to demonstrate actual damages at the time of trial, it is still entitled to nominal damages as a result of Plaintiff's breach. *See Scobell Inc. v. Schade*, 688 A.2d 715, 719 (Pa. Super. Ct. 1997)("any breach of contract entitles the injured party at least to nominal damages").

Accordingly, Allegheny's motion for partial summary judgment as to liability on its breach of contract claim is GRANTED; the issue of Allegheny's contractual damages shall be determined at trial.

### C.     Breach of Fiduciary Duty

With respect to Allegheny's breach of fiduciary duty claim, Plaintiff contends that summary judgment is precluded because genuine issues of material fact remain as to whether she breached her

fiduciary duty to Allegheny. (Docket No. 206 at 14). She further contends that Allegheny's motion for summary judgment in this regard must be denied because it has not demonstrated that it has suffered an injury as a result of Plaintiff's conduct. (Docket No. 206 at 12). Allegheny counters that Plaintiff's own admissions demonstrate that she breached her fiduciary duty to the company (Docket No. 112 at 18), and that it has identified specific damages, in the form of legal fees, that have resulted from Plaintiff's breach. (Docket No. 240 at 12).

With respect to its breach of fiduciary duty claim, Allegheny must prove: (1) the existence of a fiduciary relationship with Plaintiff; (2) that Plaintiff breached a duty under that relationship; (3) that it suffered injury; and (4) that Plaintiff's breach was a real factor in bringing about its injuries. *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998)(citing Pa. S.S.J.I. § 4.16); *see also Dinger v. Allfirst Fin., Inc*., 82 Fed. Appx. 261 (3d Cir. 2008)(citing *McDermott*). Plaintiff contends that Allegheny has not produced any evidence that it has suffered an injury as a result of Plaintiff's alleged conduct. (Docket No. 206 at 12).

Pennsylvania law "imposes on attorneys the status of fiduciaries *vis a vis* their clients; that is, attorneys are bound, at law, to perform their fiduciary duties properly. Failure to so perform gives rise to a cause of action." *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992). "[A]n attorney who undertakes representation of a client owes that client both a duty of competent representation and the highest duty of honesty, fidelity, and confidentiality." *Capital Care Corp. v. Hunt*, 847 A.2d 75, 84 (Pa. Super. Ct. 2004). "This public trust that an attorney owes his client is in the nature of a fiduciary relationship involving the highest standards of professional conduct." *Office of Disciplinary Counsel v. Monsour*, 701 A.2d 556, 558 (Pa. 1997).

Here, Plaintiff admits that she took documents that were the property of Allegheny without its authorization. (Docket No. 148-6 at 9; Docket No. 148-8 at 11). Many of the documents were not only marked "confidential" or "attorney-client privileged" (*See generally* Docket No. 73), they were also "confidential information" as that term is defined in the Confidentiality Agreement. Plaintiff also admits that she enlisted the help of two of her subordinates to assist her in copying and taking the documents, that she told no one at Allegheny what she had done, and that she did not have permission to remove the documents in question. (Docket No. 148-8 at 4, 11). Particularly troubling to this Court is not only the deceitful manner in which Plaintiff took the documents in question, but also that fact that she failed to give any notice to Allegheny that she had taken and retained these documents until April 2007, more than two and a half years after she had taken said documents. (*See* Docket No. 56). The undisputed facts of this case demonstrate Plaintiff was not authorized to take the documents in question, that she acted covertly to take the property of her client, and that she failed to perform her duties with complete candor, thereby breaching the duty of honesty she owed to Allegheny.

Furthermore, Plaintiff admits that some of the documents she took from Allegheny were not for her use in prosecuting the instant case; rather, she intended to use them to help her in her "future practice." (Docket No. 148-8 at 14). In doing so, Plaintiff took Allegheny's property for her own personal benefit, thereby violating the duty of fidelity she owed to Allegheny. *McDermott,* 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998)(holding that an employee has a fiduciary duty to act in good faith and solely for the benefit of the employer in all matter for which she is employed).

Plaintiff maintains that she has not breached her fiduciary duty to Allegheny because her actions were appropriate under Rule 1.6(c)(4) of the Pennsylvania Rules of Professional Conduct.

(Docket No. 206 at 4).[17]  Rule 1.6(c)(4), entitled "Confidentiality of Information," provides, in relevant part: "A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary:  (4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client ... or to respond to the allegations in any proceeding concerning the lawyer's representation of the client."  Pa. R. Prof'l Conduct R. 1.6(c)(4).[18]  Furthermore, "[t]he duty of confidentiality continues after the client -lawyer relationship has terminated."  Pa. R. Prof'l Conduct R. 1.6 Explanatory Comment n.25; *see also* Pa. R. Prof'l Conduct R 1.9(c) ("A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:  (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client").

However, as this Court as previously opined,[19] Plaintiff's reliance on Rule 1.6(c)(4) inappropriately conflates her right to reveal certain privileged information to her attorneys with the manner in which she copied and obtained said information.  Nothing in the language of Rule 1.6

---

[17]

The Court notes that the Rules of Professional Conduct are separate and distinct from an attorney's common law fiduciary duties of honesty and fidelity.  *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992); *Capital Care Corp.,* 847 A.2d 75, 84 (Pa. Super. Ct. 2004).

[18]

The Court notes that the version of Rule 1.6(c)(4) in effect at the time of Plaintiff's conduct (in or around October 2004) and relevant here is identical to the current version.

[19]

*See* Docket No. 73 at 18-26.

indicates that it is appropriate for an attorney to circumvent the rules of discovery as set forth in the Federal Rules of Civil Procedure by taking a client's property without the client's authorization.[20] In fact, Rules 1.15[21] and 1.16[22] specifically prohibit Plaintiff's conduct in that she failed to notify Allegheny that she was in possession of privileged material and failed to return it to Allegheny upon her termination.[23]

Thus, the Court concludes that the undisputed facts in this case demonstrate that the manner in which Plaintiff took Allegheny's property violated her common law fiduciary duty of honesty, and that in taking Allegheny's property for her own gain, she violated her duty of fidelity to her client.[24]

---

[20]

In addition, throughout the course of this litigation, Plaintiff has failed to set forth any case law that would support such a position.

[21]

Rule 1.15, entitled "Safekeeping Property," provides that "[u]pon receiving property of a client . . . with a client-lawyer relationship, a lawyer shall promptly notify the client." Pa. R. Prof'l Conduct R. 1.15.

[22]

Rule 1.16, entitled "Declining or Terminating Representation," provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled." Pa. R. Prof'l Conduct R. 1.16.

[23]

While discussion of the Rules of Professional Conduct is necessary to address Plaintiff's arguments in opposition to Allegheny's motion for partial summary judgment, the Court emphasizes that its ruling in this regard is based on Plaintiff's common law breach of fiduciary duty, not on her violation of the Rules of Professional Conduct. *Maritrans GP, Inc.*, 602 A.2d 1277 (Pa. 1992).

[24]

Furthermore, although Plaintiff now appears to be advancing the argument that she has not breached her fiduciary duty to Allegheny because at the time of her actions she did not believe it was a violation of any of her fiduciary or contractual obligations, this argument is belied by her own deposition testimony, in which she admits that she did not consider any of her ethical or contractual obligations to Allegheny when she downloaded and took the documents in question. (Docket No.

22

Furthermore, Allegheny has identified specific damages it claims are the result of Plaintiff's breach. (Docket No. 240 at 12). Accordingly, Allegheny's motion for partial summary judgment as to liability on its claim for breach of fiduciary duty is GRANTED; the issue of damages resulting from said breach shall be determined at trial.


## VI.    CONCLUSION

For the reasons outlined herein, Defendants' motion for partial summary judgment (Docket No. 121) is GRANTED. Specifically, Defendants' motion for partial summary judgment on the defense of after-acquired evidence is GRANTED. Allegheny's motion for partial summary judgment as to liability on its breach of contract claim is GRANTED; the issue of Allegheny's contractual damages shall be determined at trial. Allegheny's motion for partial summary judgment as to liability on its claim for breach of fiduciary duty is GRANTED; the issue of damages resulting from said breach shall likewise be determined at trial. An appropriate Order follows.


*/s Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


Date:   March 23, 2009
cc/ecf: All counsel of record.

---

239-4 at 7-9).